## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**RAYMOND WOOLLARD**    *

and    *

**SECOND AMENDMENT**    *
**FOUNDATION, INC.,**
     *

       Plaintiffs,

     *

   v.    Civil Case No. 1:10-cv-02068-JFM

     *

**TERRENCE SHERIDAN,** *et al.*,    *

      Defendants.    *

\*   \*   \*   \*   \*   \*      \*   \*   \*   \*   \*   \*

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Terrence Sheridan, Denis Gallagher, Seymour Goldstein, and Charles M. Thomas, Jr., by their undersigned attorneys, respectfully move to dismiss all claims in the complaint filed by Plaintiffs Raymond Woollard and Second Amendment Foundation, Inc. ("SAF"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  As explained more fully below, principles of federal abstention bar Plaintiffs' circumvention of state-court judicial remedies, Plaintiff SAF lacks standing, and Count II fails to state a claim on which relief can be granted.

## BACKGROUND

This case involves facial and as-applied challenges to the constitutionality of Maryland Code Ann., Pub. Safety § 5-306(a)(5)(ii), which requires that Maryland citizens seeking to obtain a permit to wear, carry, or transport a handgun be found, among other things, to have a "good and substantial reason" to do so, "such as a finding that the permit is necessary as a reasonable precaution against apprehended danger."   Md. Code Ann., Pub. Safety § 5-306(a)(5)(ii); *see* Md. Code Ann., Crim. Law § 4-203(b)(2).   Plaintiffs contend that this "good and substantial reason" requirement violates individuals' Second Amendment right to keep and bear arms and Fourteenth Amendment right to equal protection of the law.   They further contend that Defendants' application of this requirement to deny Mr. Woollard's 2008 request for a second renewal of his handgun carry permit violated his constitutional rights, and seek an order requiring Defendants to renew that permit.

The case arises out of the November 12, 2009 decision of the Maryland Handgun Permit Review Board ("the Board") to uphold the denial of Plaintiff Woollard's application to renew his handgun carry permit.   Mr. Woollard, a Maryland citizen and resident of Baltimore County, was issued a handgun carry permit in 2003.   Compl. ¶¶ 16, 19.   The "good and substantial reason" supporting his initial permit arose from an incident in which his apparently unarmed son-in-law, Kris Abbott, broke into his home, and Mr. Woollard's subsequent testimony that led to Mr. Abbott's incarceration.   Compl. ¶ 17; Decision of the Handgun Permit Review Board, MSP No. 438-65541, Case No. 09-4138 (Handgun Permit Review Bd., Nov. 12, 2009)

(hereinafter "Review Bd. Decision"), attached as Exhibit A.[1]  This permit was later renewed based on Mr. Woollard's apprehended fear of retaliation when Mr. Abbott was to be released from prison in 2006.[2]

On October 3, 2008, Mr. Woollard applied to renew his handgun carry permit for a second time.  Compl. ¶ 20; Review Bd. Decision at 1.  On April 1, 2009, the Maryland State Police denied this renewal application.  Compl. ¶ 21.  Mr. Woollard then requested an informal review of his permit renewal application, pursuant to Maryland Code Ann., Pub. Safety § 5-311, which resulted in a second denial on July 28, 2009.  Compl. ¶ 22.  He then administratively appealed the decision, pursuant to Maryland Code Ann., Pub. Safety § 5-312.   The Board convened a hearing, at which Mr. Woollard and the Maryland State Police presented evidence and, on November 12, 2009, the Board affirmed the denial, finding that Mr. Woollard "has not submitted any documentation to verify threats occurring beyond his residence, where he can already legally carry a handgun" and, therefore, that he lacked a "good and substantial reason" to be permitted to wear, carry, or transport a handgun. Compl. ¶ 24; Review Bd. Decision at 2-3.

