IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, et al., | ) | Case No. 1:10-cv-02068-JFM |
| | ) | |
| Plaintiffs, | ) | PLAINTIFFS' MEMORANDUM OF |
| | ) | POINTS AND AUTHORITIES IN |
| v. | ) | OPPOSITION TO MOTION TO |
| | ) | DISMISS |
| TERRENCE SHERIDAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
<u>OPPOSITION TO MOTION TO DISMISS</u>

**COME NOW** the Plaintiffs, Raymond Woollard and Second Amendment Foundation, Inc., by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss.

| | |
|---|---|
| Dated: October 7, 2010 | Respectfully submitted, |
| | |
| Alan Gura | Cary J. Hansel |
| Gura & Possessky, PLLC | Joseph, Greenwald & Laake |
| 101 N. Columbus Street, Suite 405 | 6404 Ivy Lane, Suite 400 |
| Alexandria, VA 22314 | Greenbelt, MD 20770 |
| 703.835.9085/Fax 703.997.7665 | 301.220.2200/Fax 301.220.1214 |
| | |
| By: <u>/s/ Alan Gura             </u> | By: <u>/s/ Cary J. Hansel             </u> |
|     Alan Gura |     Cary J. Hansel |
| | |
| | Attorneys for Plaintiffs |

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. *YOUNGER* ABSTENTION IS INAPPLICABLE TO THIS LAWSUIT.. . . . . . . . . . . . . 2

    A. Abstention is the Rare Exception – Not the Rule. . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. Defendants Fail to Satisfy *Younger*'s Threshold Test Because Any Hypothetical Underlying Administrative Action Is Not a Coercive Matter Initiated By the State.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C. *Younger* Cannot Require Plaintiffs to Exhaust State Administrative Remedies.. . 5

    D. *Younger* Cannot Apply in the Absence of an Ongoing State Proceeding. . . . . . . 7

    E. *Younger* Cannot Reach the Second Amendment Foundation's Claims.. . . . . . . . 8

    F. *Younger* Abstention Does Not Apply to Flagrant Constitutional Violations.. . . . 9

II. THE SECOND AMENDMENT FOUNDATION CLEARLY HAS ORGANIZATIONAL AND REPRESENTATIONAL STANDING. . . . . . . . . . . . 10

    A. SAF Has Organizational Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B. SAF Has Representational Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. THE EQUAL PROTECTION CLAIM PROVIDES THE DEFENSE SUFFICIENT NOTICE... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

REQUEST FOR HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES

Cases

*Amanatullah* v. *State Bd. of Med. Examiners*,
 187 F.3d 1160 (10th Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ankenbrandt* v. *Richards*,
 504 U.S. 689 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bender* v. *Suburban Hosp., Inc.*,
 159 F.3d 186 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brown* v. *Day*,
 555 F.3d 882 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Coastal Distrib., LLC* v. *Town of Babylon*,
 2005 U.S. Dist. LEXIS 40795 (E.D.N.Y. July 15, 2005). . . . . . . . . . . . . . . . . . . . . . . . 8

*Cohens* v. *Virginia*,
 19 U.S. (6 Wheat.) 264 (1821).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Colorado River Water Conservation Dist.* v. *United States*,
 424 U.S. 800 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cooper* v. *Bombela*,
 34 F. Supp. 2d 693 (N.D. Ill. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*District of Columbia* v. *Heller*,
 128 S. Ct. 2783 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Doran* v. *Salem Inn, Inc.*,
 422 U.S. 922 (1975).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fair Employment Council* v. *BMC Mktg. Corp.*,
 28 F.3d 1268 (D.C. Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Forty One News, Inc.* v. *County of Lake*,
 491 F.3d 662 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gottfried* v. *Med. Planning Services*,
    142 F.3d 326 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Green* v. *Tucson*,
    255 F.3d 1086 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Haitian Refugee Ctr.* v. *Gracey*,
    809 F.2d 794 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Havens Realty Corp.* v. *Coleman*,
    455 U.S. 363 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hawaii Housing Authority* v. *Midkiff*,
    467 U.S. 229 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hospital Council of Western Pennsylvania* v. *Pittsburgh*,
    949 F.2d 83 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*International Union, United Auto., etc.* v. *Brock*,
    477 U.S. 274 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kercado-Melendez* v. *Aponte-Roque*,
    829 F.2d 255 (1st Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Laurel Sand & Gravel, Inc.* v. *Wilson*,
    519 F.3d 156 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Lemon* v. *Tucker*,
    664 F. Supp. 1143 (N.D. Ill. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Liberty Mut. Ins. Co.* v. *Hurlbut*,
    585 F.3d 639 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Martinez* v. *Martinez*,
    2010 U.S. Dist. LEXIS 38109 (D.N.M. Mar. 30, 2010). . . . . . . . . . . . . . . . . . . . . . . 4

