IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RAYMOND WOOLLARD, et al.** | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 1:10-cv-02068-JFM |
| | * | |
| **TERRENCE SHERIDAN,** *et al.*, | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY IN SUPPORT OF MOTION TO DISMISS

In their opposition to Defendants' motion to dismiss, Plaintiffs raise three main arguments against the application of *Younger* abstention to this case, all of which must fail. First, they argue that *Younger* abstention does not apply where the plaintiff, and not the State, brought the underlying action. Second, they argue that the applicability of *Younger* turns on the coercive nature of the underlying state proceeding, and that the proceeding at issue here is not coercive. Third, they contend that *Younger* abstention does not apply where there is no currently pending state proceeding. None of these theories withstand scrutiny under Supreme Court and Fourth Circuit precedent, and they must be rejected here.

Plaintiffs also argue that the Second Amendment Foundation has associational standing because Mr. Woollard is a member. To the extent that this standing may exist: (1) it was not pled; and (2) it is contingent upon the claims of Mr. Woollard, whose claims are not properly before this Court.

Finally, Plaintiffs have still failed to provide even bare notice of the basis for their equal protection claim.

Because none of Plaintiffs' arguments are availing, Defendants respectfully request that the Court grant their motion to dismiss.

## I. THE APPLICABILITY OF *YOUNGER* ABSTENTION TO A STATE ADMINISTRATIVE PROCEEDING DOES NOT TURN ON THE INITIATOR OF THAT PROCEEDING.

As the Supreme Court made clear in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), *Younger* abstention is applicable to a state administrative proceeding whenever three elements are present: (1) there is an ongoing state judicial proceeding or a state avenue of relief that is or was available to the plaintiff; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity to present federal claims. 457 U.S. at 432. No other elements need to be shown for *Younger* abstention to apply.[1] Contrary to the Seventh Circuit precedent on which Plaintiffs rely, both this Court and the Fourth Circuit have applied *Younger* abstention when the federal plaintiff, not the State, initiated the contested state administrative hearing. *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161, 167 (4th Cir. 2008) (upholding decision by this Court abstaining under *Younger* when the federal plaintiff had initiated the state proceeding); *see also Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1141-45 (8th Cir. 1990) (finding *Younger* abstention appropriate in case where plaintiff, who had filed a state administrative action that resulted in a denial of a stock acquisition, brought suit in federal court before seeking state court review of that denial).

---

[1] In *Middlesex*, the Supreme Court noted which party initiated the state administrative proceeding, but only *within* its consideration of the "important state interest" element, and not as a separate element. 457 U.S. at 434-35.

Plaintiffs' contention that *Younger* abstention only applies when the State initiates the administrative proceeding is meritless.

## II. THE APPLICABILITY OF *YOUNGER* ABSTENTION TO STATE ADMINISTRATIVE PROCEEDINGS DOES NOT TURN ON THE "COERCIVE" NATURE OF THOSE PROCEEDINGS.

Contrary to Plaintiffs' contentions, *Younger* abstention does not require a determination of whether the underlying state administrative proceeding is "coercive." Even if it did, however, the proceedings at issue here would be considered "coercive."

As the Supreme Court made clear in *Middlesex*, the relevant determination for *Younger* abstention is whether the state administrative proceeding is "judicial in nature." 457 U.S. at 433-34. Although some courts have considered whether a proceeding is "coercive" as a factor in determining whether it is "judicial in nature," whether a proceeding is "coercive" has never been found dispositive by the Supreme Court or the Fourth Circuit. *See, e.g.*, *Laurel Sand & Gravel* (noting that proceeding was "clearly coercive" in course of determination that proceeding was "judicial in nature," but relying primarily on distinction between whether proceeding was "judicial" or "legislative" in nature). Similarly, in *Moore*, while the court found that the administrative proceeding at issue was "coercive," it considered that only as a factor in its analysis.[2] 396 F.3d at 388; *see also Kaplan v. CareFirst, Inc.*, 614 F. Supp. 2d 587, 594 (D.

