IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND WOOLLARD, et al.,     *
                                     *
       v.                            *       Civil No. JFM-10-2068
                                     *
TERRENCE SHERIDAN, et al.     *
                                     *
                                     *
                                  ******

## MEMORANDUM

Plaintiffs Raymond Woollard ("Woollard") and Second Amendment Foundation, Inc., ("SAF") have brought this action against Defendants Terrence Sheridan, Secretary and Superintendent of the Maryland State Police ("MSP Secretary Sheridan"); Denis Gallagher; Seymour Goldstein; and Charles M. Thomas, Jr., (collectively, "Defendants") claiming that one provision of Maryland's handgun carry permit law violates the Second Amendment and the Fourteenth Amendment of the Federal Constitution. Plaintiffs seek declaratory and injunctive relief. Defendants have filed a motion to dismiss on abstention grounds.[1] Alternatively, they seek dismissal of plaintiffs' equal protection claim on the ground that plaintiffs have failed to state a claim on which relief can be granted. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6.

---

[1] Defendants also assert SAF lacks standing to bring suit. I need not reach this issue, however, because it is undisputed that Woollard has standing to bring a facial challenge to the Maryland statute. In cases where, as here, plaintiffs seek injunctive and declaratory relief, so long as "at least one individual plaintiff . . . has demonstrated standing," a court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9, 97 S. Ct. 555 (1977); *see also Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160, 102 S. Ct. 205 (1981); *Md. Minority Contractor's Ass'n v. Md. Stadium Auth.*, 70 F. Supp. 2d 580, 587 (D. Md. 1998) (finding it "unnecessary" to determine whether the organizational plaintiff had "standing in a representational capacity" because the "individual plaintiffs would be entitled to the same injunctive and declaratory relief sought by [the organization] if they prevail"). I will therefore deny the Motion to Dismiss on this ground. Because SAF's standing is currently irrelevant, I will also deny Defendants' request to conduct discovery on this issue. If SAF "obtains relief different from that sought by [Woollard, the plaintiff] whose standing has not been questioned," including attorney's fees, I will at that time address the issue of SAF's standing to bring suit. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 402 n.22, 102 S. Ct. 3141 (1982).

I.

Under Maryland law, an individual must obtain a permit in order to carry a handgun in public. *See* Md. Code Ann., Pub. Safety § 5-303. The public carrying of a handgun without a permit, unless falling within one of several narrow statutory exceptions, constitutes a criminal offense punishable by a fine or imprisonment. *See* Md. Code Ann., Crim. Law § 4-203. The Maryland Public Safety Code prescribes that an individual seeking a permit must submit an application to the Secretary of the State Police, who determines whether the applicant satisfies a number of statutorily imposed requirements. *See* Md. Code Ann., Pub. Safety §§ 5-301, -304, -306. Most relevant to the present case, in order to issue a permit, the Secretary must find the applicant "has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger." § 5-306(a)(5)(ii). If the Secretary denies the application, the applicant may request an informal review of the application by the Secretary or a formal review by the Handgun Permit Review Board ("the Board"). *See* §§ 5-311 to -312. Formal review by the Board may include the presentation of additional evidence and a hearing. *See* § 5-312. The Board's decisions are subject to judicial review by the Maryland state courts under the Administrative Procedure Act. *See* § 5-312(e)(1); Md. Code Ann., State Gov't § 10-222.

Plaintiff Woollard initially obtained a handgun carry permit after he was assaulted by an intruder in his home in 2002. The permit was renewed in 2005. At that time, the intruder had recently been released from prison, providing a "good and substantial reason" for Woollard to carry a firearm. In 2009, Woollard again sought to renew his permit so that he could carry a handgun for self defense. MSP Secretary Sheridan denied Woollard's application, however, because Woollard failed to provide sufficient evidence "to support apprehended fear." (Compl.

