IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, et al., | ) | Case No. 1:10-cv-02068-JFM |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| v. | ) | PLAINTIFFS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| TERRENCE SHERIDAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** the Plaintiffs, Raymond Woollard and Second Amendment Foundation,

Inc., by and through undersigned counsel, and submit their Memorandum of Points and

Authorities in Support of Plaintiffs' Motion for Summary Judgment.

Dated: February 18, 2011                    Respectfully submitted,

Alan Gura                                   Cary J. Hansel
Gura & Possessky, PLLC                      Joseph, Greenwald & Laake
101 N. Columbus Street, Suite 405           6404 Ivy Lane, Suite 400
Alexandria, VA 22314                        Greenbelt, MD 20770
703.835.9085/Fax 703.997.7665              301.220.2200/Fax 301.220.1214

By: /s/ Alan Gura                           By: /s/ Cary J. Hansel
    Alan Gura                                   Cary J. Hansel

                                            Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      THE SECOND AMENDMENT SECURES A RIGHT TO CARRY
        ARMS IN PUBLIC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     GOVERNMENT OFFICIALS MAY NOT ARBITRARILY DETERMINE
        WHETHER AN INDIVIDUAL MAY EXERCISE FUNDAMENTAL RIGHTS.. . . . . 12

III.    CONDITIONING THE EXERCISE OF SECOND AMENDMENT RIGHTS
        ON PROOF OF "GOOD AND SUBSTANTIAL REASON" FOR
        SELF-DEFENSE VIOLATES THE EQUAL PROTECTION CLAUSE. . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

TABLE OF AUTHORITIES

Cases

*Andrews* v. *State*,
  50 Tenn. 165 (1871).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Ashcroft* v. *ACLU*,
  542 U.S. 656 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Aymette* v. *State*,
  21 Tenn. 154 (1840).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Beal* v. *Stern*,
  184 F.3 117 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cantwell* v. *Connecticut*,
  310 U.S. 296 (1940).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Chesapeake B & M, Inc.* v. *Harford County*,
  58 F.3d 1005 (4th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Citizens United* v. *FEC*,
  130 S. Ct. 876 (2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of Las Vegas* v. *Moberg*,
  82 N.M. 626, 485 P.2d 737 (N.M. Ct. App. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Clark* v. *Jeter*,
  486 U.S. 456 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*District of Columbia* v. *Heller*,
  128 S. Ct. 2783 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Forsyth County* v. *Nationalist Movement*,
  505 U.S. 123 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*FW/PBS* v. *City of Dallas*,
  493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Green* v. *City of Raleigh*,
  523 F.3d 293 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hague* v. *Committee for Indus. Org.*,
  307 U.S. 496 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Application of McIntyre*,
  552 A.2d 500 (Del. Super. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Brickey*,
  8 Idaho 597, 70 P. 609 (1902). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kellogg* v. *City of Gary*,
  562 N.E.2d 685 (Ind. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kunz* v. *New York*,
  340 U.S. 290 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Largent* v. *Texas*,
  318 U.S. 418 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Louisiana* v. *United States*,
  380 U.S. 145 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McDonald* v. *City of Chicago*,
  130 S. Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Mom N Pops, Inc.* v. *City of Charlotte*,
  979 F. Supp. 372 (W.D.N.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Muscarello* v. *United States*,
  524 U.S. 125 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nat'l Fed'n of the Blind* v. *FTC*,
  420 F.3d 331 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Niemotko* v. *Maryland*,
  340 U.S. 268 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Norton* v. *Ensor*,
  269 F. Supp. 533 (D. Md. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nunn* v. *State*,
  1 Ga. 243 (1846). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Parker* v. *District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Peruta* v. *County of San Diego*,
678 F. Supp. 2d 1046 (S.D. Ca. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robertson* v. *Baldwin*,
165 U.S. 275 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Shuttlesworth* v. *Birmingham*,
394 U.S. 147 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 17

*Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*,
502 U.S. 105 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Southeastern Promotions, Ltd.* v. *Conrad*,
420 U.S. 546 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*State ex rel. City of Princeton* v. *Buckner*,
180 W. Va. 457, 377 S.E.2d 139 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State* v. *Chandler*,
5 La. Ann. 489 (1850). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*State* v. *Delgado*,
298 Or. 395, 692 P.2d 610 (Or. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State* v. *Reid*,
1 Ala. 612 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State* v. *Rosenthal*,
75 Vt. 295, 55 A. 610 (1903). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Staub* v. *City of Baxley*,
355 U.S. 313 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16

*United States* v. *Chester*,
628 F.3d 673 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 13, 18

*United States* v. *Engstrum*,
609 F. Supp. 2d 1227 (D. Utah 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States* v. *Marzzarella*,
614 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Skoien*,
614 F.3d 638 (7th Cir. 2010) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Constitutional Provisions

U.S. Const. amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. Const. amend. VIII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statutes and Regulations

18 Pa. Cons. Stat. Ann. § 6109(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ala. Code § 13A-11-73. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ala. Code § 13A-11-75. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ark. Code Ann. § 5-73-309(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Penal Code § 12031. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Penal Code § 12050. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Colo. Rev. Stat. Ann.  § 18-12-203(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

