IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, et al., | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Case No. 1:10-cv-2068-BEL |
| TERRENCE SHERIDAN, et al., | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

DOUGLAS F. GANSLER
Attorney General of Maryland

DAN FRIEDMAN (Bar ID 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle
Annapolis, Maryland 21401
Tel. 410-946-5600
dfriedman@oag.state.md.us

MATTHEW J. FADER (Bar ID 29294)
Assistant Attorney General
STEPHEN M. RUCKMAN (Bar ID 28981)
Attorney
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Tel. 410-576-7906
Fax. 410-576-6955
mfader@oag.state.md.us
sruckman@oag.state.md.us

May 18, 2011                                    Counsel for Defendants

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................... 1

I. THE FOURTH CIRCUIT'S DECISION IN *MASCIANDARO* ESTABLISHES A FRAMEWORK FOR ADDRESSING SECOND AMENDMENT CHALLENGES TO FIREARMS REGULATIONS THAT AFFECT CONDUCT OUTSIDE THE HOME AND FORECLOSES MANY OF THE PLAINTIFFS' CORE ARGUMENTS ................................. 3

II. THE PERMIT STATUTE IS REASONABLY ADAPTED TO A SUBSTANTIAL GOVERNMENT INTEREST ....................................................................................... 7

   A. The Plaintiffs Concede that the State's Interest in Public Safety Is Compelling ................................................................................................. 7

   B. The Permit Statute Is Reasonably Adapted to the State's Compelling Interest ....................................................................................................... 8

      1. Public Safety Concerns Are at the Heart of the Intermediate Scrutiny Inquiry ................................................................................. 8

      2. The Plaintiffs Have Not Refuted the Defendants' Evidence Regarding the Reasonable Fit Between the Permit Statute and Public Safety ............................................................................... 11

III. THE PRIOR RESTRAINT DOCTRINE DOES NOT APPLY TO THE SECOND AMENDMENT ....................................................................................................... 14

CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

Page

**Cases**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................................passim

*McDonald v. City of Chicago*, ___ U.S. ___, 130 S.Ct. 3020 (2010) ..................1, 4, 6, 7

*New York v. Quarles*, 467 U.S. 649 (1984) ......................................................................15

*Schenck v. Pro-Choice Network*, 519 U.S. 357 (1997) ....................................................15

*Sherbert v. Verner,* 374 U.S. 398 (1963) ..........................................................................15

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) ...............................2, 7, 11, 14, 15

*United States v. Masciandaro*, __ F. 3d. __, 2011 U.S. App. LEXIS 5964
      (4th Cir. Mar. 24, 2011).........................................................................................passim

*Wilson v. Arkansas*, 514 U.S. 927 (1995).........................................................................15

**Constitutional Provisions, Statutes and Rules**

United States Constitution

  First Amendment.................................................................................3, 14, 15

  Second Amendment..................................................................................passim

  Fourth Amendment.............................................................................................15

  Fifth Amendment................................................................................................15

**Statutes**

Md. Code Ann., Pub. Safety § 5-306 ................................................................................1

**Miscellaneous**

Ian Ayres & John J. Donohue III, *More Guns, Less Crime Fails Again: The Latest Evidence from 1977 – 2006,* 6 ECON J. WATCH 218 (May 2009) .......................... 12

Ian Ayres & John J. Donohue III, *Shooting Down the "More Guns, Less Crime" Hypothesis*, 55 STANFORD L. REV. 1193 (2003) ..................................................... 13

Ian Ayres & John J. Donohue III, *Yet Another Refutation of the More Guns, Less Crime Hypothesis – With Some Help From Moody and Marvell*, 6 ECON J. WATCH 35 (2009) ............................................................................... 12

