IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, et al., | ) | Case No. 1:10-cv-02068-BEL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCUS BROWN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY TO DEFENDANTS' NOTICE OF NEWLY DECIDED AUTHORITY

Although the just-announced opinion in *Kachalsky* v. *Cacase*, 2011 U.S. Dist. LEXIS 99837 (S.D.N.Y. Sept. 2, 2011) concerns a similar case, that opinion has little persuasive value here. Much of *Kachalsky*'s reasoning conflicts with the Fourth Circuit's precedents in *United States* v. *Chester*, 628 F.3d 673 (4th Cir. 2011) and *United States* v. *Masciandaro*, 638 F.3d 458 (4th Cir 2011). Rather than refusing to decide whether the Second Amendment applies outside the home, an approach Defendants have urged here, and which *Masciandaro* endorsed for some cases, *Kachalsky* pointedly rejected *the Supreme Court's* definition of the term "bear arms" as used in the Second Amendment —an improper departure from controlling precedent which this Court should decline to follow. *Kachalsky* is otherwise unpersuasive, but its refusal to accept *the Supreme Court's* definition of a constitutional text, and apparent conflict between its approach and that of the Fourth Circuit, renders it of very limited value here.

1.      *The Right to Bear Arms.*

In *Kachalsky*, the Southern District of New York offered that the right to bear arms does not

extend beyond the home, and rejected the definition of "bear" as meaning to "carry." *Kachalsky*, 2011

U.S. Dist. LEXIS 99837 at *70-*71; *contra District of Columbia* v. *Heller*, 554 U.S. 570, 584

(2008) (" [t]o 'bear arms,' as used in the Second Amendment, is to 'wear, bear, or carry . . . upon the

person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or

defensive action in a case of conflict with another person.'") (citation omitted).

However, in *Chester*, consistent with the Supreme Court's references to the right to "keep and

carry" arms, *Heller*, 554 U.S. at 604, 626 & 627, the Fourth Circuit described the right in much the

same way. *See Chester*, 628 F.3d at 683 ("the right of a *law-abiding*, responsible citizen to possess

and carry a weapon for self-defense.")

*Kachalsky*'s justification for rejecting the Supreme Court's definition of "bear arms" is

unavailing. First, *Kachalsky* offered that the Supreme Court's definition of "bear arms" applied only in

the context of rebutting an argument that it refers to military duty. *Kachalsky*, 2011 U.S. Dist. LEXIS

99837 at *70-*71. Apparently, the term "bear arms" somehow loses this meaning if the question is not

whether the term means something else, but is instead more simply, what do these words mean? Under

*Kachalsky*'s logic, in the context of this case (or in *Kachalsky*), "bear arms" might as well have the

collectivist definition repudiated by *Heller*.

Respectfully, this is no way to interpret the Constitution, whose words do not change "their

normal and ordinary as distinguished from technical meaning," *Heller*, 554 U.S. at 576, depending on

the nature of the litigants' dispute. The Supreme Court has rejected the *Alice in Wonderland* approach

2

to statutory interpretation. *Tennessee Valley Auth.* v. *Hill*, 437 U.S. 153, 174 n.18 (1978) ("'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what *I* choose it to mean -- neither more nor less'") (quoting *Through the Looking Glass*, in The Complete Works of Lewis Carroll 196 (1939)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank* v. *Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted).

Of course, when the Supreme Court defines a constitutional term in order to resolve a case, that definition cannot be dicta. It is well established that

> When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound . . . the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law . . .

*Seminole Tribe of Fla.* v. *Florida*, 517 U.S. 44, 67 (1996) (citations and internal quotation marks omitted). Thus, a statement that "explains the court's rationale . . . is part of the holding." *United States* v. *Bloom*, 149 F.3d 649, 653 (7th Cir. 1998). In contrast,

> [a] dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.

*Sarnoff* v. *Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986).

Considering its need to address the District of Columbia's collectivist interpretation, the Court's conclusion that the right to "bear arms" is the right to "carry weapons in case of confrontation" was essential to its resolution of *Heller.* Accordingly, it is part of *Heller*'s holding. The numerous pages

3

describing how that right would be applied outside the home in different contexts only underscore the fact that the matter received the Court's exhaustive consideration, even if it was not literally memorialized in the awarded relief.

*Kachalsky* referenced "pervasive limiting language" in *Heller* allegedly restricting the right to the home, 2011 U.S. Dist. LEXIS 99837 at *71, but of course *Heller* contains no such language. Plaintiffs remain mystified as to how noting that the right is "most acute" in the home, *Heller*, 554 U.S. at 628, or admonishing that the right to arms is secured "most notably for self-defense within the home," *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3044 (2010), somehow means that the right applies "only" in the home. Nor is it clear how the Supreme Court's mere description of the laws struck down in *Heller*, "the District's ban on handgun possession in the home [and] its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense," *Heller*, 554 U.S. at 635, limit the right's application to only those circumstances.

