IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, et al., | ) | Case No. 1:10-cv-02068-BEL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCUS BROWN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

NOTICE OF NEWLY DECIDED AUTHORITY, AND REPLY TO
DEFENDANTS' CITATION OF SUPPLEMENTAL AUTHORITY

TO THE HONORABLE COURT AND ALL PARTIES, please take notice that on January 4, 2012, the Court of Appeals for the Fourth Circuit issued an opinion in *United States* v. *Chapman*, 2012 U.S. App. LEXIS 57 (4th Cir. Jan. 4, 2012); that on December 5, 2011, the Court of Appeals for the Fourth Circuit issued an opinion in *United States* v. *Staten*, 2011 U.S. App. LEXIS 24079 (4th Cir. Dec. 5, 2011); and that on January 13, 2012, the Court of Appeals for the First Circuit issued an opinion in *United States* v. *Rehlander*, 2012 U.S. App. LEXIS 766 (1st Cir. Jan. 13, 2012).

All three opinions are relevant to the issues before this Court.

1.   *Chapman* and *Staten*

In *Chapman*, the Fourth Circuit reiterated its positions that "the core right identified in *Heller* [is] the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense." *Chapman*, 2012 U.S. App. LEXIS 766 at *10. The Court applied intermediate, rather than strict scrutiny, to evaluate the constitutionality of 18 U.S.C. § 922(g)(8)(A)-(B) and (C)(ii), because the defendant was not a law-abiding, responsible person.

Likewise, in *Staten*, the Fourth Circuit applied intermediate scrutiny to uphold 18 U.S.C. § 922(g)(9), recounting that in *United States* v. *Chester*, 628 F.3d 673 (4th Cir. 2010),

> We held that strict scrutiny did not apply because Chester's criminal history as a domestic violence misdemeanant took him outside the core right of the Second Amendment identified in *Heller*, which is the right of a law-abiding responsible citizen to possess and carry a weapon for self-defense.

*Staten*, 2011 U.S. App. LEXIS 24079 at *10 n.3.

Plaintiff Woollard, and SAF's members, are "law-abiding, responsible citizen[s]" who wish to "carry a weapon for self-defense." Plaintiffs maintain that the prior restraint doctrine applies primarily, but to the extent that a level of scrutiny would be utilized because the challenged provision classifies them with respect to the exercise of a fundamental right, *Chapman* and *Staten* are but the latest Fourth Circuit precedents mandating the use of strict scrutiny here.

*Staten* and *Chapman* are also notable for their handling of social science data submitted by the government. The data was used to evaluate, under intermediate scrutiny, the reasonableness of the fit between the government's public safety interest and the relevant restriction. It was *not* utilized to define the content of the Second Amendment right against which the restrictions were weighed, as the defendants were understood to have a right to keep and carry arms for self-defense at least in the absence of their criminal misconduct. The cases do not support the idea that whether Woollard has a Second Amendment interest in carrying a handgun for self-defense, and thus, does not need to prove his entitlement to the right, is to be measured in the first instance by the use of social science data.

2. *Rehlander*

In *Rehlander*, the First Circuit narrowed its interpretation of the federal prohibition on the possession of firearms by individuals who have been "committed to a mental institution." 18 U.S.C. § 922(g)(4). To avoid a constitutional defect in the law, the Court held Section 922(g)(4) reaches only adversarial commitments where the patient has been afforded due process, and not emergency hospitalizations unaccompanied by any adjudicative process. "Although the right established in Heller is a qualified right, the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process." *Rehlander*, 2012 U.S. App. LEXIS 766 at *6 (citation omitted). Plainly, a scheme whereby one's handgun carry license is subject to the whims of a licensing official does not comport with due process.

3. Defendants' Citations

Defendants have taken issue with Plaintiffs' responses to their persistent citation of supplemental authority. Plaintiffs agree there is no need for further briefing. However, it is accepted practice in many courts to offer some minimal explanation of supplemental authority so that the court is not left guessing as to the authority's relevance, or lack thereof. The practice is confirmed by rule in the appellate courts. Fed. R. App. Proc. 28(j) (allowing 350-word letters describing and responding to supplemental authority). Plaintiffs would not object to any brief response to their citation of *Chapman* and *Rehlander*.