Mr. Woollard declined to exercise his right under the State Administrative Procedure Act ("State APA") to seek judicial review of the Board's decision in the Circuit Court for Baltimore County.  Md. Code Ann., Pub. Safety § 5-312(e)(1) (requiring that "any subsequent proceedings

---

[1]  The decision of the Handgun Permit Review Board is referenced in and integral to Plaintiffs' Complaint.  *See, e.g.*, Compl. ¶ 24.  As a result, the Court may properly consider this document in connection with this motion to dismiss.  *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

[2]  Handgun carry permits must be renewed every three years to remain valid.  Md. Code Ann., Pub. Safety § 5-309.

of judicial review" be conducted in accordance with the State APA); Md. Code Ann., State Gov't § 10-222.1 ("A party to a contested case may timely seek civil enforcement of an administrative order by filing a petition for civil enforcement in an appropriate circuit court."). He also declined to file an application for a new handgun carry permit.  Instead, on July 29, 2010, he filed the instant action.


## ARGUMENT

Defendants bring this Motion to Dismiss on three grounds.  First, the Court should decline to exercise jurisdiction over this lawsuit based on *Younger* abstention.  *Younger* abstention applies when there is an ongoing state judicial proceeding that implicates important state interests and provides an adequate opportunity to present federal claims.  A claimant cannot avoid *Younger* abstention by failing to pursue his state judicial remedies.  In this case, the Court should decline jurisdiction in favor of adjudication by Maryland courts.

Second, in the alternative, Plaintiff SAF lacks standing to pursue this action because it has not alleged that it, as an organization, has suffered or faces an imminent threat of any judicially cognizable harm as a result of the challenged statute, or that it has members who would otherwise have standing to bring suit in their own right.

Third, also in the alternative to *Younger* abstention, Plaintiffs have failed to state a claim with respect to which relief can be granted in Count II of their Complaint.  Plaintiffs make the bald, conclusory allegation that the "good and substantial reason" requirement of Md. Code Ann., Pub. Safety § 5-306(a)(5)(ii) violates the Equal Protection Clause of the Fourteenth Amendment, but Plaintiffs fail to provide even minimal notice of the basis for that claim.  As a

result, Plaintiffs have failed to satisfy minimum pleading standards with respect to Count II, which should be dismissed.

## I.   *YOUNGER* ABSTENTION BARS PLAINTIFFS' CLAIMS IN THIS COURT.

In *Younger v. Harris*, the U.S. Supreme Court held that federal courts must abstain from staying or enjoining "pending state court [criminal] proceedings except under special circumstances."  401 U.S. 37, 41 (1971).  It based this holding upon principles of comity, federalism, and equity.  *Id.* at 44.  The Court has since extended this holding, known as *Younger* abstention, to include state court civil proceedings, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975), and other state proceedings, such as administrative proceedings, that are judicial in nature.  *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 433-35 (1982).  *Younger* abstention applies to bar federal court intervention whenever (1) there is an ongoing state judicial proceeding or a state avenue of relief that is or was available to the plaintiff (2) that implicates important state interests (3) and in which there is an adequate opportunity to present federal claims.  *See, e.g.*, *id.*; *Ohio Civil Rights Comm'n v. Dayton*, 477 U.S. 619, 627 (1986); *Huffman*, 420 U.S. at 609 (sufficient for purposes of first element that state avenue of relief continues to be available); *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003) (*Nivens I*); *Employers Resource Mgmt Co., Inc. v. Shannon*, 65 F.3d 1126, 1134 -35 (4th Cir. 1995).  Each of these elements is present here.

### A.   There Is An Ongoing State Judicial Proceeding In This Case.

A state administrative proceeding is considered "judicial in nature," and therefore warranting deference under *Younger*, when it "investigates, declares, and enforces liabilities as they stand on present or past facts and under law supposed already to exist."  *New Orleans Pub.*

*Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 370-71 (1989) (*NOPSI* ) (citing *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908)); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) (finding state administrative procedures, which involved a hearing subject to state judicial review, to be "judicial in nature").   The Board, a State administrative agency,[3] has a permit review proceeding that involves either a factual review of the record or, as happened here, a hearing, to determine whether the Secretary's determination that the permit applicant did not possess the requisite legal qualifications was supported by the facts.  Md. Code Ann., Pub. Safety § 5-312(b).  This permit review proceeding also involves the submission of evidence by parties, *id.* § 5-312(c); a final decision "[b]ased on the Board's consideration of the record and any additional evidence," *id.* § 5-312(d)(1); and a right of appeal to State courts, *id.* § 5-312(e).   Accordingly, the proceeding is "judicial in nature" for purposes of *Younger* abstention.[4]   *See Laurel Sand & Gravel*, 519 F.3d at 166; *Moore*, 396 F.3d at 395-96; *cf.*