*Maryland State Conf. of NAACP Branches* v. *Maryland Dep't of State Police*,
    72 F. Supp. 2d 560 (D. Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Middlesex County Ethics Comm.* v. *Garden State Bar Ass'n*,
    457 U.S. 423 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moore* v. *City of Asheville*,
    396 F.3d 385 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Moore* v. *Sims*,
    442 U.S. 415 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Muscarello* v. *United States*,
    524 U.S. 125 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nader* v. *Keith*,
    385 F.3d 729 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*New Orleans Public Serv.* v. *Council of New Orleans*,
    491 U.S. 350 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Norfolk & Western Ry. v. Pub. Util. Comm'n of Ohio*,
    926 F.2d 567 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ohio Civil Rights Commission* v. *Dayton Christian Schools, Inc.*,
    477 U.S. 619 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*O'Neill* v. *City of Philadelphia*,
    32 F.3d 785 (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Patsy v. Florida Board of Regents*,
    457 U.S. 496 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Retired Chicago Police Ass'n* v. *City of Chicago*,
    7 F.3d 584 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Slayton* v. *White (In re Slayton)*,
    409 B.R. 897 (Bankr. N.D. Ill. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Springfield Branch, NAACP* v. *City of Springfield*,
    139 F. Supp. 2d 990 (C.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sullivan* v. *City of Pittsburgh*,
    811 F.2d 171 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Telco Communications, Inc.* v. *Carbaugh*,
    885 F.2d 1225 (4th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Thomas* v. *Texas State Bd. of Med. Exam'rs*,
    807 F.2d 453 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United Food & Commercial Workers Union Local*
    *751* v. *Brown Group, Inc.*, 517 U.S. 544 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Warth* v. *Seldin*,
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Wiley* v. *Mayor of Baltimore*,
    48 F.3d 773 (4th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wright* v. *Roanoke Redev't & Hous. Auth.*,
    479 U.S. 418 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Younger* v. *Harris*,
    401 U.S. 37 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


Statutes and Rules

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


Other Authorities

Black's Law Dictionary (6th Ed. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SAF Mission Statement at http://www.saf.org/default.asp?
    p=mission (last visited on October 5, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION TO DISMISS

PRELIMINARY STATEMENT

Defendants do not contest the Complaint's essential allegation: that they force handgun carry license applicants to prove a need to exercise their fundamental Second Amendment rights under arbitrary standards. Instead, Defendants offer three non-substantive claims: that *Younger* abstention applies because Plaintiff Woollard has not exhausted administrative remedies; that Plaintiff Second Amendment Foundation ("SAF") lacks standing; and that the Complaint fails to adequately describe an equal protection violation.

These defenses lack merit. *Younger* abstention is inapplicable in cases where the plaintiff, not the state, brought the underlying action in favor of which abstention is sought. Of course, there is also the problem that there *is* no other related matter currently pending in the state courts. Nor does *Younger* apply in cases such as this, where the constitutional violation is flagrant and readily apparent. In any event, there is no conceivable other proceeding by Plaintiff SAF. And even if a *Younger* theory could somehow be elucidated, it has long been established that plaintiffs need not exhaust state administrative remedies before proceeding under 42 U.S.C. § 1983. The *Younger* theory boils down to nothing more than a demand that Plaintiffs exhaust state administrative remedies in Section 1983 actions, and for this reason alone it plainly lacks merit.