---

[2] The Fourth Circuit's holding in *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225 (4th Cir. 1989), does not support Plaintiffs' position. *Telco* concerned a state administrative investigation that had only involved "informal fact-finding," without any determinations or even formal proceedings, prior to the federal suit being filed. 885 F.2d at 1227. The Court, without even mentioning the word "coercive" in the majority's decision, found that *Younger* abstention was not warranted where a state enforcement action was "threatened," but no formal action had been taken. *Id.* at 1229-30 ("We decline to hold that

Md. 2009) (finding state administrative proceeding to warrant *Younger* abstention without considering whether it is "coercive"); *Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007) (same). Numerous decisions from other circuits have operated on this understanding as well. *See, e.g.*, *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658, 664 (1st Cir. 2010) (finding state administrative proceedings to be "judicial in nature" and therefore subject to *Younger* abstention without finding them to be "coercive" as well); *JMM Corp. v. Dist. of Columbia*, 378 F.3d 1117, 1126 & n.22 (D.C. Cir. 2004) (same); *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002) (same); *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) (same); *Doe v. State of Conn., Dep't of Health Servs.*, 75 F.3d 81, 85 (2d Cir. 1996) (same); *Fed. Exp. Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991) (same); *Alleghany Corp.*, 896 F.2d at 1143 (same); *but see Brown ex rel. Brown v. Day*, 555 F.3d 882 (10th Cir. 2009).

Plaintiffs' contention that a proceeding must be "coercive" to qualify for *Younger* abstention relies primarily on a footnote in the Supreme Court's decision in *Ohio Civil Rights Comm'n v. Dayton*, 477 U.S. 619, 627 n.2 (1986). Plaintiffs read too much into that footnote. In *Ohio Civil Rights Comm'n*, the Court reaffirmed the holding in *Middlesex* that *Younger* abstention applies to pending state administrative proceedings that are "judicial in nature." *Id.* at 627. It then observed in a footnote that "[t]he lower courts have been virtually uniform in holding that the *Younger* principle applies to pending state administrative proceedings in which an important state interest is involved." *Id.* at 627 n.2. In this footnote, the Court also

---

*Younger* abstention is required whenever a state bureaucracy has initiated contact with a putative federal plaintiff."). *Telco* has no application to this case, in which formal proceedings were held and decisions issued in the underlying State matter.

distinguished the proceeding before it from those at issue in *Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982) (permitting a § 1983 suit to proceed even though the plaintiff had not exhausted her state administrative remedies). The Court noted that *Patsy* was distinguishable on three bases, including that it did not involve a state proceeding that had begun before "any substantial advancement" of the federal action and that it did not involve an important state interest; thus lacking two of the three elements required by *Middlesex*. 477 U.S. at 627 n.2. The Supreme Court also noted, without further explanation, that *Patsy* involved a "remedial," rather than a "coercive," administrative proceeding. *Id.* This distinction, not tied to or made part of the core *Middlesex* analysis, has never again been invoked by the Supreme Court.[3] *See, e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987) (in case decided after *Ohio Civil Rights Comm'n*, involving ongoing state court proceedings, finding *Younger* abstention appropriate without ever mentioning the term "coercive").

Moreover, as stated in Defendants' opening memorandum, even if *Younger* abstention required a showing that the state administrative proceedings are "coercive" and not "remedial," which it does not, the underlying state proceeding at issue here would meet that requirement. Defs' Memo. at 6-7 n.4. The proceeding is not designed to, and does not, remediate any alleged past wrong. As such, it is clearly not "remedial." Moreover, a permit applicant is required to pursue the proceeding to be permitted to wear and carry a handgun without being subject to criminal penalties, and the proceeding is an integral part of Maryland's enforcement of its gun

---

[3] The dissent from the Tenth Circuit's decision in *Brown* is a particularly cogent criticism of the argument Plaintiffs are making here. *Brown*, 555 F.3d at 895 (Tymkovich, J., dissenting) ("The *Dayton* Court did not specifically say that *Younger* could apply only to coercive administrative proceedings, and the very distinction has been criticized.")

laws. Md. Code Ann., Crim. Law § 4-203; Pub. Safety § 5-303. Thus, while Defendants disagree that the "coercive" quality of a state administrative proceeding is a necessary element of the *Younger* abstention analysis, the state proceeding here *is* coercive.