¶¶ 17–21.) Woollard appealed this decision to the Board, of which Defendants Gallagher, Goldstein, and Thomas were members. The Board affirmed the denial following a hearing, finding that because Woollard failed to "submit[] any documentation to verify threats occurring beyond his residence, where he can already legally carry a handgun," he did not "demonstrate[] a good and substantial reason to wear, carry or transport a handgun as a reasonable precaution against apprehended danger." (*Id.* at ¶¶ 23–25.) Woollard opted not to seek state judicial review of the Board's decision.

Woollard, along with SAF, instead brought suit in this Court asserting that the requirement that a permit applicant demonstrate a "good and substantial reason to wear, carry, or transport a handgun" violates the Second Amendment right to keep and bear arms and Fourteenth Amendment right to equal protection of the law.

II.

Fed. R. Civ. P. 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. A defendant may move for dismissal pursuant to Rule 12(b)(1) in one of two ways. First, a defendant may assert that the jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Second, and more pertinent to this case, a defendant may contend that even if the jurisdictional allegations in the complaint are true, the complaint is nonetheless insufficient to confer subject matter jurisdiction. *Id.* Where, as here, a 12(b)(1) motion is framed in this manner, a district court must generally accept as true all well-pled factual allegations in the complaint, just as it would when evaluating a 12(b)(6) motion to dismiss. *Id.* In addition, a court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the

3

burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. County Commissioners*, 523 F.3d 453, 459 (4th Cir. 2008).

Defendants argue that I must abstain from deciding this case under the abstention doctrine first articulated in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971). Rooted in "fundamental notions of comity and federalism," *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) (citation omitted), the *Younger*-abstention doctrine "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515 (1982). In determining whether abstention is required, however, a court must heed the "basic proposition that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Employers Res. Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995) (quoting *Haw. Hous. Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S. Ct. 2321 (1984)). "Put simply, the doctrine of abstention is 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S. Ct. 1060 (1959)).

In *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, the Supreme Court outlined three requirements for *Younger* abstention: The relevant state proceeding must (1) "constitute an ongoing state judicial proceeding"; (2) "implicate important state interests"; and (3) provide "an adequate opportunity . . . to raise constitutional challenges." 457 U.S. at 432. Because I conclude that the state proceeding at issue here is not of a type that warrants abstention, I need not consider the gravity of the state's interest or whether the proceeding provides a sufficient opportunity to raise the constitutional claims.

Although it initially articulated the doctrine in the context of a state criminal proceeding, in subsequent cases the Supreme Court extended *Younger* abstention to state civil proceedings and certain state administrative proceedings. *Employers Res. Mgmt. Co.*, 65 F.3d at 1134 n.7 (citations omitted). Specifically, the Court determined that abstention in favor of a state administrative proceeding is proper only if the proceeding is judicial—as opposed to legislative or executive—in nature. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 & n.2, 106 S. Ct. 2718 (1986); *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350, 369–70, 109 S. Ct. 2506 (1989) ("While we have expanded *Younger* beyond criminal proceedings, and even beyond proceedings in courts, we have never extended it to proceedings that are not 'judicial in nature.'"). In order for a proceeding to be deemed "judicial in nature," the Fourth Circuit has demanded that it provide procedural protections analogous to those of a trial. *See Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1228 (4th Cir. 1989) ("Administrative proceedings are not judicial in nature . . . if state law expressly indicates that the proceeding is not a judicial proceeding or part of one, or if the proceeding lacks trial-like trappings." (citation omitted)). Trial-like procedures alone, however, are not sufficient to merit abstention. *See NOPSI*, 491 U.S. at 371 (stating that legislation is frequently "preceded by hearings and investigations," so "it does not matter what inquiries may have been made as a preliminary to the legislative act" (internal quotation marks and citation omitted)). Instead, the Supreme Court has emphasized that the determinative factor is the "nature of the final act." *Id.* (internal quotation marks and citation omitted). A proceeding is "judicial in nature" only if it "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Id.* (internal quotation marks and

citation omitted). In contrast, a legislative act "changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Id.*