COMAR 29.03.02.04. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

COMAR 29.03.02.04(G). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COMAR 29.03.02.04(J). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COMAR 29.03.02.04(K). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COMAR 29.03.02.04(L). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COMAR 29.03.02.04(M). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COMAR 29.03.02.04(O). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COMAR 29.03.02.12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Conn. Agencies Regs. § 29-36m-8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conn. Gen. Stat. Ann. § 29-28(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conn. Gen. Stat. Ann. § 29-35(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.C. Code § 22-4504(a) (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. Code § 22-4506 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Del. Code Ann. tit. 11 § 1441-42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fla. Stat. Ann. § 790.06(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ga. Code Ann. § 16-11-129.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Idaho Code Ann. § 18-3302(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ind. Code Ann. § 35-47-2-3(e).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Iowa Code Ann. § 724.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Kansas Stat. Ann. § 75-7c03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ky. Rev. Stat. Ann. § 237.110(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

La. Rev. Stat. Ann. § 40:1379(A)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Md. Criminal Law Code § 4-203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Md. Criminal Law Code § 4-203(c)(2)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Md. Public Safety Code § 5-301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Md. Public Safety Code § 5-303. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Md. Public Safety Code § 5-306(a)(5)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16, 19

Md. Public Safety Code § 5-312. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Me. Rev. Stat. Ann. tit. 25, § 2003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Mich. Comp. Laws Ann. § 28.422(2)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Minn. Stat. § 624.714, subdiv. 2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Miss. Code Ann. § 45-9-101(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Mo. Ann. Stat. § 571.090(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Mont. Code Ann. § 45-8-321(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.C. Gen. Stat. § 14-415.11(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.D. Cent. Code § 62.1-04-03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.H. Rev. Stat. Ann. § 159.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.M. Stat. Ann. § 29-19-4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Neb. Rev. Stat. § 28-1202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Nev. Rev. Stat. Ann. § 202.3657(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ohio Rev. Code Ann. § 2923.125(D)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Okla. Stat. Ann. tit. 21, § 1290.12(12). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Or. Rev. Stat. Ann. § 166.291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

S.C. Code Ann. § 23-31-215(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

S.D. Codified Laws § 23-7-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tenn. Code Ann. § 39-17- 1351(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tex. Gov't Code Ann. § 411.177(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Utah Code Ann. § 53-5-704(1)(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Va. Code Ann. § 18.2-308(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

W. Va. Code Ann. § 61-7-4(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Wash. Rev. Code Ann. § 9.41.070(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Wis. Stat. Ann. § 941.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wyo. Stat. Ann. § 6-8-104(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Other Authorities

BLACK'S LAW DICTIONARY (6th Ed. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

THE AMERICAN STUDENTS' BLACKSTONE (G. Chase ed. 1884). . . . . . . . . . . . . . . . . . . . . . . . . 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

On November 19, 2010, the Court held a status conference in response to Defendants'

request for a conference regarding the scheduling of Plaintiffs' summary judgment motion. The

Court ruled "that defendants need not respond to plaintiff's summary judgment motion until I

have ruled upon defendant's motion to dismiss." Memo to Counsel, Nov. 22, 2010.

On December 29, 2010, the Court denied Defendants' motion in part, rejecting the

*Younger* abstention claim; and granted Defendants' motion in part, providing Plaintiffs with

leave to amend their equal protection claim. Plaintiffs filed an amended complaint on January 19,

2011, clarifying their equal protection claim, which Defendants answered February 8, 2011.

Meanwhile, on December 30, 2010, the Fourth Circuit published *United States* v.

*Chester*, 628 F.3d 673 (4th Cir. 2010), explaining that the "core" Second Amendment right is

"the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense."

*Chester*, 628 F.3d at __, 2010 U.S. App. LEXIS 26508 at *26.  *Chester* further explained that

where applicable, the means-ends standard of review in Second Amendment cases is either strict

or intermediate scrutiny, depending on the nature of the claim asserted. *Id.* And *Chester* further

instructed, "[g]iven *Heller*'s focus on 'core' Second Amendment conduct and the Court's

frequent references to First Amendment doctrine, we agree with those who advocate looking to

the First Amendment as a guide in developing a standard of review for the Second Amendment."

*Chester*, 628 F.3d at __, 2010 U.S. App. LEXIS 26508 at *24 (citations omitted).

1

Although Defendants never responded to the outstanding motion for summary judgment as apparently contemplated by the November 22 memorandum, Plaintiffs believe the intervening decision in *Chester*—a significant Fourth Circuit precedent providing guidance as to the Second Amendment's application—nonetheless warrants the re-submission of their motion, so that the Court and the parties may address the issues more efficiently, and so that Defendants are afforded a clear opportunity to fully respond.

This motion is largely identical to that brought previously, save for discussion of *Chester* and additional discussion of less restrictive alternatives. References to exhibits and declarations are to those filed November 15, 2010.

When individuals enjoy a constitutional "right" to engage in some activity, a license to engage in that activity cannot be conditioned on the government's determination of their "need" to exercise that right. Defendants impose this classic form of unconstitutional prior restraint against the fundamental individual right to keep and bear arms. They must be enjoined from doing so.

Of course, Defendants have an interest in regulating firearms in the interest of public safety, just as Defendants have an interest in regulating the time, place, or manner of speech or public assemblies. Nor do Plaintiffs challenge the idea that the state may license the carrying of firearms, just as the state might license parades or demonstrations. But the regulatory interest here is not absolute. Whatever else the state may command with respect to the carrying of arms, it cannot reserve for itself the power to arbitrarily decide, in all cases, whether individuals should be able to carry guns for self-defense. That decision has already been made for the state, in the federal constitution.