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Maryland's handgun wear and carry permit statute, Md. Code Ann., Pub. Safety § 5-306 ("Permit Statute"), is unquestionably a reasonable adaptation to the State's compelling government interest in maintaining public safety. While advancing the State's compelling interest in preventing handguns – the weapon of choice for criminal activity – from being carried in public by individuals without a demonstrable need to do so, the Permit Statute does not infringe in any way on the right to possess and carry any type of firearm in the home; allows the possession, carrying, and transportation of handguns for a number of legitimate uses without the need for a permit; does not apply to long guns; and enables those with a demonstrated need to carry a handgun in public to obtain a permit to do so. Unable to credibly challenge either the substantial nature of the government's interest or the fact that the Permit Statute is a reasonable fit to that interest, the plaintiffs eschew the intermediate scrutiny analysis completely, and instead advocate an absolutist approach to Second Amendment challenges in which public safety is irrelevant and the only "question is whether carrying arms is constitutionally protected." Pls' Response Br. (Paper No. 34) at 2. That approach is inconsistent with decisions of the Supreme Court in *McDonald v. City of Chicago*, ___ U.S. ___, 130 S.Ct. 3020 (2010) and *District of Columbia v. Heller*, 554 U.S. 570 (2008), and directly contradicts the Fourth Circuit's holdings in *United States v. Masciandaro*, __ F. 3d. __, 2011 U.S.

App. LEXIS 5964 (4th Cir. Mar. 24, 2011) and *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010).

Although the plaintiffs' response brief references the Fourth Circuit's recent decision in *Masciandaro*, which was decided after the defendants filed their opening brief and before the plaintiffs filed their response, they fail to acknowledge that *Masciandaro* forecloses a number of their arguments.  Most importantly, despite the plaintiffs' continued, dogmatic insistence that public safety considerations are irrelevant to this Court's analysis of the constitutionality of the Permit Statute, *Masciandaro* confirms that public safety considerations are central to resolving Second Amendment challenges. Indeed, *Masciandaro*, which upheld a regulation on public safety grounds, determined that relevant public safety concerns become increasingly weighty as the context of a firearms regulation moves outside the home.  2011 U.S. App. LEXIS 5964 at *33.

Moreover, contrary to the plaintiffs' repeated protestations to the contrary, *Masciandaro* also confirms that *Heller* did not decide the question of whether the Second Amendment right applies outside the home.  *Id.* at *23.  Indeed, *Masciandaro* directs courts to avoid deciding that question, where possible, in light of the potentially severe public safety consequences of answering the question incorrectly.  *Id.* at *45-48. Assuming, without deciding, that the Second Amendment right identified in *Heller* does apply outside the home, the Fourth Circuit in *Masciandaro* held that such a right would lie outside the core of the Second Amendment's protection, and be subject to no greater than intermediate scrutiny.  *Id.* at *33-35.  In this case, as in *Masciandaro*, because the Permit Statute clearly satisfies intermediate scrutiny even if it regulates conduct protected

2

by the Second Amendment, there is no need for this Court to decide the scope of the Second Amendment right outside the home.

The plaintiffs ignore the framework established by *Masciandaro*, instead relying on dogmatic rhetoric, overreaching and unsupportable interpretations of governing case law, and mischaracterizations of the defendants' arguments. In this reply brief, the defendants do not engage in a point-by-point response to all the plaintiffs' arguments, but instead: (1) address the *Masciandaro* decision, which both establishes the framework for review of Second Amendment challenges to regulations of gun possession outside the home and disposes of several of the plaintiffs' core arguments; (2) explain how the plaintiffs have not refuted the defendants' demonstration that the Permit Statute is a reasonable fit to the State's substantial government interest in public safety; and (3) address briefly the plaintiffs' flawed argument regarding the way in which courts have used certain aspects of First Amendment doctrine in fashioning a framework for analysis of Second Amendment cases.