The more faithful approach was followed by the Seventh Circuit, which explained that "the Second Amendment creates individual rights, *one of which* is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, *were left open*." *United States* v. *Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (emphasis added). The Seventh Circuit, of course, later affirmed the "right to train at a range," an activity that is plainly conducted outside the home which exists separate and apart from the basic right to keep a firearm. *See Ezell* v. *City of Chicago*, 2011 U.S. App. LEXIS 14108 at *67 (7th Cir. July 6, 2011). *Kachalsky* acknowledged *Ezell*'s holding, as well as the Supreme Court's observation that the Second Amendment secured a right to use firearms for hunting, at *75-*77, but dismissed these

observations because it believed "hunting does not involve handguns" and New York law allowed for

hunting. *Id.*[1] This is a non-sequitur. The Second Amendment's protection of hunting falsifies

*Kachalsky*'s declaration that the Amendment secures only the right to keep handguns at home,

regardless of whether handguns are used in hunting or whether hunting was the subject of the

*Kachalsky* litigation.

     In any event, *Kachalsky* fails, like Defendants failed here (or, for that matter, as did the

*Kachalsky* defendants), to offer *any* alternative definition for the term "bear arms" if the term does not

mean what the Supreme Court held it meant in *Heller*: Notably, the Fourth Circuit has emphasized that

"historical meaning enjoys a privileged interpretative role in the Second Amendment context."

*Masciandaro*, 638 F.3d at 470 (citations omitted). As the *Kachalsky* court would not follow the

Supreme Court's definition of "bear arms," it should have offered an alternative definition. *Kachalsky*

notably failed to address the Supreme Court's consideration of a Second Amendment question outside

the home, on the highways, in *United States* v. *Miller*, 307 U.S. 174 (1939) (applying Second

Amendment to interstate transportation of a short-barreled shotgun).

     *Kachalsky*'s rejection of the Supreme Court's definition of "bear arms," and its failure to

otherwise offer an alternative definition of this critical term according to the Second Amendment's

original public meaning, will be reviewed de novo by the Second Circuit. In the meantime, this Court is

bound by the Supreme Court's decision in *Heller* and by the Fourth Circuit's decisions in *Chester* and

---

[1] The Kachalsky court is simply wrong on this point. *See, e.g.* HANDGUN HUNTER MAGAZINE, available at www.handgunhunter.com (last visited Sept. 14, 2011); "Field & Stream Picks the 25 Best Handguns for Hunters," available at http://www.fieldandstream.com/photos/gallery/gear/hunting-gear/2010/06/25-best-handguns-hunting-ever-made (last visited Sept. 14, 2011).

*Masciandaro*. At a minimum, should this Court reject *Heller*'s definition of "bear arms," it should supply some alternative based on the Court's assessment of the text's original public meaning.

2. *Prior Restraint*

In only a footnote, *Kachalsky* declined to apply prior restraint principles to New York's discretionary licensing scheme. First, *Kachalsky* offered that while the First Amendment's "*analytical framework*" may be imported to the Second Amendment, "*substantive* First Amendment rules" should not be considered. *Kachalsky*, 2011 U.S. Dist. LEXIS 99837 at *87 n.32.

Respectfully, this is plain error. The prior restraint doctrine does *not* supply any "substantive First Amendment rules." It holds only that when rules are made, whatever they are, they must be objectively defined. The doctrine is the very model of an "analytical framework" in that it applies uniformly in a wide variety of different contexts. Prior restraint doctrine secures "the peaceful enjoyment of freedoms which the Constitution guarantees." *Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958). In the First Amendment context alone, it applies to regulations applicable to solicitation, *Staub*; public demonstrations, *Green* v. *City of Raleigh*, 523 F.3d 293, 306 (4th Cir. 2008); and the operation of bookstores, *Chesapeake B & M, Inc.* v. *Harford County*, 58 F.3d 1005, 1009 (4th Cir. 1995) (en banc), to name just a few. The "substantive" rules for regulating these activities are plainly different.

*Kachalsky*'s claim that "proper cause" is "constrained by . . . well-established judicial construction," *Kachalsky*, at *87, is merely that court's (erroneous) view of New York state courts' interpretation of that provision. In any event, a rule that allows authorities to license a constitutional right upon their assessment of "proper cause" for its exercise is the very definition of impermissible prior restraint. There is simply no getting around the fact that when someone enjoys a "right" to engage in an

activity, the activity is authorized by the Constitution, regardless of whether some official believes there

is "proper cause" to engage in the activity. Here, there is no question that Maryland law firmly leaves to

Defendants' discretion whether to issue a handgun carry license. If there is a right to carry handguns,

this restriction is a textbook prior restraint.

Dated: September 14, 2011                  Respectfully submitted,

Alan Gura                                  Cary J. Hansel
Gura & Possessky, PLLC                     Joseph, Greenwald & Laake
101 N. Columbus Street, Suite 405          6404 Ivy Lane, Suite 400
Alexandria, VA 22314                       Greenbelt, MD 20770
703.835.9085/Fax 703.997.7665             301.220.2200/Fax 301.220.1214

By: /s/ Alan Gura_____          By: /s/ Cary J. Hansel_____
    Alan Gura                                 Cary J. Hansel

                                           Attorneys for Plaintiffs