Defendants' citation to *Kuck* v. *Danaher*, 2011 U.S. Dist. LEXIS 111793 (D. Conn. Sep. 29, 2011), is misplaced. *Kuck* upheld the constitutionality of Connecticut's handgun licensing process, because as that court found, Connecticut's licensing system does not provide for

3

unbridled discretion. While licenses are only issued to "suitable" people, that term's construction is limited by ten enumerated aspects of suitability, *id.* at *35-*36, and "denial or revocation decisions are subject to de novo review" to assess whether "there was 'just and proper cause' for the denial or revocation." *Id.* at *36 (quoting Conn. Gen. Stat. § 29-32b(b)). Connecticut courts determine unsuitability by reference to an applicant's demonstrated conduct. *Id.* at *33-*35 (citing cases).

This differs starkly from Maryland's demand of a "good and substantial reason," which places the burden on the applicant to prove entitlement to the license, and does not require the authorities to point to any specific act of the applicant that demonstrates reason to withhold the license.

The other two cases cited by Defendants, *Hightower* v. *City of Boston*, 2011 U.S. Dist. LEXIS 111327 (D. Mass. Sept. 29, 2011), and *Piszczatoski* v. *Filko*, 2012 U.S. Dist. LEXIS 4293 (D.N.J. Jan. 12, 2012), are unpersuasive. *Hightower*'s (erroneous) discussion of the Second Amendment is dicta, as that court found that the claim was unripe. The finding is odd: Hightower received a letter from the defendant Police Commissioner revoking her handgun permit and directing her to surrender her firearm and ammunition to the police, which she did. The court reasoned that Hightower had not yet re-applied for a license, but it seems plain enough that the police had already exercised their discretion to revoke the license and seize Hightower's property, which would manifestly provide a ripe controversy.

*Piszczatoski* is at odds with Supreme Court and Fourth Circuit precedent in various respects. For example, the New Jersey court rejected the availability of facial challenges under the Second Amendment, contradicting a point endorsed not only by the Seventh Circuit in *Ezell*

4

v. *City of Chicago*, 651 F.3d 589 (7th Cir. 2011), but also by the Fourth Circuit's opinion in *United States* v. *Chester*, 628 F.3d 673 (4th Cir. 2010) over the dissent of Judge Davis on this very point. *Piszczatoski*'s statements that overbreadth applies exclusively in First Amendment cases is incorrect. *See* Pl. Br., 4/25/11, at 29-30. Indeed, *Heller* and *McDonald* inherently confirmed the availability of overbreadth in Second Amendment cases, as each case struck down broad municipal handgun bans that could be validly applied to criminals or irresponsible people.[1]

*Piszczatoski* singled out the Second Amendment for greater skepticism, holding it "is unique among all other constitutional rights," because the judge in that case believed the right is generally more dangerous. 2012 U.S. Dist. LEXIS 4293 at *3; *contra McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3045 (2010). This impermissible bias permeates the entire discussion in *Piszczatoski*, which even goes so far as to compare the carrying of guns to obscenity, *Piszczatoski*, at *43, and concludes with approval of

> "[T]he overriding philosophy of [the New Jersey] legislature . . . to limit the use of guns as much as possible." . . . it is within the discretion of the legislature to make the reasonable determination that limiting the use of guns leads to fewer incidents of gun-related injury and death.

*Piszczatoski*, at *65 (quoting *State v. Valentine*, 307 A.2d 617, 619 (N.J. Super. Ct. App. Div. 1973)).

If *Heller* confirms nothing else, it is that legislatures *do not* enjoy a general interest to limit the public's use of guns. The use of guns is confirmed by the Second Amendment as a

---

[1] *Piszczatoski* may have also overstated Third Circuit precedent on this point. The Third Circuit had only rejected application of the "no set of circumstances" test, *United States* v. *Barton*, 633 F.3d 168, 172 n.3 (3d Cir. 2011), but it did not apparently consider the "plainly legitimate sweep" test. *United States* v. *Stevens*, 130 S. Ct. 1577, 1587 (2010); *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 895 (1992).

fundamental right, meaning that it is, as a matter of constitutional law, a public good. Of course that is a controversial position, but the New Jersey legislature—and the federal courts—are duty bound to enforce *the people's* considered judgment as to what shall be protected by the Constitution, not their own. The *Valentine* court, and the 1973 legislature whose interest is described, were writing in a pre-*Heller*, pre-*McDonald*, Second Amendment-free environment. The *Piszczatoski* court should have recognized that the landscape has changed.