---

[3] The Board is an administrative agency for purposes of the State APA.  Md. Code Ann., State Gov't § 10-202(b)(1) (defining an "agency" as "a unit of the State government authorized by law to adjudicate contested cases"); Md. Code Ann., Pub. Safety § 5-302 (establishing the Board as a unit within the State's Department of Public Safety and Correctional Services); *id*. § 5-312 (giving the Board authority to adjudicate contested cases).

[4] In a footnote in *Ohio Civil Rights Comm'n*, the Supreme Court distinguished the administrative proceedings before it from an administrative proceeding as to which it had found *Younger* abstention inappropriate on the grounds that the proceedings before it "are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest."  477 U.S. at 627, n.2 (distinguishing *Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982)).  In this case, the administrative proceeding began long before the federal action was filed and, as discussed below, the proceeding involves a very important state interest.  Moreover, although neither the Supreme Court nor the Fourth Circuit has ever found a proceeding's "coercive" nature to be a requirement for *Younger* abstention, the proceeding at issue in this case is coercive, not remedial, in that: (i) the proceeding is not

*Crawford v. Paris*, 897 F. Supp. 928, 931 (D. Md. 1995) (finding the administrative proceedings of the Board of Physician Quality Assurance to be "judicial in nature" because they "afford[] due process protections and review by state courts"); *Fuller v. Bartlett*, 894 F. Supp. 874, 878 (D. Md. 1995) (finding the administrative proceedings of the Maryland Insurance Administration to be "adjudicatory under the *Prentis* formulation" because they involve a hearing that "address[es] present facts under an existing legal standard"). This view is consistent with relevant Maryland appellate court precedent.[5]

---

designed to, and does not, remediate any alleged past wrong; (ii) an applicant is required to pursue the proceeding to be able to wear and carry a handgun; (iii) the proceeding is an integral part of Maryland's enforcement of its prohibition on wearing, carrying, or transporting a handgun without a permit, Md. Code Ann., Crim. Law § 4-203; Pub. Safety § 5-303; and (iv) failure to abide by the results of this proceeding may result in a fine or imprisonment, Md. Code Ann., Crim. Law § 4-203(c), a fact of which Mr. Woollard is acutely aware. Compl. ¶ 25 (Mr. Woollard "would carry a functional handgun in public for self-defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he does not possess a license to carry a handgun").

[5] In determining whether a state proceeding is "judicial in nature," the Supreme Court has found state appellate courts' views of such a proceeding to be instructive. *Middlesex*, 457 U.S. at 433-34 (finding state bar disciplinary proceedings to be "of a character to warrant federal-court deference" where the state's highest appellate court considered them to be "judicial in nature"). Maryland appellate courts have routinely found administrative proceedings like the one here – proceedings involving hearing opportunities, factual determinations based on submissions of evidence, and final decisions – to be "judicial in nature." *See, e.g.*, *Batson v. Shiflett*, 325 Md. 684, 702 (Md. 1992) (noting that administrative agency proceedings involving "factual determinations made . . . following a fair adversarial hearing" are "judicial in nature"); *1000 Friends of Maryland v. Ehrlich*, 170 Md. App. 538, 549-50 (Md. Ct. Spec. App. 2006) ("We have said that, when a board or agency makes factual determinations, decides contested issues, or reviews applications, it performs a quasi-judicial function.") (internal quotations, alterations, and citation omitted); *see also MBC Realty, LLC v. Mayor & City Council of Balt.*, 403 Md. 216, 236 (Md. 2008) ("Indicia of a quasi-judicial process include, a 'fact-finding process that entails the holding of a hearing, the receipt of factual and opinion testimony and/or