It is equally well-established that civil rights organizations have representational and organizational standing to challenge the constitutionality of state enactments under Section 1983. And finally, the Complaint plainly states that the Equal Protection Clause is violated by the imposition of an improper licensing standard with respect to a fundamental right.

1

ARGUMENT

I.   *YOUNGER* ABSTENTION IS INAPPLICABLE TO THIS LAWSUIT.

  A.   <u>Abstention is the Rare Exception – Not the Rule</u>.

The doctrine of *Younger* abstention[1] originally cautioned federal courts from interfering with state criminal prosecutions, as a matter of comity and deference to state processes within the original police power of the States. However, *Younger* did not alter the basic concept that "[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens* v. *Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

Accordingly, the Supreme Court adheres to the bedrock principle that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate the controversy properly before it." *Colorado River Water Conservation Dist*. v. *United States*, 424 U.S. 800, 813 (1976)). "It is axiomatic . . . that abstention from the exercise of federal jurisdiction is the exception, not the rule. Abstention rarely should be invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Ankenbrandt* v. *Richards*, 504 U.S. 689, 705 (1992) (citation and internal quotation marks omitted); *New Orleans Public Serv.* v. *Council of New Orleans*, 491 U.S. 350, 359 (1988); *Hawaii Housing Authority* v. *Midkiff*, 467 U.S. 229, 236 (1984).

Likewise, "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a

---

  [1]*Younger* v. *Harris*, 401 U.S. 37 (1971).

federal court's refusal to decide a case in deference to the States." *New Orleans*, 491 U.S. at 368 (citing *Moore* v. *Sims*, 442 U.S. 415, 423 n. 8 (1979) ("we do not remotely suggest 'that every pending proceeding between a State and a federal plaintiff justifies abstention unless one of the exceptions to *Younger* applies'") (other citation omitted). And mere overlap in jurisdiction, factual subject matter or legal issues between state and federal actions does not implicate *Younger*. *See Green* v. *Tucson*, 255 F.3d 1086, 1098 (9th Cir. 2001) ("That some issues may be litigated in the federal court that are also pending before the state courts in the parallel lawsuit does not implicate the *Younger* doctrine.")

Thus, any *Younger* claim bears a heavy burden under the most appropriate circumstances. And this case is nowhere near *Younger* territory.

> B.  Defendants Fail to Satisfy *Younger*'s Threshold Test Because Any Hypothetical Underlying Administrative Action Is Not a Coercive Matter Initiated By the State.

The theory behind *Younger* abstention is that federal courts ought to be free to choose not to interfere with a State's attempt to enforce its own laws through affirmative enforcement procedures, be they criminal or civil. However, this principle of comity has no application in instances in which it is not the government, but the federal plaintiff who instituted the collateral State proceedings. In such circumstances, the federal court is not interfering with the State's efforts to enforce its own laws and there is no justification for abstention.

Courts across the country have uniformly rejected application of *Younger* abstention where the federal plaintiff, not the state, initiated the state proceedings. In fact, one court went so far as to find the argument that *Younger* applies under these circumstances to be "frivolous[ ]." *Nader* v. *Keith*, 385 F.3d 729, 731-32 (7th Cir. 2004). "*Younger* abstention is appropriate only

3

when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News, Inc.* v. *County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007); *Brown* v. *Day*, 555 F.3d 882 (10th Cir. 2009); *Slayton* v. *White (In re Slayton)*, 409 B.R. 897, 906 (Bankr. N.D. Ill. 2009); *Martinez* v. *Martinez*, 2010 U.S. Dist. LEXIS 38109 at *42-49 (D.N.M. Mar. 30, 2010).

Fourth Circuit precedent likewise forecloses this sort of *Younger* claim. The Fourth Circuit has instructed that *Younger* bars parallel claims by "a defendant to a coercive state administrative proceeding." *Laurel Sand & Gravel, Inc.* v. *Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) (quoting *Moore* v. *City of Asheville*, 396 F.3d 385, 388 (4th Cir. 2005)). And by "coercive proceeding," the Fourth Circuit means more than mere initiation of contact by the State with the federal plaintiff. The Fourth Circuit requires that there be a "formal enforcement action":

> We decline to hold that *Younger* abstention is required whenever a state bureaucracy has initiated contact with a putative federal plaintiff. Where no formal enforcement action has been undertaken, any disruption of state process will be slight. While important state interests are present in connection with this or any state statute, the strength of those interests will be respected by any court assessing a plaintiff's constitutional claims.