### III. THE APPLICABILITY OF *YOUNGER* ABSTENTION DOES NOT RELY ON THE EXISTENCE OF CURRENTLY PENDING STATE PROCEEDINGS.

Plaintiffs' contention that *Younger* abstention relies on the existence of currently pending state proceedings is meritless. The Supreme Court made this abundantly clear in *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), a case notably absent from Plaintiffs' opposition brief. In *Huffman*, an appellee who had received an unfavorable judgment in state court under a state nuisance statute brought a federal lawsuit rather than appealing the judgment in state court. 420 U.S. at 598. The Court found that this maneuver was "designed to annul the results of a state trial," and cast "a direct aspersion on the capabilities and good faith of state appellate courts" by depriving them the opportunity to resolve the issues in contention. *Id.* at 608-09. Accordingly, even though no state proceedings were currently pending, the Court held that *Younger* abstention was appropriate. *Id.* at 609 ("We . . . hold that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies."); *see also* Defs' Opening Memo. at 8.

The Fourth Circuit has repeatedly applied this holding. *Laurel Sand & Gravel*, 519 F.3d at 167 ("whereas here [appellant] seeks to invalidate a state judgment by filing a federal action and circumventing state-court judicial remedies, the state proceedings remain 'pending' within the meaning of *Younger* abstention."); *Moore*, 396 F.3d at 396 (in case where appellant filed suit in federal court rather than appealing city fines in state court, holding that *Younger* abstention

6

applies even where "the administrative proceedings are no longer pending because of the plaintiff's failure to exhaust his administrative appellate remedies.").[4]  Thus, the fact that Mr. Woollard's state administrative proceedings are not currently active has no bearing on the *Younger* abstention analysis.[5]

---

[4] Sister circuits have applied this holding as well. *See, e.g.*, *Coggeshall*, 604 F.3d at 665-66 (finding *Younger* abstention to be appropriate notwithstanding that state proceedings had ended); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 791 (3rd Cir. 1994) (same).

[5] Plaintiffs also assert that *Younger* abstention does not apply to cases involving flagrant violations of express constitutional prohibitions, and that, according to them, this case involves a flagrant violation of an express constitutional prohibition. Pls' Opp. at 9. Plaintiffs' argument, however, relies on a broad interpretation of the Second Amendment as providing an expansive right "to carry [arms] in public." *Id.* This interpretation is not supported by the cases they cite. Although the Supreme Court has recently recognized that the Second Amendment provides individuals a right to possess a handgun in the home for self-defense, the Court: (1) has not identified the scope, if any, of the right outside of the home, *District of Columbia v. Heller*, 554 U.S. ----, 128 S.Ct. 2783, 2821-22 (2008) (holding unconstitutional a "ban on handgun possession in the home" and a "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense"); *McDonald v. City of Chicago, Ill.*, --- U.S. ----, 130 S.Ct. 3020, 3047 (2010) (holding that the right recognized in *Heller*, which is "the right to possess a handgun in the home for the purpose of self-defense," applies to the States by incorporation through the Fourteenth Amendment); (2) recognized that even the right inside the home was subject to a non-exclusive list of permissible restrictions, *Heller*, 128 S.Ct. at 2816-17 ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms"); and (3) implied that even a complete ban on carrying concealed weapons outside the home would not violate the Second Amendment, *id.* at 2816 (in discussing the fact that "the right secured by the Second Amendment is not unlimited," noting that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"). The permit statute challenged in this case does not ban, or even restrict in any way, the possession of a handgun in the home. Because there is no clear constitutional right to carry a handgun in public, this cannot be a case in which the State has engaged in the flagrant violation

## IV. SECOND AMENDMENT FOUNDATION LACKS ORGANIZATIONAL STANDING, AND ITS REPRESENTATIONAL STANDING IS CONTINGENT UPON MR. WOOLLARD, WHOSE CLAIMS ARE NOT PROPERLY BEFORE THE COURT.