Plaintiffs contend, based upon a footnote appearing in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, that an administrative proceeding must be "coercive" as well as "judicial in nature" for *Younger* abstention to be appropriate.[2] In *Ohio Civil Rights Commission*, a school filed suit in federal court seeking to enjoin a state administrative proceeding, in which the state sought to enforce its employment discrimination laws, on the grounds that the proceeding violated the Free Exercise and Establishment Clauses of the First Amendment. *Id.* at 621. The Supreme Court held that the *Younger*-abstention doctrine required the federal court to abstain in favor of the state proceeding. *Id* at 622. In a footnote, the Court distinguished the earlier case of *Patsy v. Board of Regents*, 457 U.S. 496, 102 S. Ct. 2557 (1982), which held that litigants need not exhaust their state administrative remedies before bringing a claim under 42 U.S.C. § 1983. The Court identified three characteristics differentiating the proceedings in the two cases: The proceeding in *Ohio Civil Rights Commission* (1) was "coercive rather than remedial," (2) "began before any substantial advancement in the federal action took place," (3) "and involve[d] an important state interest." *Ohio Civil Rights Comm'n*, 477 U.S. at 627 n.2.

Courts, including the Fourth Circuit, have seized upon the coercive-remedial distinction as the key factor in determining whether the *Younger* doctrine demands abstention where a state administrative proceeding is ongoing. *See Moore v. City of Asheville*, 396 F.3d 385, 395 n.4 (4th

---

[2] Where appellate courts have required administrative proceedings to be coercive to merit abstention, they have not made clear whether a proceeding must be *both* coercive and "judicial in nature" or, alternatively, whether a proceeding must be coercive *in order to be* "judicial in nature." *Compare Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) ("The administrative hearing procedures are clearly coercive *and* 'judicial in nature.'" (emphasis added)), *with Brown ex rel. Brown v. Day*, 555 F.3d 882, 896 (10th Cir. 2009) ("The Third, Fourth, and Seventh Circuits . . . ask[] whether the proceedings can be characterized as state enforcement proceedings. If they can, they are coercive, which is to say 'judicial in nature' . . . ." (citations omitted)). The effect of either approach is the same, so I need not decide this question.

Cir. 2005) ("In *Ohio Civil Rights Commission, . . .* the Court distinguished remedial state administrative proceedings, which it had addressed in *Patsy,* from those that are coercive, concluding that *Younger* requires federal courts to abstain in favor of pending state administrative proceedings that are coercive in nature."); *see also Brown ex rel. Brown v. Day*, 555 F.3d 882, 890 (10th Cir. 2009) (summarizing cases in which Courts of Appeals have focused on the coercive-remedial distinction as the crucial feature distinguishing *Ohio Civil Rights Commission* and *Patsy* and concluding that all non-coercive actions "fill the 'remedial' category and remain subject to *Patsy*'s holding"). The Fourth Circuit therefore has abstained pursuant to *Younger* only in favor of administrative proceedings it deems "coercive." *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) (rejecting the plaintiff's argument that the state administrative proceeding did not warrant abstention because the proceeding was "clearly coercive"); *Moore*, 396 F.3d at 395 n.4 (finding that abstention applied where the state proceeding was "unquestionably coercive"); *see also Beam v. Tatum*, 299 F. App'x 243, 246 n.2 (4th Cir. 2008) (unpublished) (same). Accordingly, I will not abstain from deciding this case unless the Handgun Permit Review Board's hearing can be categorized as "coercive."[3] *Cf. Goodhart v. Bd. of Visitors of the Univ. of Va.*, 451 F. Supp. 2d 804, 810 (W.D. Va. 2006) (concluding that *Younger* abstention did not apply to the plaintiff's claim even though he sought "to cast aspersion on a state administrative proceeding and to annul its results" because the case "lack[ed] the element of coercive state action"); *but see Motel 6 Operating, L.P. v. Gaston County*, No. 3:08-cv-00390-FDW, 2008 WL 4368478, at *2 (W.D.N.C. 2008) (finding that

---

[3] In *NOPSI*, the Supreme Court explained that, for the purposes of determining whether an administrative proceeding merits *Younger* abstention, it is irrelevant that the proceeding is subject to state judicial review. *See NOPSI*, 491 U.S. at 367–68 ("Although our concern for comity and federalism has led us to expand the protection of *Younger* beyond state criminal prosecutions, . . . it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." (citations omitted)). Thus, the relevant question here is whether the hearing of the Handgun Permit Review Board—not any potential subsequent review of the Board's decision in a state court—requires abstention.