2

STATEMENT OF FACTS

Maryland generally prohibits the public carrying of handguns without a license. Md. Criminal Law Code § 4-203; Md. Public Safety Code § 5-303.  The unlicensed carrying of a handgun is a misdemeanor offense, carrying a penalty of 30 days to 3 years imprisonment and/or fine ranging from $250 to $2500 for a first offense. Md. Criminal Law Code § 4-203(c)(2)(i).

Handgun carry permits are issued by the Secretary of the State Police. Md. Public Safety Code § 5-301. Defendant Sheridan currently serves in this capacity. To qualify for a handgun carry permit, an applicant must establish that he or she is an adult; has not been convicted, without pardon, of a felony or misdemeanor for which a term of over 1 year imprisonment has been imposed; has not been convicted of drug crimes; is not an alcoholic or drug addict; and has not exhibited a propensity for violence or instability that may render the applicant's possession of a handgun dangerous.

Additionally, the Superintendent must determine that the applicant "has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger." Md. Public Safety Code § 5-306(a)(5)(ii). Applying the same standards, the Maryland Handgun Permit Review Board may also authorize the issuance of a carry permit. Md. Public Safety Code § 5-312.

> In making a determination as to whether a permit will be issued to the applicant, the following areas will be a part of every investigation and will be considered in determining whether a permit will be issued:
>
> * * *
>
> G.      Reasons given by the applicant as to whether those reasons are good and substantial;

3

\* \* \*

J.      Information received from personal references and other persons interviewed;

K.      Information received from business or employment references as may be necessary in the discretion of the investigator;

L.      Whether the applicant has any alternative available to him for protection other than a handgun permit;

M.      Whether the applicant falls within those classes of individuals who do not need permits as outlined in the Handgun Permit Law;

O.      Whether the permit is necessary as a reasonable precaution for the applicant against apprehended danger.

COMAR 29.03.02.04.

Plaintiff Raymond Woollard, an honorably-discharged Navy veteran, resides on a farm in a remote part of Baltimore County. Woollard Decl., ¶ 1. Plaintiff Second Amendment Foundation ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including Maryland. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. Versnel Decl., ¶¶ 2, 3.

On Christmas Eve, 2002, Woollard was at his home with his wife, son, daughter, and grandchildren, when an intruder broke into the home by shattering a window. Woollard trained his shotgun on the intruder, but the latter wrested the shotgun away, and a fight broke out between the two. The fight ended when Woollard's son retrieved another gun and restored order pending the police's arrival. Woollard Decl., ¶ 2.

Woollard's wife had called the police, but it took the police approximately 2.5 hours to arrive, owing to some confusion on their part as to the county in which Woollard's house was located. The intruder was convicted of first degree burglary, receiving a sentence of three years probation. The probation was violated with an assault on a police officer and another burglary at a different residence, which finally landed him in prison. Woollard Decl., ¶¶ 3, 4.

Woollard was issued a permit to carry a handgun, which was renewed in 2005 shortly after the intruder was released from prison. The intruder lives approximately three miles from Woollard. Woollard Decl., ¶ 5. Woollard applied to renew his handgun carry permit a second time, but on February 2, 2009, was advised that his application was incomplete: "Evidence is needed to support apprehended fear (i.e. - copies of police reports for assaults, threats, harassments, stalking)." Woollard Decl., ¶ 6; Exh. A.

On April 1, 2009, Defendant Sheridan denied Woollard's handgun carry permit renewal application. Woollard Decl., ¶ 7; Exh. B. Woollard requested an informal review of his permit renewal application denial. The informal review resulted in a second denial on July 28, 2009. Woollard Decl., ¶ 8; Exh. C.

Woollard administratively appealed to the Handgun Permit Review Board. In a November 12, 2009 decision by Defendants Gallagher, Goldstein, and Thomas, the Board affirmed the denial of Woollard's application, finding that Woollard "has not submitted any documentation to verify threats occurring beyond his residence, where he can already legally carry a handgun." Accordingly, the Board found Woollard "has not demonstrated a good and substantial reason to wear, carry or transport a handgun as a reasonable precaution against apprehended danger in the State of Maryland." Woollard Decl., ¶ 9; Exh. D.

In addition to and quite apart from any threat posed by the man who invaded Woollard's

home, Woollard would carry a functional handgun in public for self-defense, but refrains from

doing so because he fears arrest, prosecution, fine, and imprisonment as he does not possess a

license to carry a handgun. Woollard Decl., ¶ 10. Owing to its mission, SAF's organizational

resources are taxed by inquiries regarding the implementation of Maryland's gun carrying

regulations. SAF's  members and supporters are deprived of the ability to carry firearms for self-

defense by the challenged practices. Versnel Decl., ¶ 4.

## SUMMARY OF ARGUMENT

This case is not difficult. The Second Amendment secures a right to carry arms for self-

defense. Defendants refuse to acknowledge that carrying arms is a right, and instead demand that

applicants prove their need to do so.

There is no such thing as a "right" that can be denied unless people prove a special need

to exercise it. Prior restraints on constitutionally-protected conduct cannot allow regulators

unbridled discretion in choosing who may exercise the right, nor can regulators substitute their

own judgment for that of the Constitution as to whether the exercise of a particular right is a

good idea. The challenged provision, or at least its implementation, violates basic prior restraint

standards. And because the challenged practice arbitrary classifies individuals in the exercise of a

fundamental right, it also violates the Equal Protection Clause.