**I.   THE FOURTH CIRCUIT'S DECISION IN *MASCIANDARO* ESTABLISHES A FRAMEWORK FOR ADDRESSING SECOND AMENDMENT CHALLENGES TO FIREARMS REGULATIONS THAT AFFECT CONDUCT OUTSIDE THE HOME AND FORECLOSES MANY OF THE PLAINTIFFS' CORE ARGUMENTS.**

On March 24, 2011, the Fourth Circuit issued its decision in *Masciandaro*, clarifying the appropriate analysis for addressing challenges to firearms regulations that apply outside the home. In light of the significance of that decision to the issues before this Court, it is worth reviewing in some detail. The defendant in *Masciandaro*, an otherwise law-abiding citizen with no prior criminal history, was arrested for possession

of a loaded handgun in his vehicle while parked in a national park. 2011 U.S. App. LEXIS 5964 at *31. He challenged his conviction by arguing that the regulation under which he was convicted, which prohibited such possession by anyone, *id.* at *2, violated the Second Amendment.

In examining the scope of the Second Amendment right identified in *Heller*, the Fourth Circuit in *Masciandaro* found that although the Supreme Court identified an individual right to possess and carry a handgun in the home for self-defense, it did "not define the outer limits of *Second Amendment* rights" or "address the level of scrutiny that should be applied to laws that burden those rights." *Id.* at *22. However, the panel recognized that both *Heller* and *McDonald* affirmed that "Second Amendment rights are far from absolute," and are subject to regulation. *Id.* at *23. The "upshot" of *Heller* and *McDonald*, the Fourth Circuit explained, is that they established "a clearly-defined fundamental right to possess firearms for self-defense within the home," but "a considerable degree of uncertainty remains as to the scope of that right beyond the home and the standards for determining whether and how the right can be burdened by governmental regulation." *Id.*

The Court in *Masciandaro* found it unnecessary to resolve in that case whether the Second Amendment right applies outside the home in light of its conclusion that, even if it does, the challenged regulation would survive intermediate scrutiny. *Id.* at *45-48. In language that is appropriately blunt in light of the potential public safety consequences, the Court warned that "[t]his is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our

4

judicial chambers we miscalculated as to *Second Amendment* rights." *Id.* at *48. Recognizing that the Supreme Court had expressly limited its holding in *Heller* to the context of the home, the Fourth Circuit stated that it "is not far-fetched to think the *Heller* Court wished to leave open the possibility that such a danger would rise exponentially as one moved the right from the home to the public square." *Id.*[1]

Assuming, without deciding, that Second Amendment rights extend, in some form, beyond the home, the unanimous Court addressed the standard of review to apply to such rights. *Id.* at *29-30. The Court first rejected the notion that the same level of scrutiny must necessarily apply to all Second Amendment challenges, finding that different contexts call for different approaches, and "we might expect that courts will employ different types of scrutiny in assessing burdens on *Second Amendment* rights, depending on the character of the *Second Amendment* question presented." *Id.* at *32. Factors the Fourth Circuit deemed appropriate to consider include "the nature of a person's *Second Amendment* interest, the extent to which those interests are burdened by government regulation, and the strength of the government's justifications for the regulation." *Id.*

Based on those principles, and having found that "the core *Heller* right applies" in the home, *id.* at *32, the Court held that, "as we move outside the home, firearm rights have always been more limited, *because public safety interests often outweigh individual*

---

[1] Judge Niemeyer, who otherwise wrote for a unanimous Court, disagreed with the majority on this point and wrote only for himself in concluding that the Second Amendment right extends, "at least in some form," outside the home. *Id.* at *24. Judge Wilkinson wrote for the Court on this issue only, *id.* at *45-48, and otherwise joined in Judge Niemeyer's opinion.

*interests in self-defense*," *id.* at *33 (emphasis added). As a result, although the Court found "the application of strict scrutiny important to protect the core right of the self-defense of a law-abiding citizen in his home," it concluded that "a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home." *Id.* at *35 (internal citation omitted). That lesser showing – intermediate scrutiny – requires the government to demonstrate that the challenged regulation "is reasonably adapted to a substantial government interest." *Id.* at *35. Applying that test to the regulation before it, the Court easily found the regulation constitutional. *Id.* at *42.