It is unnecessary to address each of the many errors in the decision, but Plaintiffs note that *Piszczatoski* declined to offer any historical analysis of the right to bear arms. Supplementing its rejection of the Supreme Court's definition of "bear arms," the court merely opined

> that the historical sources cited by *Heller* do not establish that the individual right necessarily extended to a broad general right to carry for self-defense. At most, they suggest that there may be a limited right to carry a handgun outside the home for certain purposes in certain situations that should be explored and determined on a case-by-case basis.

*Id.*, at *36.

This is demonstrably false. The cases discussed by *Heller* with respect to the bearing of arms are quite explicit in acknowledging and securing a right to carry guns in public for self-defense. *See* Pl. Br., 2/18/11, at 10-11.

The other historical sources cited by *Heller* are also quite explicit. For example, *Heller* cites with approval Charles Humphreys, A COMPENDIUM OF THE COMMON LAW IN FORCE IN KENTUCKY 482 (1822); *see Heller*, 554 U.S. at 588 n.10, and at 627. Here is what that source says of the right to carry arms in public:

> Riding or going armed with dangerous or unusual weapons, is a crime against the public peace, by terrifying the people of the land . . . . But here it should be remembered, that in this country the constitution guarranties [sic] to all persons the right to bear arms; then it

>can only be a crime to exercise this right in such a manner, as to terrify the people unnecessarily.

This is but one source cited by Heller for the "dangerous and unusual weapons" doctrine, which reflected the common law crime of affray. Practically all these sources related the distinction between the peaceable carrying of arms, which was protected, and the irresponsible, threatening carrying of arms, which was not. Another example cited by *Heller*, 554 U.S. at 627, was 1 William Oldnall Russell, A TREATISE ON CRIMES AND INDICTABLE MISDEMEANORS 271-72 (1831). Plaintiffs have located the 1826 edition, which provides, at page 272:

>it has been holden, that no wearing of arms is within [the Statute of Northampton] unless it be accompanied with such circumstances as are apt to terrify the people; from whence it seems clearly to follow, that persons of quality are in no danger of offending against the statute by wearing common weapons . . . in such places, and upon such occasions, in which it is the common fashion to make use of them, without causing the least suspicion of an intention to commit any act of violence, or disturbance of the peace.

Plaintiffs have already made this point with respect to the historical understanding of the right to bear arms in public. *See* Pl. Br., 4/25/2011, at 17.

It is manifestly clear that, regrettably, many courts simply refuse to follow *Heller* and *McDonald*. They read ambiguity into *Heller*'s clear sources, decline to apply *Heller*'s constitutional definitions, declare for no logical reason that the case was limited to its facts, or outright refuse to develop the law of the Second Amendment as though the Supreme Court were, for this one Constitutional provision, the court of first resort.

In the face of this resistance, Plaintiffs are not asking for very much. Only a recognition that law abiding, responsible people have a right to bear arms, meaning that however else it might be regulated, and accepting fully that it can be licensed and limited in specific circumstances, this is no longer something to which they must prove their entitlement.

Dated: January 23, 2012                                     Respectfully submitted,

Alan Gura                                                   Cary J. Hansel
Gura & Possessky, PLLC                                      Joseph, Greenwald & Laake
101 N. Columbus Street, Suite 405                           6404 Ivy Lane, Suite 400
Alexandria, VA 22314                                        Greenbelt, MD 20770
703.835.9085/Fax 703.997.7665                               301.220.2200/Fax 301.220.1214

By: /s/ Alan Gura                                           By: /s/ Cary J. Hansel
    Alan Gura                                                   Cary J. Hansel

                                                            Attorneys for Plaintiffs