A state judicial proceeding is considered "ongoing" for purposes of *Younger* abstention if it commenced "before any proceedings of substance on the merits have taken place in the federal court." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975), *overruled on other grounds by Mandel v. Bradley*, 432 U.S. 173 (1977) (per curiam)); *Kaplan v. CareFirst, Inc.*, 614 F. Supp. 2d 587, 592 (D. Md. 2009) (quoting same).  Although perhaps not intuitive, the law is clear that the proceeding need not be currently pending to be considered ongoing.  *Ohio Civil Rights Comm'n*, 477 U.S. at 627 (where administrative proceedings are found to be "judicial in nature" from the outset, it is not "essential" that they have progressed to state-court review by the time the federal case is heard for *Younger* abstention to apply).  Rather, the proceeding is ongoing so long as a state avenue of relief is or was available to the plaintiff.  *Huffman*, 420 U.S. at 609; *Moore*, 396 F.3d at 394-95. In this way, the "ongoing state judicial proceedings" prong acts like an exhaustion requirement. *See id.* at 608 ("a necessary concomitant of *Younger* is that a party . . . must exhaust his state appellate remedies before seeking relief" in federal court); *Moore*, 396 F.3d at 388.

Indeed, where a party is found to have neglected – deliberately or otherwise – to pursue state avenues of relief, thereby circumventing exhaustion requirements, *Younger* abstention will apply with equal force.  *Laurel Sand & Gravel*, 519 F.3d at 167 (where a party "seeks to invalidate a state judgment by filing a federal action and circumventing state-court judicial remedies, the state proceedings remain 'pending' within the meaning of *Younger* abstention");

---

forms of documentary evidence, and a particularized conclusion, based upon delineated statutory standards. . . .'") (quoting *Md. Overpak Corp. v. Mayor & City Council of Balt.*, 395 Md. 16, 53 (Md. 2006).

8

*Moore*, 396 F.3d at 394-95 (applying *Younger* abstention in case where appellant "sought federal court intervention apparently *after* the state administrative 'judgment' had become non-appealable by reason of his failure timely to take available state avenues of review") (emphasis in original); *see also Family Foundation, Inc. v. Brown*, 9 F.3d 1075, 1077-78 (4th Cir. 1993) (finding *Younger* abstention appropriate where "appellants did not avail themselves of the [state appellate] procedure . . . before filing their suit in federal district court, as they were required to do under *Younger*").   Abstention has been held to be necessary under these circumstances because the policy interest behind *Younger* – "commanding restraint when a federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding," *Moore*, 396 F.3d at 394-95 – applies equally regardless of whether a state judicial proceeding is ongoing or whether it would be ongoing but for the plaintiff's decision to forgo avenues of relief in the state system to pursue the federal action instead.  *Id.*

      In the present case, Mr. Woollard filed suit in this Court after commencing the State proceeding established for handgun carry permit review, but without following through with the established state-court appellate processes that would have required him to appeal the administrative decision to the State Circuit Court.  He now asks this Court to overturn the result of the State proceeding by directing Defendants to renew his expired handgun carry permit. Such an order, without permitting the State courts to review the decision, clearly would cast aspersion on the State proceeding, disrupt the State's efforts to enforce its handgun laws, and

advance Plaintiffs' intent to annul the State proceeding.  Accordingly, the State proceeding is therefore 'ongoing' for purposes of *Younger* abstention.[6]

Just as Mr. Woollard could not evade *Younger* abstention by failing to pursue his State appellate remedies, he also cannot evade *Younger* abstention by joining SAF as a plaintiff in this action.  *American Civil Liberties Union v. Bozardt*, 539 F.2d 340, 345 (4th Cir. 1976) (holding that, until state remedies available to the individual co-plaintiff were exhausted, *Younger* abstention barred both the individual co-plaintiff and the organizational co-plaintiff from seeking equitable relief in federal court).