*Telco Communications, Inc.* v. *Carbaugh,* 885 F.2d 1225, 1229 (4th Cir. 1989); *cf. Laurel Sand & Gravel*, 519 F.3d at 166 ("clearly coercive" proceedings).

Of course, in this case, the contact – and proceedings, were initiated by *Plaintiff Woollard*, not the State. It was Woollard who applied for his permit renewal, and Woollard who administratively appealed to Defendant board members. The State has never initiated any sort of coercive proceedings against Woollard, nor is it remotely possible to claim that Woollard was ever the "defendant" in a "formal enforcement action." *Telco*, 885 F.3d at 1229; *cf. Brown*, 555 F.3d at 889 (*Younger* inapplicable in action to reinstate terminated benefits).

The notion that the license application appeal was "coercive" because Plaintiff requires a license to exercise his right lacks any limiting principle. Under this view, state actors are entirely immune from federal court actions enforcing 42 U.S.C. § 1983. After all, by definition, in every constitutional case, the government is applying or threatening to apply some controverted process against the plaintiff. The *Younger* claim in this instance is nothing more than the State's desire to avoid federal court review of the constitutionality of its acts, and is not remotely related to the preservation of any State prerogative to the enforcement of its laws.

As one court repeatedly found,

> The central feature to every *Younger* case is . . . not present here. The federal plaintiffs in this case are not defendants in the state action. They therefore cannot raise their federal claims by way of defense in the state proceedings . . . unlike every other *Younger* case, the relationship of the parties to this federal action is not an inversion of their relationship in the related state action. The relationship is the same. This is not a mere technical aberration. It means that the fundamental concern of *Younger* is absent here.

*Cooper* v. *Bombela*, 34 F. Supp. 2d 693, 696-697 (N.D. Ill. 1999) (quoting *Lemon* v. *Tucker*, 664 F. Supp. 1143, 1147 (N.D. Ill. 1987)).

    C.    *Younger* Cannot Require Plaintiffs to Exhaust State Administrative Remedies.

It is easy to see why the Seventh Circuit has labeled Defendants' *Younger* theory "frivolous." *Nader*, 385 F.3d at 731. It is simply beyond dispute that Plaintiffs cannot be required to exhaust their state administrative remedies prior to initiating a lawsuit under Section 1983. *See Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982). "[T]he existence of a state administrative remedy does not ordinarily foreclose resort to § 1983." *Wright* v. *Roanoke Redev't & Hous. Auth.*, 479 U.S. 418, 427-28 (1987). This is a very basic, well-established aspect of Section 1983 litigation.

5

Hence *Younger* can only apply in cases where the state action is "coercive." Where a state initiates the proceedings, it is entitled to a measure of comity and deference in enforcing its law. But where the individual initiates the proceedings, applying *Younger* would violate *Patsy*. In that instance, it is the Plaintiff who has the right to access the federal courts for a review of the constitutionality of state action. The non-conflict between *Younger* and *Patsy* was resolved long ago, in *Ohio Civil Rights Commission* v. *Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986). Defendants cite this opinion repeatedly, but somehow miss its central holding on the topic:

> The application of the *Younger* principle to pending state administrative proceedings is fully consistent with *Patsy* v. *Florida Board of Regents*, 457 U.S. 496 (1982), which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. *Unlike Patsy, the administrative proceedings here are coercive rather than remedial . . .*

*Id.*, 477 U.S. at 627 n.2 (other citation omitted) (emphasis added).

The Fourth Circuit understands the distinction, hence its requirement that *Younger* apply only where the underlying state action is "coercive." *Laurel Sand & Gravel*, 519 F.3d at 166. Other circuits are in accord:

> The crucial distinction between *Dayton Christian Schools* and *Patsy* is that in *Patsy* the state proceeding was an option available to the federal plaintiff on her own initiative to redress a wrong inflicted by the state. In *Dayton Christian Schools* and the other abstention cases noted above, the federal plaintiffs sought to enjoin a pending state proceeding which they did not initiate, but in which their presence was mandatory.