In its opposition, Plaintiff Second Amendment Foundation asserts that it has organizational standing because it "educates, researches, and publishes about gun control and its consequences" and because "[t]he government's enforcement of the challenged provisions thus directly impacts the organization." Pls' Opp. at 10. These statements do not amount to a legally cognizable injury. The District Court for the District of Columbia recently rejected these same contentions from Second Amendment Foundation and held that it lacked standing. *Hodgkins v. Holder*, 677 F. Supp. 2d 202 (D. D.C. 2010). The court wrote:

> Organizations can have standing on their own behalf when they have suffered injuries. *See Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). However, Second Amendment Foundation has not alleged any sufficient injury. It contends that the work it must do fielding questions from constituents about the laws at issue justifies standing, its voluntary act of teaching cannot plausibly be the basis for a claim of constitutional injury.

*Id.* at 206. Second Amendment Foundation's organizational standing claims, which are no different in the present case, should be denied on the same ground.

Second Amendment Foundation also contends it has representational standing because Mr. Woollard is a member, a fact first disclosed in its opposition memorandum. Any representational standing, however, is contingent upon the claims of Mr. Woollard, whose claims are not properly before this Court for the reasons already discussed. *See American Civil*

---

of an express constitutional provision so as to prevent application of *Younger* abstention. Regardless, the supposed constitutional merits of Plaintiffs' claims are not currently before the Court. As discussed in Defendants' opening memorandum, the constitutional issues at stake here should be addressed to Maryland's courts. Defs' Opening Memo. at 14-15.

*Liberties Union v. Bozardt*, 539 F.2d 340, 345 (4th Cir. 1976) (holding that, until state remedies available to the individual co-plaintiff were exhausted, *Younger* abstention barred both the individual co-plaintiff and the organizational co-plaintiff from seeking equitable relief in federal court).[6]

## V. WITH RESPECT TO COUNT II, PLAINTIFFS HAVE STILL FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

With respect to Count II of their Complaint, Plaintiffs' opposition memorandum still fails to provide a description of any kind as to how the permit statute they challenge violates the Fourteenth Amendment's guarantee of equal protection of the laws. This is not mere legal formalism; we genuinely have no idea what their claim is. Defendants cannot ascertain who Plaintiffs think is being treated differently from whom under this statute, and by whom. Thus, Plaintiffs have failed to state a claim on which relief can be granted, and Count II should be dismissed. *See Giarratano v. Johnson*, 521 F.3d 298, 305 (4th Cir. 2008) (finding appellant to have failed to state a claim for violation of equal protection where he made only "conclusory assertions" of such a violation without further explanation).

---

[6] As mentioned in Defendants' opening memorandum, if the Court denies Defendants' Motion to Dismiss on abstention grounds, Defendants request the opportunity to conduct limited discovery as to Second Amendment Foundation's standing to bring this action.

## CONCLUSION

For all of the above reasons, Plaintiffs' Complaint should be dismissed, with prejudice, and judgment should be entered in favor of the Defendants as to all claims.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

DAN FRIEDMAN (Bar ID. 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle
Annapolis, Maryland 21401
(410) 946-5600
dfriedman@oag.state.md.us

      /s/
MATTHEW J. FADER (Bar ID. 29294)
Assistant Attorney General
STEPHEN M. RUCKMAN (Bar ID. 28981)
Attorney
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7906
mfader@oag.state.md.us

October 25, 2010                sruckman@oag.state.md.us