7

*Younger* abstention may apply even to a remedial administrative proceeding so long as it is judicial in nature).

Neither the Supreme Court nor the Fourth Circuit has had occasion to determine those characteristics that identify an administrative proceeding as coercive. *See Laurel Sand & Gravel*, 519 F.3d at 166 (stating without analysis that the state proceeding at issue was "clearly coercive"); *Moore*, 396 F.3d at 395 n.4 (deeming the state proceeding "unquestionably coercive" without specifying the characteristics that made it so). Hence, I will look to other circuits for guidance. The Tenth Circuit, after reviewing precedent from its sister circuits, identified three factors courts use to distinguish coercive and remedial administrative proceedings. *See Brown*, 555 F.3d at 890–92. First, a coercive proceeding is typically initiated by the state, making the federal plaintiff's participation in the state proceeding "'mandatory,'" whereas a remedial proceeding is generally initiated by the same party that brings the claim in federal court. *Id.* at 891 (quoting *Kercado-Melendez v. Aponte-Roque,* 829 F.2d 255, 260 (1st Cir. 1987)).[4] Second, where administrative proceedings have been found to be coercive, "'the state proceeding is itself the wrong which the federal plaintiff seeks to correct via injunctive relief.'" *Brown*, 555 F.3d at 891 (quoting *Kercado-Melendez*, 829 F.2d at 260). In a remedial proceeding, in contrast, the federal plaintiff is seeking relief from some distinct wrong committed by the state. For instance, in *Patsy*, the plaintiff was seeking relief for unlawful employment discrimination allegedly engaged in by the state, not the state administrative procedure established to address such discrimination. *See Patsy*, 457 U.S. at 498. Finally, a "common thread" uniting cases in which

---

[4] Although the Fourth Circuit has found some state proceedings that were initiated by the federal plaintiff to be coercive, it has done so only where the plaintiff began the state proceeding to challenge a state-initiated enforcement action, so the plaintiffs in these cases were compelled to participate in the state proceedings to avoid liability. *See, e.g.*, *Laurel Sand & Gravel*, 519 F.3d at 160–61, 166 (finding administrative proceeding coercive where it was brought by the federal plaintiff, a mining company, to challenge a state agency's determination that the company was liable for dewatering a residential well); *Moore*, 396 F.3d at 388–89, 395 n.4 (stating that an administrative proceeding initiated by the federal plaintiff to challenge his citations under a city noise ordinance was coercive).

8

courts have found *Younger* abstention to be appropriate is that the state proceeding was initiated to punish the federal plaintiff for an alleged bad act. *Id.*

In light of these factors, I conclude that the Board hearing was non-coercive. Woollard is challenging the state proceeding itself—that is, he alleges his constitutional rights were violated by the denial of his application for a handgun carry permit, not a distinct wrong. Nevertheless, Woollard, rather than the state, initiated the administrative proceeding. His participation in the proceeding was not mandatory, and he would have faced no liability if he opted not to participate. Furthermore, the state is not seeking to punish Woollard for any bad act. Indeed, it was Woollard's compliance with the law—specifically, his choice to apply for a handgun carry permit rather than carrying a handgun illegally—that prompted the initiation of the state proceeding. The present case therefore lacks the "common thread" linking cases in which *Younger* abstention is appropriate.[5]

In sum, there is no ongoing state proceeding that warrants abstention under the *Younger* doctrine. Accordingly, I will deny the Defendants' Motion to Dismiss on this ground.[6]