## ARGUMENT

I.       THE SECOND AMENDMENT SECURES A RIGHT TO CARRY ARMS IN PUBLIC.

The Second Amendment applies "*most notably* for self-defense within the home,"

*McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3044 (2010) (plurality opinion) (emphasis

added), "where the need for defense of self, family, and property is most acute," *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2717 (2008), but not exclusively so. The Fourth Circuit has described the "core" Second Amendment right as "the right of a law-abiding, responsible citizen to possess and *carry* a weapon for self-defense." *Chester*, 628 F.3d at __, 2010 U.S. App. LEXIS 26508 at *26 (emphasis added). "[T]he Second Amendment creates [sic] individual rights, *one of which* is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open [in *Heller*]." *United States* v. *Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (emphasis added). "*Heller* does not preclude Second Amendment challenges to laws regulating firearm possession outside of home." *Peruta* v. *County of San Diego*, 678 F. Supp. 2d 1046, 1051 (S.D. Ca. 2010).

Analysis begins with the constitutional text. The Second Amendment protects the right "to keep and bear arms." U.S. Const. amend. II. This syntax is not unique within the Bill of Rights. The Sixth Amendment guarantees the right to a "speedy and public trial," U.S. Const. amend. VI, while the Eighth Amendment secures individuals from "cruel and unusual" punishment. U.S. Const. amend. VIII. Just as the Sixth Amendment does not sanction secret, speedy trials or public, slow trials, and the Eighth Amendment does not allow the usual practice of torture, the Second Amendment's reference to "keep and bear" refers to two distinct concepts.

The Supreme Court confirmed as much, rejecting the argument that "keep and bear arms" was a unitary concept referring only to a right to possess weapons in the context of military duty. "At the time of the founding, as now, to 'bear' meant to 'carry.'" *Heller*, 128 S. Ct. at 2793 (citations omitted). To "bear arms," as used in the Second Amendment, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and

7

ready for offensive or defensive action in a case of conflict with another person." *Heller*, 128 S.

Ct. at 2793 (quoting *Muscarello* v. *United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J.,

dissenting)); BLACK'S LAW DICTIONARY 214 (6th Ed. 1998)); *see also Heller*, 128 S. Ct. at 2804

("the Second Amendment right, protecting only individuals' liberty to keep *and carry* arms . . ."),

at 2817 ("the right to keep *and carry* arms") (emphasis added). "[B]ear arms means . . . simply

the carrying of arms . . ." *Heller*, 128 S. Ct. at 2796.

Having defined the Second Amendment's language as including a right to "carry" guns

for self-defense, the Supreme Court helpfully noted several exceptions that prove the rule.

Explaining that this right is "not unlimited," in that there is no right to "carry any weapon

whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 128 S. Ct. at 2816

(citations omitted), the Court confirmed that there is a right to carry at least some weapons, in

some manner, for some purpose. The Court then listed as "presumptively lawful," *id.*, at 2817

n.26, "laws forbidding the carrying of firearms in sensitive places," *id.*, at 2817, confirming both

that such "presumptions" may be overcome in appropriate circumstances, and that carrying bans

are *not* presumptively lawful in non-sensitive places.

Recounting *Heller*'s imposition of the common-use test to delineate between arms that

are protected and unprotected by the Second Amendment, the Fourth Circuit observed, "The

Court found support for this limitation in ''the historical tradition of prohibiting the *carrying* of

dangerous and unusual weapons.' Thus, a citizen's right to *carry* or keep sawed-off shotguns, for

instance, would not come within the ambit of the Second Amendment." *Chester*, 628 F.3d at __,

2010 U.S. App. LEXIS at *14 (emphasis added) (citations omitted).

*Heller*'s dissenters acknowledged that the decision protected the public carrying of arms:

> Given the presumption that most citizens are law abiding, and the reality that the need to defend oneself may suddenly arise in a host of locations outside the home, I fear that the District's policy choice may well be just the first of an unknown number of dominoes to be knocked off the table.

*Heller*, 128 S. Ct. at 2846 (Stevens, J., dissenting).

In upholding the right to carry a handgun under the Second Amendment, *Heller* broke no new ground. As early as 1846, Georgia's Supreme Court, applying the Second Amendment, quashed an indictment for the carrying of a handgun that failed to allege whether the handgun was being carried in a constitutionally-protected manner. *Nunn* v. *State*, 1 Ga. 243, 251 (1846); *see also In re Brickey*, 8 Idaho 597, 70 P. 609 (1902) (Second Amendment right to carry handgun). Numerous state constitutional right to arms provisions have likewise been interpreted as securing the right to carry a gun in public, albeit often, to be sure, subject to some regulation. *See*, *e.g. Kellogg* v. *City of Gary*, 562 N.E.2d 685 (Ind. 1990); *State ex rel. City of Princeton* v. *Buckner*, 180 W. Va. 457, 377 S.E.2d 139 (1988); *City of Las Vegas* v. *Moberg*, 82 N.M. 626, 485 P.2d 737 (N.M. Ct. App. 1971); *State* v. *Rosenthal*, 75 Vt. 295, 55 A. 610 (1903) (striking down ban on concealed carry); *Andrews* v. *State*, 50 Tenn. 165 (1871); *see also State* v. *Delgado*, 298 Or. 395, 692 P.2d 610 (Or. 1984) (right to carry a switchblade knife).