*Masciandaro*'s clarification of the analysis to be employed in addressing Second Amendment challenges forecloses the plaintiffs' contentions that the Second Amendment makes irrelevant the government interest in public safety and that it forbids any deference to the other branches of government. Assuming, without deciding, that the Second Amendment applies to regulations of firearms outside the home, the Fourth Circuit not only acknowledges the compelling nature of the government interest in public safety, *id.* at *40-41, but it also acknowledges the greater weight of public safety interests outside the home, *id.* at *33, and defers to the conclusion of the Secretary of the Interior regarding the appropriateness of the specific firearm regulation at issue, *id.* at *42, *43. Similarly, *Masciandaro* also forecloses the plaintiffs' argument that possession of firearms outside the home is within the core Second Amendment right and, therefore, that strict scrutiny applies to the Permit Statute. *See id.* at *32-35. *Masciandaro* even forecloses the plaintiffs' argument that *Heller* and *McDonald* establish a Second

6

Amendment right that applies outside the home, *id.* at \*23, and specifically warns lower courts not to decide that issue unless doing so is absolutely necessary. *Id.* at \*45-48.

### II.   THE PERMIT STATUTE IS REASONABLY ADAPTED TO A SUBSTANTIAL GOVERNMENT INTEREST.

For reasons discussed in the defendants' opening brief, the Permit Statute does not implicate conduct falling within the scope of the Second Amendment's protection. *See* Defs' Opening Br. at 23-28. However, following the *Masciandaro* framework, this Court must first assess whether the Permit Statute would satisfy the applicable level of scrutiny *assuming* it implicates the Second Amendment right. Because the Permit Statute regulates the possession of handguns exclusively outside the home, *Masciandaro* dictates the application of no greater than intermediate scrutiny. There are two aspects to an intermediate scrutiny test: (1) identifying a "substantial government interest"; and (2) determining whether the regulation at issue is "reasonably adapted" to that interest. *Macsciandaro*, 2011 U.S. App. LEXIS 5964 at \*35; *see also Chester*, 628 F.3d at 683 (government must demonstrate "that there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective"). As discussed below, the Permit Statute satisfies intermediate scrutiny.

### A.   The Plaintiffs Concede that the State's Interest in Public Safety Is Compelling.

The intermediate scrutiny test first demands the identification of a "substantial government interest." *Macsciandaro*, 2011 U.S. App. LEXIS 5964 at \*35. In this case,

7

the plaintiffs concede the existence of "a compelling governmental interest in regulating firearms in the interest of public safety." Pls' Response Br. at 31.[2]

### B.  The Permit Statute Is Reasonably Adapted to the State's Compelling Interest.

The remaining aspect of the intermediate scrutiny test asks whether the regulation at issue is reasonably adapted to the substantial government interest. *Macsciandaro*, 2011 U.S. App. LEXIS 5964 at *35. In their opening brief, the State defendants explained in detail how the Permit Statute is reasonably adapted to the State's substantial interest in public safety. Defs' Opening Br. at 32-42. In their response brief, the plaintiffs largely refuse even to engage in a discussion regarding whether the Permit Statute satisfies intermediate scrutiny. Instead, the plaintiffs argue erroneously that public safety concerns are entirely irrelevant because the Supreme Court has established an absolute right to carry handguns in public for self-defense.

#### 1.  Public Safety Concerns Are at the Heart of the Intermediate Scrutiny Inquiry.

The plaintiffs' objection to even considering public safety concerns in assessing the constitutionality of the Permit Statute takes several different forms. The plaintiffs variously contend: (1) that the Supreme Court has already decided that the Second

---

[2] The plaintiffs follow that concession with the circular argument that this substantial government interest is not implicated in this case because, they argue, the Second Amendment guarantees a right to carry handguns in public and the exercise of a constitutional right, by definition, cannot implicate any legitimate government interest. Pls' Response Br. at 31. The plaintiffs would apparently have the Court jettison strict scrutiny, intermediate scrutiny, and all other forms of constitutional review in favor of a test that simply asks whether a constitutional right is implicated by a statute. That is not the law. *See, e.g.*, *Masciandaro*, 2011 U.S. App. LEXIS 5964 at *34-35.