### B.   This Case Implicates Important State Interests.

One of the State's most important interests is the protection of the safety and welfare of its citizens.  *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (quotation and citation omitted); *Schleifer v. City of Charlottesville*, 159 F.3d 843, 848 (4th Cir. 1998) (citing *Schall* for the proposition that the State has a legitimate and compelling interest in protecting its citizens from crime; *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 221 (1978) (noting "the historic state interest in such traditionally local matters as public safety and order") (quotations and citation omitted).  Because handguns are often used in the commission of crimes, their regulation falls squarely within the important state interest in protecting public safety.  *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1217 (9th Cir. 2003) (noting, in

---

[6] Although not required for *Younger* abstention, in this case, Mr. Woollard also has the opportunity to re-initiate the administrative process by filing a new permit application.

case involving gun control under state laws, that "the state's interest in protecting the health and safety of its residents is clearly legitimate").

In enacting the State's statutory prohibition on wearing, carrying, or transporting handguns without a permit, the General Assembly codified legislative findings expressing its unambiguous view that such regulation supported the important state interest in preventing crime and protecting its citizens' rights and liberties.  These findings state:

(1)    the number of violent crimes committed in the State has increased alarmingly in recent years;

(2)    a high percentage of violent crimes committed in the State involves the use of handguns;

(3)    the result is a substantial increase in the number of deaths and injuries largely traceable to the carrying of handguns in public places by criminals;

(4)    [pre-existing] law has not been effective in curbing the more frequent use of handguns in committing crime; and

(5)    additional regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of the public.

Md. Code Ann., Crim. Law § 4-202.  The State's handgun carry permit laws, contained in the State code's "Public Safety" article, are responsive to these findings.  State courts hearing challenges to the State's handgun carry permit laws have agreed that such laws further important State interests in protecting public safety and welfare.  *See, e.g.*, *Scherr v. Handgun Permit Review Bd.*, 163 Md. App. 417, 445-48 (Md. Ct. Spec. App. 2005) (finding that Maryland's handgun carry permit statute bears a real and substantial relationship to the important state interest in protecting the public welfare).

Plaintiffs' case directly concerns the state's interest in maintaining public safety: not only does it seek a declaration that a provision of law expressly aimed at ensuring public safety is unconstitutional, but the underlying facts involve a dispute between the State and Mr. Woollard over whether he needed a handgun carry permit for his safety. Accordingly, the second prong of the *Younger* abstention test is met.

### C.   The State Administrative Process For Handgun Carry Permit Denial Review Provides An Adequate Opportunity To Present Federal Claims.

It is well established that state courts are competent to hear federal claims. *Huffman*, 420 U.S. at 609 ("it is typically a [state] judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions"); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) ("state courts are fully competent to decide issues of federal constitutional law"); *see also* 1 Laurence H. Tribe, *American Constitutional Law*, § 3-28 at 570 (3d ed. 2000) ("[Because] both federal and state courts have a duty to enforce the Constitution, there is no constitutional basis, in the absence of some demonstrable infirmity in the state judicial process itself, for preferring federal courts to state courts as adjudicators of federal constitutional claims."). *Younger* abstention rests in large part on this principle. *Nevins*, 319 F.3d at 162 ("The essence of *Younger* is comity – state courts are equally entitled to, and capable of, interpreting constitutional law."); *Richmond, Fredericksburg, & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 251 (4th Cir. 1993) (citations omitted) ("The [*Younger*] doctrine recognizes that state courts are fully competent to decide issues of federal law, and has as a corollary the idea that all state and

federal claims should be presented to the state courts.").[7]   Accordingly, where, as here, state

administrative proceedings are linked with state-court judicial review, they are deemed adequate

for the presentation of federal claims.   *Ohio Civil Rights Comm'n*, 477 U.S. at 629 ("it is

sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review

of the administrative proceeding") (internal citation omitted); *see Pennzoil Co. v. Texaco, Inc.*,

481 U.S. 1, 15 (1987) (holding that, "[w]hen a litigant has not attempted to present his federal

claims in related state-court proceedings, a federal court should assume that state procedures

will afford an adequate remedy, in the absence of unambiguous authority to the contrary").