*Kercado-Melendez* v. *Aponte-Roque*, 829 F.2d 255, 260 (1st Cir. 1987).

> The critical distinction between *Dayton Christian Schools* and *Patsy* is that *Patsy* involved a *remedial* action brought by the plaintiff to vindicate a wrong which had been inflicted by the State. In contrast, *Dayton Christian Schools* involved an administrative proceedings initiated by the State, before a state forum, to enforce a violation of state law. That is, in *Dayton Christian Schools*, the action taken by the Ohio Civil Rights Commission was *coercive* rather than remedial.

*O'Neill* v. *City of Philadelphia,* 32 F.3d 785, 791 n.13 (3d Cir. 1994); *see also Brown*, 555 F.3d at 890-92. The Northern District of Illinois captured the distinction well:

> [I]f this court were to abstain in this case merely because the state plaintiffs can raise their federal claims in state administrative proceedings, then the result would essentially be a requirement that a federal plaintiff exhaust his constitutional claims in a state forum before resorting to a federal forum. The Supreme Court . . . has explicitly held that such a view would be contrary to law. That rule of nonexhaustion is precisely why the Supreme Court, when it extended *Younger* abstention to state administrative proceedings, required that those proceedings be coercive rather than remedial in nature. In *Dayton Christian Schools* the Court applied *Younger* because the state had already initiated a state proceeding to enforce state law, a coercive process. By contrast, here the federal plaintiffs have earlier brought a remedial action in state administrative proceedings to vindicate their own state law rights. This Court is not about to impose a requirement of exhaustion of their federal constitutional claims in the face of the uniform Section 1983 jurisprudence that rejects such a requirement. *Younger* abstention does not apply abstention to this case.

*Cooper*, 34 F. Supp. 2d at 697 (citations and footnote omitted).

        D.      <u>*Younger* Cannot Apply in the Absence of an Ongoing State Proceeding</u>.

"[W]e have never applied the notions of comity so critical to *Younger*'s 'Our Federalism' when no state proceeding was pending . . ." *Ankenbrandt*, 504 U.S. at 775. In *Middlesex County Ethics Comm.* v. *Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982), the Supreme Court articulated a three-part test to determine if *Younger* abstention is appropriate. The very first of these requirements – that there be an ongoing state judicial proceeding – cannot be met here. *See Liberty Mut. Ins. Co.* v. *Hurlbut*, 585 F.3d 639 (2d Cir. 2009) ("Common to all the cases in which the *Younger* abstention doctrine is applied is the need to find that state proceedings, whether they be criminal, civil or administrative, are ongoing or 'pending.'"); *Amanatullah* v. *State Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999).

Defendants suggest that "the Board affirmed the denial" of the plaintiff's handgun permit and further that, "Mr. Wollard declined to exercise his right…to seek judicial review." Def. Mot. at 3.  Under such circumstances, there is no pending State court matter and *Younger* abstention has no application. *See Coastal Distrib., LLC* v. *Town of Babylon*, 2005 U.S. Dist. LEXIS 40795 (E.D.N.Y. July 15, 2005); *Norfolk & Western Ry. v. Pub. Util. Comm'n of Ohio*, 926 F.2d 567, 572-73 (6th Cir. 1991) (*Younger* abstention does not apply if administrative proceedings have been completed and the agency's ruling has not been appealed); *Thomas* v. *Texas State Bd. of Med. Exam'rs*, 807 F.2d 453, 456 (5th Cir. 1987) (same).

Again, this is not a case where the state took action against Woollard, and he refused to pursue his rights to defend himself in a state proceeding. Woollard sought a permit, and upon denial, he merely declined to seek a state remedy, preferring to assert his federal constitutional rights in federal court. There simply are no state proceedings for abstention purposes.