---

[5] Of the Courts of Appeals to have considered the issue, only the Eighth Circuit has found *Younger* abstention appropriate where the state administrative proceeding would not be considered coercive under these factors. *Brown*, 555 F.3d at 892 n.8 (discussing *Alleghany Corp. v. McCartney,* 896 F.2d 1138 (8th Cir. 1990)). In *McCartney*, a state's director of insurance had denied a company's application to purchase stock in an insurance company pursuant to the state's insurance holding company statute, and the company challenged the statute in federal district court. *See McCartney*, 896 F.2d at 1140–41. The Eighth Circuit held that the district court properly invoked abstention under *Younger* because of the proceedings before the director of insurance. *Id.* at 1145. The court made no attempt to distinguish *Patsy*, however, and the Seventh Circuit, considering an identical case, concluded that abstention was inappropriate. *Brown*, 555 F.3d at 892 n.8 (discussing *Alleghany Corp. v. Haase,* 896 F.2d 1046, 1050 (7th Cir. 1990), *vacated on other grounds sub nom. Dillon v. Alleghany Corp.,* 499 U.S. 933, 111 S. Ct. 1383 (1991)). In light of the Fourth Circuit's emphasis on the coercive-remedial distinction between *Ohio Civil Rights Commission* and *Patsy*, I decline to follow this Eighth Circuit decision.

[6] Defendants also argue this Court should abstain from exercising jurisdiction under the doctrine initially recognized in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098 (1943). The *Burford*-abstention doctrine permits federal courts to abstain from adjudicating a dispute where doing so "would 'unduly intrude' upon 'complex state administrative processes.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (quoting *NOPSI*, 491 U.S. at 361–63). Abstention under *Burford* is appropriate in two circumstances: (1) where "'there are difficult questions of state law . . . whose importance transcends the result in the case then at bar'" or (2) where "federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* (quoting *NOPSI*, 491 U.S. at 361–63)). Neither is applicable here. Maryland appellate courts have repeatedly examined and interpreted the statute at issue in this case, *see, e.g.*, *Scherr v. Handgun Permit Review Bd.*, 163 Md. App. 417, 880

III.

Defendants have also moved to dismiss Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). The purpose of the pleading requirements is threefold: first, "early disposition of inappropriate complaints"; second, "provid[ing] criteria for defining issues for trial"; and third, which is most significant to the present case, assuring the defendant has received "adequate notice of the nature of a claim being made against him." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Plaintiffs have asserted, "Maryland Public Safety Code § 5-306(a)(5)(ii) . . . violates Plaintiffs' Fourteenth Amendment right to equal protection of the law . . . ." (Compl. ¶ 33.) A general assertion that a law violates a constitutional provision, without more, is insufficient to

---

A.2d 1137 (Ct. Spec. App. 2005); *Snowden v. Handgun Permit Review Bd.*, 45 Md. App. 464, 413 A.2d 295 (Ct. Spec. App. 1990), and there is no reason to believe this case will present a new question of state law. Thus, abstention is not warranted on the first ground. *See Martin*, 499 F.3d at 366. In addition, where, as here, a plaintiff "launches a *facial* attack on [a] state statute[] *as a whole*," abstention on the second ground is not appropriate because the potential relief—an injunction barring the enforcement of the statute—"could not possibly threaten [the statute's] *uniform* application." *Id.* at 367 (emphasis in original).

make a defendant aware of the nature of the claim being brought. Here, Plaintiffs must, at minimum, allege that the Maryland statute differentiates between similarly situated individuals on the basis of a suspect classification or identify a fundamental right that the statute burdens so as to put Defendants on notice that Plaintiffs are contending the statute is subject to heightened scrutiny. *See Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 438–39 (4th Cir. 2002) (stating that where the plaintiff "does not allege that [the state] has burdened a fundamental right or employed a suspect classification," legislation will be upheld so long as it is rationally related to a legitimate state interest). Plaintiffs have not alleged any facts suggesting that the state employed a suspect classification. However, in their opposition motion, they argue that they seek to allege that section 5-306(a)(5)(ii) burdens a fundamental right. I cannot conclude at this juncture that such an allegation would be futile. Therefore, although I will grant Defendants' motion to dismiss Count II, I will permit Plaintiffs to file an amended complaint stating their equal protection claim with more particularity.

A separate Order effecting the ruling made in this Memorandum is being entered herewith.

December 29, 2010  /s/
Date  J. Frederick Motz
  United States District Judge