The right to bear arms is not abrogated by recognition of the fact it may be regulated. To the contrary, precedent approving of the government's ability to regulate the carrying of handguns confirms the general rule to which it establishes exceptions. Traditionally, "the right of the people to keep and bear arms (Article 2) is not infringed by laws prohibiting the carrying of *concealed* weapons . . . ." *Robertson* v. *Baldwin*, 165 U.S. 275, 281-82 (1897) (emphasis added).

9

But more recently, the Supreme Court has suggested that such bans are only "presumptively" constitutional. *Heller*, 128 S. Ct. at 2817 n.26 (emphasis added). Surveying the history of concealed carry prohibitions, it appears time and again that such laws have been upheld as mere regulations of the manner in which arms are carried – with the understanding that a complete ban on the carrying of handguns is unconstitutional.

*Heller* discussed, with approval, four state supreme court opinions that referenced this conditional rule. *See Heller*, 128 S. Ct. at 2818 (discussing *Nunn*, *supra*, 1 Ga. 243; *Andrews, supra*, 50 Tenn. 165; and *State* v. *Reid*, 1 Ala. 612, 616-17 (1840)) and 128 S. Ct. at 2809 (citing *State* v. *Chandler*, 5 La. Ann. 489, 490 (1850)). In *Reid*, upholding a ban on the carrying of concealed weapons, Alabama's high court explained:

> We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defense, would be clearly unconstitutional. But a law which is merely intended to promote personal security, and to put down lawless aggression and violence, and to this end prohibits the wearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the Constitution.

*Reid*, 1 Ala. at 616-17.

The *Nunn* court followed *Reid*, and quashed an indictment for publicly carrying a pistol for failing to specify how the weapon was carried:

> so far as the act . . . seeks to suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with the Constitution, and *void*.

*Nunn*, 1 Ga. at 251 (emphasis original).

10

*Andrews* presaged *Heller* by finding that a revolver was a protected arm under the state constitution's Second Amendment analog. It therefore struck down as unconstitutional the application of a ban on the carrying of weapons to a man carrying a revolver, declaring:

> If the Legislature think proper, they may by a proper law regulate the carrying of this weapon publicly, or abroad, in such a manner as may be deemed most conducive to the public peace, and the protection and safety of the community from lawless violence. We only hold that, as to this weapon, the prohibition is too broad to be sustained.

*Andrews*, 165 Tenn. at 187-88.[1]

> Finally, in *Chandler,*

> the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."

*Heller*, 128 S. Ct. at 2809 (quoting *Chandler*, 5 La. Ann. at 490).

> The legal treatises relied upon by the *Heller* court explained the rule succinctly.

Supporting the notion that concealed carrying may be banned, *Heller* further cites to THE AMERICAN STUDENTS' BLACKSTONE, 84 n.11 (G. Chase ed. 1884). *Heller*, 128 S. Ct. at 2816.

Here is what that source provides:

> [I]t is generally held that statutes prohibiting the carrying of *concealed* weapons are not in conflict with these constitutional provisions, since they merely forbid the carrying of arms in a particular manner, which is likely to lead to breaches of the peace and provoke to the commission of crime, rather than contribute to public or personal defence. In some States, however, a contrary doctrine is maintained.

AMERICAN STUDENTS' BLACKSTONE, 84 n.11 (emphasis original). This understanding survives.

---

[1]*Andrews* appeared to abrogate in large part *Aymette* v. *State*, 21 Tenn. 154 (1840), upholding the prohibition on the concealed carry of daggers. But even *Aymette*, which found a state right to bear arms limited by a military purpose, deduced from that interpretation that the right to bear arms protected the open carrying of arms. *Aymette*, 21 Tenn. at 160-61.

*See, e.g. In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del. Super. 1988) ("[T]he right to keep and bear arms' does not of necessity require that such arms may be kept concealed.").

It is important, then, to recall that (1) the Supreme Court's definition of "bear arms" as that language is used in the Second Amendment includes the concealed carrying of handguns: "wear, bear, or carry . . . *in the clothing or in a pocket* . . ." *Heller*, 128 S. Ct. at 2793 (citations omitted) (emphasis added); (2) the legality of bans on concealed carrying is only "presumptive," *Heller*, 128 S. Ct. at 2817 n.26; and (3) the cases supporting concealed carry prohibition explain that no abrogation of the right to carry arms is effected because open carrying is still permitted.[2]

The precedent is clear: the state may regulate the time, place and manner of carrying guns, but cannot completely abrogate the right.

II.   GOVERNMENT OFFICIALS MAY NOT ARBITRARILY DETERMINE WHETHER AN INDIVIDUAL MAY EXERCISE FUNDAMENTAL RIGHTS.

Because the practice of bearing arms is secured by the Second Amendment, the decision to issue a license to bear arms cannot be left to the government's unbridled discretion.

It is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official -- as by requiring a permit or license which may be granted or withheld in the discretion of such official -- is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958) (citations omitted); *see also FW/PBS* v. *City of Dallas*, 493 U.S. 215, 226 (1990) (plurality opinion); *Shuttlesworth* v. *Birmingham*, 394 U.S. 147, 151 (1969).

---

[2]Maryland law makes no distinction between concealed and open carrying.