Amendment absolutely protects a right to carry handguns in public for self-defense such that public safety considerations are irrelevant, *see, e.g.*, Pls. Response Br. at 1, 10-11, 12-14, 19; (2) that the Supreme Court in *Heller* rejected any "balancing test" that might permit the consideration of public safety concerns, *id.* at 2, 8, 10; and (3) that public safety can be considered only in connection with regulations that govern the way in which handguns are carried in public, not regulations that govern who may do so, *id.* at 31-32. To the contrary, public safety concerns are at the heart of the intermediate scrutiny inquiry.

First, as discussed above, far from the Supreme Court having established an absolute core right to carry handguns in public for self-defense, the Fourth Circuit has held that any such right beyond the home, if it exists at all, lies outside the core of the Second Amendment right and is subject to an intermediate scrutiny test that assesses the regulation's fit, or adaptation, to the government's compelling interest in public safety. *Masciandaro*, 2011 U.S. App. LEXIS 5964 at *32-35. Although the plaintiffs seem to believe that simply stating over and over that the Supreme Court in *Heller* recognized a core Second Amendment right for all law-abiding citizens to carry handguns in public will make it so, the Fourth Circuit has foreclosed that argument, at least in this Circuit.

Second, although the Supreme Court's majority in *Heller* undeniably rejected the specific "interest balancing" approach advocated by Justice Breyer,[3] that does not mean

---

[3] The plaintiffs' response accurately notes that the defendants' opening brief, in one sentence, mistakenly refers to Justice Breyer's opinion in *Heller* as a concurring opinion. *See* Defs' Opening Br. at 31 n.13. This error was both inadvertent and obvious in light of the immediately following sentence, which identified the same opinion as a dissent.

9

that the Court determined that public safety was an impermissible consideration in Second Amendment challenges. To the contrary, the Supreme Court identified a number of limitations on the wear or carry of firearms that it had either already accepted or that it deemed to be presumptively lawful, presumably based on public safety considerations. *See Heller*, 554 U.S. at 626-27 & n.26. Those presumptively lawful regulations include categorical prohibitions on the possession of firearms by groups of individuals (felons and the mentally ill) and on the possession of firearms by all individuals in certain places (government buildings and schools). *Id.* Indeed, the Fourth Circuit has already recognized that, even if the Second Amendment applies outside the home, the government's "public safety interests often *outweigh* individual interests in self-defense" in that context. *Masciandaro*, 2011 U.S. App. LEXIS 5964 at *33 (emphasis added). Thus, applicable precedent offers no support for the plaintiffs' attempt to read the Court's rejection of the specific interest balancing test proposed by Justice Breyer as a doctrinaire rejection of any test that weighs the government's interest in public safety.

Third, the plaintiffs err in arguing that public safety cannot be considered in assessing the constitutionality of a regulation affecting who may carry a handgun in public. The plaintiffs provide no support for this dogmatic assertion. Indeed, if the plaintiffs were correct, it is difficult to see what basis the State would have for precluding

---

Contrary to the plaintiffs' blatant mischaracterization of the defendants' arguments, the defendants do not in any way suggest that the Supreme Court adopted Justice Breyer's interest-balancing approach. To the contrary, the point of the discussion in footnote 13 of the defendants' opening brief is that although the Supreme Court majority harshly criticized a number of aspects of Justice Breyer's dissent – including the specific interest-balancing approach he advocated – it did not criticize his separate statement that the majority implicitly rejected a strict scrutiny standard. *Id.*

felons or the mentally ill from carrying handguns in public, yet the Supreme Court has deemed such regulations presumptively lawful. *See Heller*, 554 U.S. at 626-27 & n.26.