---

[7] Other forms of abstention, such as *Burford* abstention, rest on this principle of state court competence as well. *Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943) (finding that "a sound respect for the independence of state action requires the federal equity court to stay its hand" where there are competent state adjudicatory processes in place); *see New Orleans Pub. Serv., Inc. v. Council of the City of New* Orleans, 491 U.S. 350, 361 (1989) (observing that *Burford* abstention is warranted where, among other reasons, "timely and adequate state-court review is available"); *see also Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710, 723 (4th Cir. 1999) ("[T]he state system does possess greater competence than the federal courts to decide questions of state law impacting state public policy . . . . *Burford* abstention requires that we assess the interest in having federal rights adjudicated in federal court against state interests in the control of state regulatory programs.").

Although Defendants believe that *Younger* abstention is most applicable to this case, the Court may also choose to abstain based on *Burford* or another abstention doctrine. Regardless of the doctrine employed, this Court should be guided by the principle – common to all versions of federal abstention – of facilitating rather than trumping competent state proceedings. As Judge Wilkinson observed in a recent *Burford* abstention case, when a federal court unnecessarily exercises jurisdiction over a controversy justiciable in state courts, "[it] diminishes the values of our federal system, which can hardly be served in this most traditional area of state competence by having the federal appellate courts call the shots." *Martin v. Stewart*, 499 F.3d 360, 371 (4th Cir. 2007) (Wilkinson, J., dissenting). *See also Laurel Sand & Gravel*, 519 F.3d at 167; *Moore*, 396 F.3d at 394-95.

Indeed, efforts by litigants to seek federal intervention where adequate state court avenues for relief are available are generally viewed as "a direct aspersion on the capabilities and good faith of state appellate courts." *Huffman*, 420 U.S. at 608. This was the Fourth Circuit's finding in *Moore*, where it held that *Younger* abstention barred the litigant's federal suit in part because his failure to "avail himself of state-provided avenues for review . . . cast aspersion on the State's 'capabilities and good faith.'" 396 F.3d at 395 (quoting *Huffman*, 420 U.S. at 608); *id.* at 396 ("[B]y failing to pursue administrative appellate remedies, the plaintiff short-circuits both the agency's ability to interpret its statutes in conformity with the Constitution and the state courts' ability to correct constitutionally infirm agency decisions."). It was also the Fourth Circuit's finding in *Laurel Sand & Gravel*, where it held that federal intervention in the litigant's claim would "cast aspersions on" the state's established administrative process, a process fully equipped to adjudicate federal constitutional claims. 519 F.3d at 166; *see Nivens I*, 319 F.3d at 162 (affirming district court's abstention on *Younger* grounds where appellants failed to demonstrate that the state-court review process provided an inadequate opportunity to present federal claims); *Middlesex*, 457 U.S. at 437 ("It would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court.").

As mentioned above, Maryland's administrative process for handgun carry permit denial review includes, by statute, a right of review in the relevant State Circuit Court. Md. Code Ann., Pub. Safety § 5-312(e)(1); Md. Code Ann., State Gov't § 10-222.1. It also includes, by statute, a subsequent right of review in the State appellate courts. Md. Code Ann., State Gov't §

10-223(b).  Maryland's Courts are fully competent to adjudicate Plaintiffs' federal constitutional claims and have adjudicated similar claims on numerous occasions.  *See, e.g.*, *Brown v. Handgun Permit Review Bd.*, 188 Md. App. 455, 472 n.6 (Md. Ct. Spec. App. 2009) (interpreting the scope of the Second Amendment as it applies to Maryland's handgun carry permit laws), *cert. denied*, 412 Md. 495 (Md. 2010); *Williams v. State*, 188 Md. App. 691, 699 (Md. Ct. Spec. App. 2009) (same), *cert. granted*, 412 Md. 495 (Md. 2010); *Scherr*, 163 Md. App. at 443 (interpreting the scope of the Second Amendment as it applies to Maryland's handgun carry permit laws and affirming the Circuit Court's decision to affirm the decision of the Handgun Permit Review Board).[8]  Indeed, Maryland law not only permits a constitutional challenge to a statute to be raised in the course of an administrative proceeding; case law generally requires that such a challenge, whether facial or as applied, must be initially litigated in the administrative proceeding.  *Insurance Commissioner of the State of Maryland v. Equitable Life Assurance Society*, 339 Md. 596, 622-23, 664 A.2d 862, 875-76 (1995) (any constitutional challenge must be raised in administrative proceeding where "the only avenue of relief is the statutorily prescribed administrative and judicial review proceedings," or where "a constitutional challenge to a statute, regardless of its nature, is intertwined with the need to consider evidence and render findings of fact," and "the legislature has created an administrative proceeding for such purpose.").  Accordingly, the third prong of the *Younger* abstention test is met as well.