E.    *Younger* Cannot Reach the Second Amendment Foundation's Claims.

*Younger* does not apply to SAF's claims because the Foundation is not a party to any related state proceeding. *See Gottfried* v. *Med. Planning Services*, 142 F.3d 326, 329 (6th Cir. 1998) (where a litigant is not subject to a pending prosecution or civil enforcement action, *Younger* abstention does not apply); *Sullivan* v. *City of Pittsburgh*, 811 F.2d 171, 177 (3d Cir. 1987) ("where the plaintiff in a federal action is not a party to the state proceeding, *Younger* concerns about federal adjudication do not arise.") (citing *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 930 (1975)).

F.  *Younger* Abstention Does Not Apply to Flagrant Constitutional Violations.

Defendants' careful avoidance of the complaint's merits hints at the non-viability of their abstention request. *Younger* abstention does not apply where, as here, the "challenged provision is flagrantly and patently violative of express constitutional prohibitions." *Moore* v. *Sims*, 442 U.S. at 423; *New Orleans*, 491 U.S. at 367 (same) (quoting *Younger*, 401 U.S. at 53-54).

For purposes of this motion, it is enough to observe that the Second Amendment right to bear arms is the right to carry them in public. Faced with a competing vision of the constitutional text's meaning, that is what the Supreme Court expressly held just two years ago: "At the time of the founding, as now, to 'bear' meant to 'carry.'" *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2793 (2008) (citations omitted). To "bear arms," as used in the Second Amendment, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 128 S. Ct. at 2793 (quoting *Muscarello* v. *United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)); BLACK'S LAW DICTIONARY 214 (6th Ed. 1998)); *see also Heller*, 128 S. Ct. at 2804 ("the Second Amendment right, protecting only individuals' liberty to keep *and carry* arms . . ."), at 2817 ("the right to keep *and carry* arms") (emphasis added). "[B]ear arms means . . . simply the carrying of arms . . ." *Heller*, 128 S. Ct. at 2796.

However else the State may regulate this activity, the issue here is the government's denial of this fundamental right on the grounds that a citizen has not *proven* his or her entitlement to exercise it. There can be no more flagrant violation of a constitutional right than a statutory scheme that places the burden on the individual to prove his or her entitlement to the

9

right's exercise, subject to the complete, unbridled discretion of a licensing authority. *Younger* cannot insulate such laws from federal court review.

II.   THE SECOND AMENDMENT FOUNDATION CLEARLY HAS ORGANIZATIONAL AND REPRESENTATIONAL STANDING.

   A.   <u>SAF Has Organizational Standing</u>.

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth* v. *Seldin*, 422 U.S. 490, 511 (1975). When a group is forced to spend resources, devoting its time and energy to dealing with certain conduct, it has standing to challenge that conduct. *See*, *e.g.*, *Havens Realty Corp*. v. *Coleman*, 455 U.S. 363 (1982).

SAF educates, researches, and publishes about gun control and its consequences. It has to educate its members, and the public, about the government's enforcement of gun laws. When people have questions about the government's firearms policies, they turn to SAF. The government's enforcement of the challenged provisions thus directly impacts the organization. *Fair Employment Council* v. *BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994); *Haitian Refugee Ctr.* v. *Gracey*, 809 F.2d 794, 799 (D.C. Cir. 1987). Accordingly, SAF has organizational standing in this case to sue on its own behalf.

   B.   <u>SAF Has Representational Standing</u>.

   An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*United Food & Commercial Workers Union Local 751* v. *Brown Group*, Inc., 517 U.S. 544, 553 (1996) (citation omitted).

10

The first prong is easily met: Mr. Woollard is a member of SAF. As he has standing, so does SAF. *See, e.g. Springfield Branch, NAACP* v. *City of Springfield*, 139 F. Supp. 2d 990, 993 (C.D. Ill. 2001) (concluding that NAACP clearly had standing with respect to racial discrimination claims, where two African-American members were plaintiffs). Indeed, since many SAF members are impacted by the challenged laws, representational standing is apparent. *Wiley* v. *Mayor of Baltimore*, 48 F.3d 773, 775-76 (4th Cir. 1995); *Maryland State Conf. of NAACP Branches* v. *Maryland Dep't of State Police*, 72 F. Supp. 2d 560, 565 (D. Md. 1999).