The law of prior restraint, well-developed in the First Amendment context, supplies useful guidance here. we agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment." *Chester*, 628 F.3d at __, 2010 U.S. App. LEXIS 26508 at *24 (citing *United States* v. *Marzzarella*, 614 F.3d 85, 89 n.4 (3d Cir. 2010) ("the structure of First Amendment doctrine should inform our analysis of the Second Amendment") (other citation omitted); *see also Parker* v. *District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom Heller* ("The protections of the Second Amendment are subject to the same sort of reasonable restrictions that have been recognized as limiting, for instance, the First Amendment.") (citation omitted). This is especially so, considering that in *Staub* and its progeny, the Supreme Court did not limit its disapproval of prior restraints to First Amendment freedoms, but spoke more generally of "freedoms which the Constitution guarantees." *Staub*, 355 U.S. at 322. As discussed *infra*, *Heller* itself summarily applied established prior restraint principles in a Second Amendment context.

In *Staub*, the Supreme Court struck down an ordinance authorizing a mayor and city council "uncontrolled discretion," *Staub*, 355 U.S. at 325, to grant or refuse a permit required for soliciting memberships in organizations. Such a permit, held the Court,

> makes enjoyment of speech contingent upon the will of the Mayor and Council of the City, although that fundamental right is made free from congressional abridgment by the First Amendment and is protected by the Fourteenth from invasion by state action. For these reasons, the ordinance, on its face, imposes an unconstitutional prior restraint upon the enjoyment of First Amendment freedoms and lays "a forbidden burden upon the exercise of liberty protected by the Constitution."

*Staub*, 355 U.S. at 325 (quoting *Cantwell* v. *Connecticut*, 310 U.S. 296, 307 (1940)); *see also Largent* v. *Texas*, 318 U.S. 418, 422 (1943) (striking down ordinance allowing speech permit

where mayor "deems it proper or advisable."); *Louisiana* v. *United States*, 380 U.S. 145, 153 (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws . . . which leave the voting fate of a citizen to the passing whim or impulse of an individual registrar.").

"Traditionally, unconstitutional prior restraints are found in the context of judicial injunctions or a licensing scheme that places 'unbridled discretion in the hands of a government official or agency.'" *Nat'l Fed'n of the Blind* v. *FTC*, 420 F.3d 331, 350 n. 8 (4th Cir. 2005) (quoting *FW/PBS*, 493 U.S. at 225-26). "Unbridled discretion naturally exists when a licensing scheme does not impose adequate standards to guide the licensor's discretion." *Chesapeake B & M, Inc.* v. *Harford County*, 58 F.3d 1005, 1009 (4th Cir. 1995) (en banc); *cf. Green* v. *City of Raleigh*, 523 F.3d 293, 306 (4th Cir. 2008) ("'virtually unbridled and absolute power' to deny permission to demonstrate publically, or otherwise arbitrarily impose de facto burdens on public speech" is unconstitutional) (citation omitted).

In the First Amendment context, the presumption against prior restraints is not aimed exclusively at preventing content-based decision-making. "[W]hether or not the review is based upon content, a prior restraint arises where administrative discretion involves judgment over and beyond applying classifying definitions." *Mom N Pops, Inc.* v. *City of Charlotte*, 979 F. Supp. 372, 387 (W.D.N.C. 1997) (citations omitted); *Beal* v. *Stern*, 184 F.3 117, 124 (2d Cir. 1999). The presumption against prior restraints is in part based on "a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U.S. 546, 558-59 (1975) (citations omitted).

14

Accordingly, standards governing prior restraints must be "narrow, objective and definite." *Shuttlesworth*, 394 U.S. at 151. Standards involving "appraisal of facts, the exercise of judgment, [or] the formation of an opinion" are unacceptable. *Forsyth County* v. *Nationalist Movement*, 505 U.S. 123, 131 (1992) (quoting *Cantwell*, 310 U.S. at 305).

Public safety is invoked to justify most laws, but where a fundamental right is concerned, a mere incantation of a public safety rationale does not save arbitrary licensing schemes. In the First Amendment arena, where the concept has been developed extensively,

> [W]e have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places . . . There are appropriate public remedies to protect the peace and order of the community if appellant's speeches should result in disorder or violence.

*Kunz* v. *New York*, 340 U.S. 290, 294 (1951); *Shuttlesworth*, 394 U.S. at 153. "But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right." *Hague* v. *Committee for Indus. Org.*, 307 U.S. 496, 516 (1937) (plurality opinion).

> Even when the use of its public streets and sidewalks is involved, therefore, a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade, according to their own opinions regarding the potential effect of the activity in question on the "welfare," "decency," or "morals" of the community.

*Shuttlesworth*, 394 U.S. at 153. Applying these principles, this Court struck down as facially invalid a Baltimore ordinance denying permits to hold public assemblies "unless the [applicant] person, club, association or corporation is deemed fit, responsible and proper to receive same, by the chief of police." *Norton* v. *Ensor*, 269 F. Supp. 533, 537 (D. Md. 1967).

15

For an example of these prior restraint principles applied in the Second Amendment context, the Court need look no further than *Heller* itself. Although the case is best known for its challenges to a direct handgun ban and a functional firearms ban, Heller also challenged application of a third law, for functioning as an indirect handgun ban: the District of Columbia's requirement that handgun registrants obtain a discretionary (but never issued) permit to carry a gun inside the home.[3] The Supreme Court held that the city had no discretion to refuse issuance of the permit: "Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." *Heller*, 128 S. Ct. at 2822.