### 2. The Plaintiffs Have Not Refuted the Defendants' Evidence Regarding the Reasonable Fit Between the Permit Statute and Public Safety.

As one aspect of showing how the Permit Statute is a reasonable fit for the State's compelling interest in public safety, the defendants presented evidence in the form of affidavits of a number of the State's highest law enforcement officers, an affidavit of an expert on studying firearms violence, and numerous studies and reports demonstrating the public safety implications of loose handgun regulations. The plaintiffs' primary response to this evidence is to assert that although it might be relevant to a policy debate on the merits of gun regulation, evidence of the public safety benefits of the Permit Statute is irrelevant to its constitutionality. *See* Pls' Response Br. at 1, 7, 10-11, 12-14, 19. However, the plaintiffs' position is inconsistent with the intermediate scrutiny test, which involves a showing of how the regulation under review relates to the governmental objective at issue. *See, e.g.*, *Chester*, 628 F. 3d at 683 (remanding case to the trial court to provide the government the opportunity to offer evidence). Although such evidence is not required in all cases, and was apparently neither provided nor required in *Masciandaro*, it is clearly relevant.

Choosing to ridicule the defendants for presenting evidence at all, the plaintiffs fail to address most of that evidence. With respect to the affidavits of leading law enforcement officers regarding the adverse public safety implications of abandoning the good and substantial reason requirement, the plaintiffs' only response is to question

11

implicitly, and without the slightest justification, the integrity of those law enforcement officers. *See* Pls' Response Br. at 3-4 & n.4. With respect to the expert testimony of Professor Cook, a recognized expert on firearms violence with more than 35 years of research experience who has conducted numerous studies and authored many scholarly books and articles on the subject, the plaintiffs' response is to characterize the notion that he would have something to add to the discussion as "absurd." *Id.* at 10.

The plaintiffs acknowledge the validity of at least most of the studies and scholarly articles cited by the defendants demonstrating the public safety implications of loose handgun regulations,[4] but contend that they could cite to an equal number of studies and scholars reaching the opposite conclusion. *Id.* at 4-5. However, even if the studies identified by the plaintiffs were on equal footing with the evidence put forward by the defendants, which they are not,[5] one point on which both the plaintiffs and defendants

---

[4] The single article cited in the defendants' opening brief with which the plaintiffs take issue is a piece that catalogues 293 shooting deaths committed by holders of handgun permits since May 2007. *See* Pls' Response Br. at 5. Although the plaintiffs correctly point out that some – fewer than a third – of the shootings on the list were suicides: (1) that does not alter the article's main point, which is that permit holders do not always remain law abiding; and (2) the plaintiffs implicitly acknowledge the validity of the other evidence cited by the defendants. Moreover, the plaintiffs' citation to purportedly "[m]ore relevant data" indicating that some states with more permissive firearms laws have failed to revoke significant numbers of handgun permits, *id.* at 6, is simply irrelevant; failure to revoke does not prove an absence of criminal conduct.

[5] Among other problems, the empirical foundation for the "more guns, less crime" hypothesis underlying much of the research on which the plaintiffs rely has been discredited. *See, e.g.,* Ian Ayres & John J. Donohue III, *More Guns, Less Crime Fails Again: The Latest Evidence from 1977 – 2006*, 6 ECON J. WATCH 218 (May 2009); Ian Ayres & John J. Donohue III, *Yet Another Refutation of the More Guns, Less Crime Hypothesis – With Some Help From Moody and Marvell*, 6 ECON J. WATCH 35 (2009);