---

[8] These decisions, of course, predate the Supreme Court's ruling in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010).  That fact increases, not diminishes, the importance of permitting the State courts to have the opportunity to address the constitutional implications of that decision for the important interests embedded in the State's handgun carry permit laws.

SAF is not saved from abstention by the fact that only Mr. Woollard's claims are 'ongoing' before the state courts.  Because the claims raised by both plaintiffs are identical, adjudication of SAF's claims in federal court while Mr. Woollard's claims are pending in State court would necessarily be, at best, duplicative and, at worst, highly disruptive of the state proceedings, an outcome *Younger* and its progeny seek to avoid.  As the Supreme Court has stated:

> The rule in *Younger v. Harris* is designed to permit state courts to try state cases free from interference by federal courts, particularly where the party to the federal case may fully litigate his claim before the state court.  Plainly, the same comity considerations apply where the interference is sought by some, such as appellees, [that are] not parties to the state case.

*Hicks*, 422 U.S. at 349 (internal quotations, alterations, and citations omitted).  Accordingly, because the State administrative process for handgun carry permit denial review provides an adequate opportunity for Mr. Woollard to fully litigate his federal claims, and because SAF's federal claims are identical to Mr. Woollard's federal claims, *Younger* abstention applies. *Middlesex*, 457 U.S. at 436 (in case involving a federal constitutional challenge brought by several organizations and one individual, holding that the district court's decision to abstain on *Younger* grounds was appropriate because the individual could raise the parties' federal constitutional claims in a pending state administrative proceeding against him); *Bozardt*, 539 F.2d at 342 (in case involving a federal constitutional challenge brought by one organization and one individual, holding that the district court's decision to abstain on *Younger* grounds was appropriate in part because "it is recognized [under *Younger*] that when both state and federal questions are properly presented . . . in certain pending state civil proceedings, principles of

comity and federalism require that the federal courts not be permitted to interfere") (internal citations omitted).

## II.   PLAINTIFF SECOND AMENDMENT FOUNDATION LACKS STANDING.

If the Court does not abstain, it should find that SAF lacks standing to bring this case. Article III of the U.S. Constitution limits the power of federal courts to the adjudication of "cases" and "controversies."   U.S. Const., art. III, § 2.   This means that federal courts are restricted to hearing matters which directly involve the redress or prevention of "actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Institute*, 129 S. Ct. 1142, 1148 (2009).   The standing doctrine is a reflection of this limitation, *see Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, ---, 128 S. Ct. 2531, 2535 (2008) ("Th[e] case-or-controversy requirement is satisfied only where a plaintiff has standing."); it requires federal courts to ascertain whether the plaintiff has alleged that he is suffering or will suffer an actual or imminently threatened injury before allowing him to invoke federal-court jurisdiction.   *Summers*, 129 S. Ct. at 1149.   This imminent actual injury requirement of standing serves to ensure that the plaintiff has a "personal stake in the outcome of the controversy."   *Warth v. Seldin* , 422 U.S. 490, 498 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).   "This is the threshold question in every federal case, determining the power of the court to entertain the suit."   *Id.*

To demonstrate the "irreducible constitutional minimum of standing," the plaintiff must allege: (1) "an injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical"; (2) "causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and

(3) "redressability – a likelihood that the requested relief will redress the alleged injury." *McBurney v. Cuccinelli*, --- F.3d ----, 2010 WL 2902787, *6 (4th Cir. July 27, 2010) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998)). If any one of these requirements is not met, the plaintiff will be found to lack standing. *See, e.g.*, *Steel Co.*, 523 U.S. at 109 (finding plaintiff organization to lack standing where it had failed to meet the redressability requirement).