The second prong of the representational standing test, that the interests at issue in the litigation are "germane to the organization's purpose," is self-evidently met here. The Second Amendment Foundation was founded and organized for the purpose of "promoting a better understanding about our Constitutional heritage to privately own and possess firearms," and to "carry on many educational and legal action programs designed to better inform the public about the gun control debate." *See* SAF Mission Statement at http://www.saf.org/default.asp?p=mission (last visited on October 5, 2010); Complaint, ¶ 2. Plainly, the prosecution of this lawsuit fits squarely within the SAF's mission.

The third and final prong of the associational standing test is that neither the claim asserted nor the relief requested requires the participation of all individual members in the lawsuit. "[S]o long as the nature of the claim and the relief sought does not make individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." *Warth*, 422 U.S. at 511. That each individual member's claim for relief may differ based on unique facts does not prevent an association from seeking injunctive and declaratory relief

11

relating to the standards to be applied in such cases. *International Union, United Auto., etc.* v. *Brock*, 477 U.S. 274, 288 (1986); *see also Retired Chicago Police Ass'n* v. *City of Chicago*, 7 F.3d 584, 601 (7th Cir. 1994); *Hospital Council of Western Pennsylvania* v. *Pittsburgh,* 949 F.2d 83, 89 (3d Cir. 1991).

This case involves no individualized determinations whatsoever, but is and will be constrained to the simple and straightforward legal questions in the Complaint.  Therefore, no individualized proof will be necessary and the participation of individual SAF members will not be required.  As nothing about this case will require the participation of every SAF member, the third and final representational standing element is met.

III.     THE EQUAL PROTECTION CLAIM PROVIDES THE DEFENSE SUFFICIENT NOTICE.

In its final argument, the defense claims that Count II (U.S. Const.., Amend. XIV, Equal Protection, 42 U.S.C. § 1983) ought to have been pleaded with greater specificity.  After incorporating the entirety of the Complaint, this count further provides that "Maryland Public Safety Code § 5-306(a)(5)(ii)'s requirement that handgun carry permit applicants demonstrate cause for the issuance of a permit violates Plaintiffs' Fourteenth Amendment right to equal protection of the law, damaging them in violation of 42 U.S.C. § 1983." See Complaint ¶ 33. Nothing further is required.

The present Complaint gives fair notice about what the claim is and the grounds upon which it rests.  The Complaint lays out, in sufficient detail, the plaintiff's attempt to obtain a permit, his denial and all other relevant facts.  See Complaint, ¶¶ 9-25.  Next, the Complaint quotes the exact statutory language being challenged.  See Complaint, ¶30.  Then the Complaint

cites the specific constitutional language transgressed by the statute.  See Complaint, Count II.  Finally, the Complaint details the injury to Mr. Woollard and the relief sought.  See Complaint, ¶¶ 24-25 & Prayer for Relief.

"[N]otice-pleading does not require 'detailed factual allegations.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Bender* v. *Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) ("notice pleading does not require plaintiff to expound the facts"). The Federal Rules of Civil Procedure set a clear standard.  All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This is exactly what the defense has been provided -- nothing more and nothing less. It requires no effort to discern that when a Plaintiff complains that he has a fundamental right, and is being denied access to that right based on improper and arbitrary standards, the Equal Protection Clause is implicated because the Defendants are improperly classifying individuals with respect to the exercise of a fundamental constitutional right.

## REQUEST FOR HEARING

The plaintiffs respectfully request a hearing.

| | |
|---|---|
| Dated: October 7, 2010 | Respectfully submitted, |
| Alan Gura | Cary J. Hansel |
| Gura & Possessky, PLLC | Joseph, Greenwald & Laake |
| 101 N. Columbus Street, Suite 405 | 6404 Ivy Lane, Suite 400 |
| Alexandria, VA 22314 | Greenbelt, MD 20770 |
| 703.835.9085/Fax 703.997.7665 | 301.220.2200/Fax 301.220.1214 |
| By: /s/ Alan Gura | By: /s/ Cary J. Hansel |
| Alan Gura | Cary J. Hansel |
| | Attorneys for Plaintiffs |

13