In other words, the city could deny Heller a permit if it could demonstrate there was some constitutionally valid reason for denying him Second Amendment rights. But the city could not otherwise refuse to issue the permit. The city repealed its home carry permit requirement.[4]

The same logic governs this case. Maryland's "good and substantial reason" requirement for issuance of a handgun carry permit, Md. Public Safety Code § 5-306(a)(5)(ii), or at least, Defendants' application of that requirement, fails constitutional scrutiny as an impermissible prior restraint. The right to carry a firearm for self-defense is plainly among the "freedoms which the Constitution guarantees." *Staub*, 355 U.S. at 322. Accordingly, the government bears the burden of proving that the an applicant may not have a permit, for some constitutionally-

---

[3]Former D.C. Code § 22-4504(a) (2008) provided that carrying a gun in one's home without a permit constituted a misdemeanor offense. Former D.C. Code § 22-4506 (2008) provided for a license to carry issued at the police chief's discretion, although licenses were never issued. Heller did not seek a permit to carry a handgun in public. *Parker*, 478 F.3d at 400.

[4]The city also adopted a complete ban on carrying handguns in public, prompting additional litigation. *Palmer* v. *District of Columbia*, U.S. Dist. Ct. D.C. No. 09-CV-1482-HHK.

compelling reason defined by application of standards that are "narrow, objective and definite." *Shuttlesworth*, 394 U.S. at 151.

The determination that Woollard, and others, do not have a "good and substantial reason" for wanting to exercise their constitutional rights is insufficient to deprive individuals of this important right. Some of the standards utilized in making this determination are plainly not narrow, objective, or definite. For example, Defendants have discretion to judge whether the "[r]easons given by the applicant as to whether those reasons are good and substantial," COMAR 29.03.02.04(G), taking into account vague "[i]nformation received from personal references and other persons interviewed," and "[i]nformation received from business or employment references as may be necessary in the discretion of the investigator." COMAR 29.03.02.04(J), (K).

Directly contradicting the Supreme Court's holding that handguns are a class of arms that individuals are constitutionally entitled to have for self-defense, Defendants consider "[w]hether the applicant has any alternative available to him for protection other than a handgun permit," and "[w]hether the applicant falls within those classes of individuals who do not need permits." COMAR 29.03.02.04(L), (M). The standards re-enforce that the inquiry is whether, as Defendants happen to see it, "[w]hether the permit is necessary as a reasonable precaution for the applicant against apprehended danger." COMAR 29.03.02.04(O).

This is hardly a model of an appropriate prior restraint, applying "narrow, objective, and definite" standards. These "standards" are entirely arbitrary, subjective, and boundless. Against them stands a constitutional provision guaranteeing individuals the right to carry a gun for self-defense. The desire for self-defense, regardless of Defendants' opinions on the subject, is all the "good and substantial reason" required of Plaintiffs by the Second Amendment.

17

III.   CONDITIONING THE EXERCISE OF SECOND AMENDMENT RIGHTS ON PROOF
       OF "GOOD AND SUBSTANTIAL REASON" FOR SELF-DEFENSE VIOLATES THE
       EQUAL PROTECTION CLAUSE.

The Second Amendment secures a fundamental right. *McDonald*, 130 S. Ct. at 3042

(plurality opinion) & 3059 (Thomas, J., concurring). "[C]lassifications affecting fundamental

rights are given the most exacting scrutiny." *Clark* v. *Jeter*, 486 U.S. 456, 461 (1988) (citation

omitted). Under this analysis, the government carries the burden of proving the law "furthers a

compelling interest and is narrowly tailored to achieve that interest," *Citizens United* v. *FEC*, 130

S. Ct. 876, 898 (2010) (citation omitted), a burden that cannot be met where less restrictive

alternatives are available to achieve the same purpose. *Ashcroft* v. *ACLU*, 542 U.S. 656, 666

(2004); *see also United States* v. *Engstrum*, 609 F. Supp. 2d 1227, 1331-32 (D. Utah 2009)

(applying strict scrutiny in Second Amendment analysis).

The Fourth Circuit is in accord. In *Chester*, the appellate court confronted the assertion of

a Second Amendment right against indictment for the crime of firearms possession by domestic

violence misdemeanants. "[W]econclude that intermediate scrutiny is more appropriate than

strict scrutiny for Chester and similarly situated persons," because "his claim is not within the

core right identified in *Heller*—the right of a *law-abiding*, responsible citizen to possess and

carry a weapon for self-defense." *Chester*, 628 F.3d at __, 2010 U.S. App. LEXIS 26508 at *26

(emphasis in original). The individual plaintiffs in this action are law-abiding, responsible

citizens. Accordingly, the State cannot classify them with respect to the exercise of their Second

Amendment right to carry a handgun for self-defense in a manner that fails strict scrutiny.

"The right to equal protection of the laws, in the exercise of those freedoms of speech and

religion protected by the First and Fourteenth Amendments, has a firmer foundation than the

18

whims or personal opinions of a local governing body." *Niemotko* v. *Maryland*, 340 U.S. 268, 272 (1951). Likewise, with the exercise of fundamental Second Amendment freedoms. Defendants' whims and personal opinions as to who should enjoy Second Amendment rights impermissibly classifies individuals in the exercise of these rights in a completely arbitrary, standardless fashion.

The practice thus fails all aspects of strict scrutiny analysis. There is no compelling state interest in depriving people of the means of self-defense. The state may have an interest in reducing gun violence and accidents, but it cannot presume that the exercise of a constitutional right will cause the sort of harm it is allowed to curtail. Defendants cannot point to the impact of their practice – the deprivation of constitutional rights – as their interest. *Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991).