12

agree is that it is not the role of the courts to wade through opposing evidence to assess how best to regulate firearms in the interests of public safety, Pls' Response Br. at 1, 9-11.  As long as the political branches of government reach those decisions consistent with the dictates of the Second Amendment – *i.e.*, by adopting regulations reasonably adapted to a substantial government interest – it is not the role of the courts to overturn them. *See, e.g.*, *Masciandaro*, 2011 U.S. App. LEXIS 5964 at \*42-43 (according deference to policy choices of the Secretary of the Interior).  Intermediate scrutiny does not limit the legislature to acting only when there is universal agreement as to the best way to promote public safety.  Indeed, the need to leave the legislature sufficient room to adopt effective regulatory measures is a primary reason why the Fourth Circuit declined to apply strict scrutiny to measures regulating the possession of firearms outside the home:

> Were we to require strict scrutiny in circumstances such as those presented here, we would likely foreclose an extraordinary number of regulatory measures, thus handcuffing lawmakers' ability to "prevent[] armed mayhem" in public places . . . and depriving them of "a variety of tools for combating that problem."

 *See id.* at \*34 (internal citations omitted).

Finally, the plaintiffs' repeated emphasis on their calculation that only a small fraction of adult Maryland residents have handgun wear-and-carry permits is a red herring.  The plaintiffs have not presented even an iota of evidence suggesting that this statistic indicates that vast numbers of law-abiding Marylanders want to carry handguns in public but are precluded from doing so.  Given the State's high approval rate, that

---

Ian Ayres & John J. Donohue III, *Shooting Down the "More Guns, Less Crime" Hypothesis*, 55 STANFORD L. REV. 1193 (2003).


Case 1:10-cv-02068-BEL   Document 38   Filed 05/18/11   Page 17 of 20

agree is that it is not the role of the courts to wade through opposing evidence to assess how best to regulate firearms in the interests of public safety, Pls' Response Br. at 1, 9-11.  As long as the political branches of government reach those decisions consistent with the dictates of the Second Amendment – *i.e.*, by adopting regulations reasonably adapted to a substantial government interest – it is not the role of the courts to overturn them. *See, e.g.*, *Masciandaro*, 2011 U.S. App. LEXIS 5964 at *42-43 (according deference to policy choices of the Secretary of the Interior).  Intermediate scrutiny does not limit the legislature to acting only when there is universal agreement as to the best way to promote public safety.  Indeed, the need to leave the legislature sufficient room to adopt effective regulatory measures is a primary reason why the Fourth Circuit declined to apply strict scrutiny to measures regulating the possession of firearms outside the home:

> Were we to require strict scrutiny in circumstances such as those presented here, we would likely foreclose an extraordinary number of regulatory measures, thus handcuffing lawmakers' ability to "prevent[] armed mayhem" in public places . . . and depriving them of "a variety of tools for combating that problem."

 *See id.* at *34 (internal citations omitted).

Finally, the plaintiffs' repeated emphasis on their calculation that only a small fraction of adult Maryland residents have handgun wear-and-carry permits is a red herring.  The plaintiffs have not presented even an iota of evidence suggesting that this statistic indicates that vast numbers of law-abiding Marylanders want to carry handguns in public but are precluded from doing so.  Given the State's high approval rate, that

---

Ian Ayres & John J. Donohue III, *Shooting Down the "More Guns, Less Crime" Hypothesis*, 55 STANFORD L. REV. 1193 (2003).

statistic is at least in part a function of the number of people who apply for permits. Moreover, the Permit Statute does not regulate in any way the core Second Amendment right recognized in *Heller*, which all law-abiding, adult Marylanders are free to enjoy, if they choose to do so.