SAF has failed to allege any harm that it, as an organization, has suffered that is concrete and actual or imminent as a result of Mr. Woollard's handgun carry permit denial. Accordingly, it has failed to meet the first requirement of standing. *Hodgkins v. Holder*, 677 F. Supp. 2d 202, 206 (D. D.C. 2010) (finding, in similar case, that SAF had not alleged a sufficient injury to itself and therefore lacked standing on its own).

An organization that lacks standing on its own may nonetheless claim "associational standing"[9] to enforce the rights of its members. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)); *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007). An organization is deemed to have associational standing

---

[9] "Associational standing" is sometimes referred to as "organizational standing." *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 n.3 (4th Cir. 2005) (discussing the interchangeability of the terms "associational standing" and "organizational standing"). Both are considered to be versions of "representational standing." *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996) (noting that "the notion of 'associational standing' is only one strand" of the "entire doctrine of 'representational standing'"); *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 225 (4th Cir. 2001) (citing the three *Hunt* requirements for associational standing in its description of representational standing).

when it can show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343; *see Fielder*, 475 F.3d at 186 (quoting same).  Failure to meet any one of these three requirements warrants dismissal on standing grounds.  *See, e.g.*, *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320-22 (4th Cir. 2002) (affirming dismissal for lack of standing where organization had failed to show that any of its individual members would otherwise have standing).

SAF, while alleging that it "has over 650,000 members and supporters nationwide, including Maryland," Compl. ¶ 2, has failed to allege that any of its members would have standing to challenge Maryland's handgun carry permit laws in their own right, let alone whether any of its members – and not simply supporters – are Maryland residents.  Accordingly, SAF has failed to meet the first requirement of associational standing.  *Hodgkins*, 677 F. Supp. 2d at 206 (finding that SAF lacked associational standing to challenge a gun law where it failed to allege that any of its members were affected by that law).  If the Court denies Defendants' Motion to Dismiss on abstention grounds, Defendants will request the opportunity to conduct limited discovery as to SAF's standing to bring this action.

## III.   COUNT II FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

In Count II, Plaintiffs contend that § 5-306(a)(5)(ii)'s

> requirement that handgun carry permit applicants demonstrate cause for the issuance of a permit violates Plaintiffs' Fourteenth Amendment right to equal protection of the law, damaging them in violation of 42 U.S.C. § 1983.

19

> Plaintiffs are therefore entitled to permanent injunctive relief against the enforcement of this provision.

Compl. ¶ 33.  Other than an incorporation by reference of earlier paragraphs of the Complaint, Plaintiffs do not make any factual allegations in support of Count II.

A Complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It is *not* sufficient that the pleadings merely leave "open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery."  *Id.* at 561-62 (internal quotation and alteration omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950 (2009).  Only when there are well-pleaded factual allegations should a court assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id.*

Plaintiffs' allegations with respect to Count II are wholly insufficient to provide even minimal notice of the basis for their claim of an equal protection violation.  Plaintiffs have not identified any suspect classification made by § 5-306(a)(5)(ii), nor have they alleged the disparate treatment of any similarly situated groups or individuals.  Plaintiffs' bare legal

allegations without any supporting factual allegations are insufficient to state a claim.  Pursuant to Rule 12(b)(6), Count II must be dismissed.

## CONCLUSION

For all of the above reasons, Plaintiffs' Complaint should be dismissed, with prejudice,[10] and judgment should be entered in favor of the Defendants as to all claims.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

DAN FRIEDMAN (Bar ID. 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle
Annapolis, Maryland 21401
(410) 946-5600
dfriedman@oag.state.md.us

_____/s/_____
MATTHEW J. FADER (Bar ID. 29294)
Assistant Attorney General
STEPHEN M. RUCKMAN (Bar ID. 28981)
Attorney
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7906
mfader@oag.state.md.us
sruckman@oag.state.md.us

Dated: September 20, 2010

---

[10] "[W]hen a district court abstains from a case based on *Younger,* it should typically dismiss the case with prejudice; not on the merits, but instead because the court is denied the equitable discretion ever to reach the merits." *Nivens v. Gilchrest*, 444 F.3d 237, 247 (4th Cir. 2006) (*Nivens II*) (internal citation omitted); *see Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("*Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts.").