Nor is the arbitrary licensing practice narrowly tailored to any interest in public safety. Defendants are plainly incapable of predicting crime. Defendants cannot predict who will face, much less when or where, a situation in which the right to self-defense would be desperately needed. Crime is largely random and unpredictable. Moreover, Defendants' insistence on "copies of police reports for assaults, threats, harassments, stalking," Exh. A, is entirely irrational. Individuals victimized once may never be victimized again, while an individual's first encounter with a violent criminal often leads to death or seriously bodily harm. The right to self-defense at the Second Amendment's core does not depend for its existence on a history of previous victimization. The Second Amendment provides that individuals, not Defendants, retain the ability to determine whether they wish to carry a gun "as a reasonable precaution against apprehended danger."  Md. Public Safety Code § 5-306(a)(5)(ii).

19

Finally, even if the right at issue—the ability to carry arms for self-defense—could somehow constitute the evil that Defendants are entitled to address, less-restrictive alternatives are plainly available to Defendants. The laws of *forty-three States* recognize that private citizens who are otherwise qualified have a right to carry handguns for self-defense— whether by issuing licenses to carry on the basis of non-discretionary criterion, or by allowing people to carry without licenses. Thirty-six States have statues or regulations that require officials to issue gun carry licenses to applicants who meet non-discretionary standards.[5] In some of these states, a license is required only if a gun is carried concealed. Three States – Alaska, Arizona, and Vermont – do not require permits to carry handguns, although Arizona and Alaska issue permits for reciprocity purposes. Three States – Alabama, California, and Delaware – have discretionary statutes for licensing the carry of concealed handguns, but allow private citizens to carry exposed handguns.[6] One State – Wisconsin – prohibits concealed carry, but allows citizens to carry

---

[5] Ark. Code Ann. § 5-73-309(a); Colo. Rev. Stat. Ann.  § 18-12-203(1); Fla. Stat. Ann. § 790.06(2); Ga. Code Ann. § 16-11-129; Idaho Code Ann. § 18-3302(1); Ind. Code Ann. § 35-47-2-3(e); Iowa Code Ann. § 724.7; Kansas Stat. Ann. § 75-7c03; Ky. Rev. Stat. Ann. § 237.110(2); La. Rev. Stat. Ann. § 40:1379(A)(1); Me. Rev. Stat. Ann. tit. 25, § 2003; Mich. Comp. Laws Ann. § 28.422(2)(3); Minn. Stat. § 624.714, subdiv. 2(b); Miss. Code Ann. § 45-9-101(2); Mo. Ann. Stat. § 571.090(1); Mont. Code Ann. § 45-8-321(1); Neb. Rev. Stat. § 28-1202; Nev. Rev. Stat. Ann. § 202.3657(2); N.H. Rev. Stat. Ann. § 159.6; N.M. Stat. Ann. § 29-19-4 ; N.C. Gen. Stat. § 14-415.11(b); N.D. Cent. Code § 62.1-04-03; Ohio Rev. Code Ann. § 2923.125(D)(1); Okla. Stat. Ann. tit. 21, § 1290.12(12); Or. Rev. Stat. Ann. § 166.291; 18 Pa. Cons. Stat. Ann. § 6109(e); S.C. Code Ann. § 23-31-215(A); S.D. Codified Laws § 23-7-7; Tenn. Code Ann. § 39-17- 1351(b); Tex. Gov't Code Ann. § 411.177(a); Utah Code Ann. § 53-5-704(1)(a); Va. Code Ann. § 18.2-308(D); Wash. Rev. Code Ann. § 9.41.070(1); W. Va. Code Ann. § 61-7-4(f); Wyo. Stat. Ann. § 6-8-104(b). Connecticut's statute is facially discretionary, but implementing regulations eliminate this discretion.  *See* Conn. Gen. Stat. Ann. §§ 29-28(b), 29-35(a); Conn. Agencies Regs. § 29-36m-8.

[6] Ala. Code §§ 13A-11-73, 13A-11-75; Cal. Penal Code §§ 12031, 12050(a)(1)(A)-(C); Del. Code Ann. tit. 11 §§ 1441-42. California's law is unconstitutional as it uniquely mandates that openly carried guns be unloaded in most cases – a dangerous practice not suited for self-defense.

exposed handguns without a license. Wis. Stat. Ann. § 941.23. Only Hawaii, Massachusetts, New Jersey, and New York share Maryland's particular unconstitutional approach, and only Illinois absolutely prohibits private citizens from carrying handguns.

Defendants already conduct background checks on permit applicants, require applicants to complete approved training, COMAR 29.03.02.12, and remain free to ban guns from being carried in "sensitive places" or in a dangerous manner. Defendants have many narrowly-tailored tools at their disposal for addressing compelling public safety interests in the regulation of firearms without arbitrarily depriving individuals of their fundamental rights.

## CONCLUSION

Defendants' arbitrary denial of Second Amendment rights must be enjoined. The motion for summary judgment should be granted.

Dated: February 18, 2011          Respectfully submitted,

Alan Gura                         Cary J. Hansel
Gura & Possessky, PLLC            Joseph, Greenwald & Laake
101 N. Columbus Street, Suite 405  6404 Ivy Lane, Suite 400
Alexandria, VA 22314              Greenbelt, MD 20770
703.835.9085/Fax 703.997.7665     301.220.2200/Fax 301.220.1214

By: /s/ Alan Gura                 By: /s/ Cary J. Hansel
    Alan Gura                         Cary J. Hansel

                                  Attorneys for Plaintiffs