### III.   THE PRIOR RESTRAINT DOCTRINE DOES NOT APPLY TO THE SECOND AMENDMENT.

The defendants addressed the plaintiffs' reliance on the prior restraint doctrine in their opening brief, *see* Defs' Opening Br. at 42-46, and will not repeat those arguments here. However, the defendants do respond briefly to two points made by the plaintiffs in their response brief. First, the plaintiffs erroneously assert that the Fourth Circuit and other courts have imported wholesale the body of First Amendment doctrine, including prior restraint, into the Second Amendment context. *See* Pls' Response Br. at 26-29. However, the decisions on which the plaintiffs purport to rely have expressly limited their invocation of the First Amendment to serving "as a guide in *developing a standard of review* for the Second Amendment." *See, e.g.*, *Chester*, 628 F.3d at 682 (emphasis added). No case has applied other First Amendment doctrines, such as overbreadth and prior restraint, in the Second Amendment context. In fact, the Fourth Circuit in *Masciandaro* expressly rejected application of the overbreadth doctrine in the Second Amendment context. 2011 U.S. App. LEXIS 5964, at *44.

Second, these courts have confirmed that one of the most important features of the First Amendment standard of review that they have looked to as a guide in the Second Amendment context is its flexibility in varying the type of scrutiny applied, depending on

14

the specific character of the constitutional question presented. *Chester*, 628 F.3d at 682. Accordingly, even if the courts were to expand their invocation of First Amendment doctrine beyond standard of review, it would still presumably be subject to flexible application based on the context of the Second Amendment right at issue in each particular case. *Masciandaro*, 2011 U.S. app. LEXIS 5964, at *32. Second Amendment rights are certainly not immune from the public safety limitations that apply to First Amendment rights,[6] and the fact that public safety concerns are more prevalent in the Second Amendment context does not mean that they should be given decreased weight in adjudications of Second Amendment rights. Where the government's interest in public safety is implicated, intermediate scrutiny demands that it be considered as part of the constitutional analysis regardless of what right is implicated. In this case, the Permit Statute is a reasonable adaptation to the government's compelling interest in public

---

[6] The plaintiffs' attempt to treat First Amendment doctrine as inflexibly hostile to considerations of public safety is simply wrong. Courts have long found that First Amendment freedoms, like all other rights, can be restricted in the interest of public safety. *See, e.g.*, *Schenck v. Pro-Choice Network*, 519 U.S. 357, 376 (1997) (injunction prohibiting demonstrations within fixed buffer zones outside abortion clinics upheld in part because it "ensur[ed] public safety and order"); *Sherbert v. Verner*, 374 U.S. 398, 403 (1963) (noting that "the Court has rejected challenges under the Free Exercise Clause to governmental regulation of certain overt acts prompted by religious beliefs or principles" where those acts have "posed some substantial threat to public safety, peace or order"); *see also, e.g.*, *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995) (in a case involving police entry into the dwelling of a suspect known to have a handgun, finding that the Fourth Amendment knock-and-announce requirement may "yield under circumstances presenting a threat of physical violence"); *New York v. Quarles*, 467 U.S. 649, 655 (1984) (in a case involving police efforts to locate a handgun in a supermarket, finding "a 'public safety' exception to the [Fifth Amendment] requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence").

safety, and, even if it falls within the scope of the Second Amendment's protection, it survives constitutional scrutiny.

## CONCLUSION

For these reasons, and those more fully stated in the defendants' opening brief, the defendants respectfully request that the Court deny the plaintiffs' motion for summary judgment, grant the defendants' motion for summary judgment, and enter judgment in the defendants' favor with respect to both counts of the Amended Complaint.

    Respectfully submitted,

    DOUGLAS F. GANSLER
    Attorney General of Maryland

    DAN FRIEDMAN (Bar ID 24535)
    Assistant Attorney General
    Office of the Attorney General
    Legislative Services Building
    90 State Circle
    Annapolis, Maryland 21401
    Tel. 410-946-5600
    dfriedman@oag.state.md.us

      /s/
    MATTHEW J. FADER (Bar ID 29294)
    Assistant Attorney General
    STEPHEN M. RUCKMAN (Bar ID 28981)
    Attorney
    200 St. Paul Place, 20th Floor
    Baltimore, Maryland 21202
    Tel. 410-576-7906
    Fax. 410-576-6955
    mfader@oag.state.md.us
May 18, 2011    sruckman@oag.state.md.us

    Counsel for Defendants