IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 1:10-cv-2068-BEL |
| MARCUS BROWN, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MOTION FOR CLARIFICATION OR AMENDMENT OF
ORDER AND FOR IMMEDIATE STAY PENDING APPEAL**

DOUGLAS F. GANSLER
Attorney General of Maryland

DAN FRIEDMAN (Fed. Bar # 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle, Room 104
Annapolis, Maryland 21401
Tel. 410-946-5600
dfriedman@oag.state.md.us

MATTHEW J. FADER (Fed. Bar # 29294)
STEPHEN M. RUCKMAN (Fed. Bar # 28981)
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Tel. 410-576-7906
Fax. 410-576-6955
mfader@oag.state.md.us
sruckman@oag.state.md.us

March 7, 2012                    Attorneys for Defendants

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

I. The Court Should Clarify or Amend Its Order to Identify the Extent, if Any, to Which the Court Intended to Grant the Plaintiffs' Request for Injunctive Relief ..................................................................................................... 3

II. The Court Should Enter a Stay Pending Appeal ...................................................... 7

    A. The Public Interests in Protecting Public Safety and Preventing Crime Favor Issuance of a Stay.................................................................. 11

    B. The State's Likelihood of Success on Appeal Supports a Stay ................. 13

    C. The Factors of Irreparable Harm to the Defendants and the Balance of Equities Favor Issuance of a Stay Pending Appeal ................................ 17

CONCLUSION .......................................................................................................... 19

## INTRODUCTION

The defendants, through counsel, move: (1) under Rule 59(e), for an order clarifying or amending its March 2, 2012 order (ECF No. 53) (the "Order")[1] granting the plaintiffs' motion for summary judgment (ECF No. 21) and denying the defendants' cross-motion for summary judgment (ECF No. 25); and (2) under the Court's inherent power and Rule 62(c), for an order granting an immediate stay of the Order, as well as any subsequent, related order, pending appeal.[2]

First, under Rule 59(e), the defendants seek clarification or amendment of the Order to identify the extent, if any, to which the Court intended to grant the plaintiffs' request for injunctive relief. The plaintiffs' amended complaint (ECF No. 19) requests several forms of injunctive relief. Although the plaintiffs' memorandum in support of their motion for summary judgment (ECF No. 22) does not discuss their request for injunctive relief other than to request that the defendants "be enjoined" from violating the plaintiffs' constitutional rights, the proposed order accompanying the plaintiffs' motion

---

[1] Although dated March 2, 2012, the order was not entered into ECF, or known to the defendants, until March 5, 2012.

[2] In the late morning of March 7, 2012, counsel for the defendants conferred with counsel for the plaintiffs with respect to the relief sought in this motion, as well as with respect to the relief requested in the accompanying consent motion for an expedited briefing schedule. Counsel for the plaintiffs represented in a subsequent voicemail that: (1) the plaintiffs consent to the deadline for their response to this motion being Friday, March 16, 2012, but only if this motion were filed today, March 7, 2012; (2) the plaintiffs do not consent to the defendants' request for a stay; and (3) the plaintiffs could not consent to a request for clarification at this time, but were open to further discussion. The defendants intend to pursue that additional discussion, but did not believe it feasible to do so before filing this motion in light of the time-sensitive nature of the issues raised, as well as the plaintiffs' condition that the motion be filed today for purposes of their agreement to the expedited briefing schedule.

for summary judgment (ECF No. 21-1) contains the same injunctive relief provisions requested in the amended complaint.  However, neither the Order (ECF No. 53) nor the accompanying memorandum opinion (ECF No. 52) discuss the plaintiffs' request for injunctive relief.  Instead, the Order grants the plaintiffs' motion for summary judgment, and denies that of the defendants, without specifying the relief awarded.  As a result, the defendants seek clarification regarding the extent, if any, to which the Court intended to grant the plaintiffs' request for an injunction.

Second, whether or not the Court intended to award injunctive relief, the defendants request an immediate stay of the Order—including any subsequent clarification or amendment thereof—pending appeal to the United States Court of Appeals for the Fourth Circuit.  A stay pending appeal would permit the Fourth Circuit to resolve the issues presented in this case, which are issues of first impression in this judicial circuit, before enforcing the extraordinary step of invalidating a portion of a long-standing statute and requiring the issuance by the Maryland State Police of permits to wear and carry handguns in public under circumstances that the Maryland General Assembly has determined will imperil public safety.  The seriousness of the dispute over the admittedly difficult legal questions presented by this litigation is demonstrated by the fact that the only other courts to have ruled on constitutional challenges to similar handgun permit statutes have ruled in favor of the defendants' position.  Because this case presents a new issue of constitutional law, in a largely "unmapped" legal context, (ECF No. 52, at 9), clarification from the appellate courts would be prudent in light of the potentially significant adverse consequences for public safety if a stay is not entered.  As

the Fourth Circuit has previously recognized, the issues at stake in this type of litigation are "serious business," with significant potential consequences for public safety, and courts should be careful to make certain they have interpreted the Second Amendment correctly before rejecting laws designed to protect the public against gun violence:  "We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights."  *United States v. Masciandaro*, 638 F.3d. 458, 475 (4th Cir. 2011).

A stay would also permit the Maryland General Assembly to consider whether to enact legislation in response to this Court's decision that might address, in whole or in part, the grounds on which this Court has held the law unconstitutional while providing more protection for public safety than would a wholesale abandonment of the "good and substantial reason" requirement for permits to wear and carry handguns.

## I.   The Court Should Clarify or Amend Its Order to Identify the Extent, if Any, to Which the Court Intended to Grant the Plaintiffs' Request for Injunctive Relief.

The defendants seek clarification or amendment of the Order to identify the extent, if any, to which the Court intended to grant the plaintiffs' request for injunctive relief. Rule 59(e) permits the filing of a "motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment."  A court may amend a judgment in three circumstances:  "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *See Brown v. Hovatter*, 525 F. Supp. 2d 754, 757 (D. Md.

2007) (quoting *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F. 3d 396, 403 (4th Cir. 1998)). In addition to this power of amendment, a district court may "clarify a previous judgment under the auspice of Rule 59(e) without necessarily amending it, so long as it is filed within" the time provided by the rule. *Brown*, 525 F. Supp. 2d at 757.

In their amended complaint, the plaintiffs challenge the constitutionality of § 5-306(a)(ii) of the Public Safety Article of the Maryland Code. That provision conditions issuance of a handgun wear and carry permit on a determination that the applicant "has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger." Md. Code Ann., Pub. Safety ("PS") § 5-306(a)(ii). The plaintiffs' prayer for relief requests the following:

> 1. An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Maryland Public Safety Code § 5-306(a)(5)(ii);

> 2. An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from denying a permit to carry firearms on grounds that the applicant does not face a level of danger higher than that which an average person would reasonably expect to encounter.

> 3. An order commanding Defendants to renew Plaintiff Woollard's permit to carry a handgun;

> 4. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

> 5. Declaratory relief consistent with the injunction; and

> 6. Any other further relief as the Court deems just and appropriate.

Amended Complaint (ECF No. 19) at 7-8.

With respect to the declaratory relief requested in paragraph 5, the Memorandum Opinion holds that PS § 5-306(a)(ii) is unconstitutional.  (ECF No. 52, at 20.)

Neither the Court's opinion (ECF No. 52) nor its Order (ECF No. 53) expressly addresses the plaintiffs' requests for injunctive relief.  Neither document uses the terms "enjoin" or "injunction," nor does the Order satisfy the requirements of Rule 65(d), which requires that every order granting an injunction be "specific in terms" and "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."  Fed. R. Civ. P. 65(d).  That requirement is "'designed to prevent precisely the sort of confusion'" that can arise from an unclear order.  *Gunn v. Univ. Comm. to End the War in Vietnam*, 399 U.S. 383, 389 (1970) (quoting *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74 (1967)).  Given the "extraordinary" nature of an injunctive order, "'Congress . . . require[d] that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.'"  *Gunn*, 399 U.S. at 389 (quoting *Int'l Longshoremen's Ass'n*, 389 U.S. at 76). The Supreme Court has observed that this requirement is "absolutely vital" in cases concerning the validity of "a law duly enacted by a sovereign State." *Gunn*, 399 U.S. at 389.

The Order does not specifically state whether the Court intended to grant or deny some or all of the plaintiffs' requested injunctive relief or, if the Court intended to grant

that relief, on what terms.  There are important reasons why the Court may have decided to enter only a declaratory judgment and deny one or more of the plaintiffs' requests for injunctive relief.  The plaintiffs' summary judgment briefs fail to discuss, much less demonstrate that the plaintiffs meet, the criteria necessary to obtain injunctive relief.  That is significant because "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008).  As a result, beyond prevailing on the merits, the plaintiffs were required to demonstrate that they met all of the criteria required for issuance of an injunction, including demonstrating irreparable injury, inadequacy of legal remedies, that an equitable remedy is warranted in light of balance of hardships, and that the public interest would not be disserved by an injunction.  *See, e.g., eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  The plaintiffs did not do so.

Moreover, the only one of the plaintiffs' three requests for injunctive relief that accords with this Court's opinion is the first request, which would enjoin enforcement of PS § 5-306(a)(ii), the provision the Court has held unconstitutional.  The second requested injunction appears to be an attempt to restate the first request, but in language that is less precise, more subject to ambiguity, and therefore less appropriate for an injunction.  And the third requested injunction seeks an order requiring the defendants to "renew" a permit that expired in 2009 without any review to determine whether Mr. Woollard continues to meet the other requirements for a handgun wear and carry permit, requirements that this Court did not find to be unconstitutional.  In *Heller*, by contrast, the Supreme Court required the District of Columbia to grant Mr. Heller a permit to have

a gun in his home only if he was "not disqualified from the exercise of Second Amendment rights," presumably after undergoing a regular application process. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

To clarify the specific relief the Court intended to award, as well as to facilitate appellate review, the defendants request that the Court clarify or amend the Order.  To the extent the Court intended to deny the plaintiffs' requests for injunctive relief, the defendants request that the Court clarify the Order by so stating.  If the Court intended to grant injunctive relief, the defendants request that the Court amend the Order to meet the requirements of Rule 65(d).  As discussed below, the defendants also request that any form of relief ordered by the Court, whether declaratory or injunctive, be stayed pending appeal.

## II.    The Court Should Enter a Stay Pending Appeal.

PS § 5-306(a)(ii) was enacted as part of a comprehensive effort by the State legislature to deter crime and protect citizens from handgun violence, violence which tragically results in hundreds of shooting deaths and hundreds more shooting injuries every year in Maryland.  Given, as this Court found, the State's unquestioned compelling interest in promoting public safety and preventing crime, and given the increased public safety risks that may result from an inability to enforce PS § 5-306(a)(ii), a stay allowing continued operation of the statute pending appeal of the Order represents a sensible exercise of judicial discretion.

As the Fourth Circuit recently observed in a firearm regulation case: "This is serious business.  We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights."  *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011).  The danger of firearm violence, as the Fourth Circuit recognized, may "rise exponentially" from an expansion of the right to bear arms "from the home to the public square."  *Id.* at 476.   Thus, courts must take great care in their adjudication of that right to balance the effort to define its proper contours against the State's need to maintain adequate protections against violence from its misuse.  *See Piszczatoski v. Filko*, 2012 U.S. Dist. LEXIS 4293, No. 10-cv-06110 (WHW) *3 (D.N.J. Jan. 12, 2012) (courts should be "careful—most careful—to ascertain the reach of the Second Amendment right" because that right, unlike any other constitutional right, "permits the user of a firearm to cause serious personal injury—including the ultimate injury, death—to other individuals, rightly or wrongly").  In the present case, a stay preserving the long-standing status quo would be the appropriate means of ensuring that sufficient attention is paid to both the serious constitutional issues and the compelling public interests at stake.

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending . . . the court may suspend, modify, restore, or grant an injunction on terms . . . that secure the opposing party's rights."  The purpose of this rule is to enable the Court to maintain the status quo pending final resolution of the case when the case presents "an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained."  *Goldstein v. Miller*, 488 F. Supp. 156, 172-73 (D. Md.

1980) (quoting *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843-45 (D.C. Cir. 1977)); *see Smith v. Old Angus, Inc.*, 1973 U.S. Dist. LEXIS 15221, at *4-*5 (D. Md. 1973) ("[T]he purpose of Rule 62(c) is to preserve the status quo where, in its sound discretion, the Court deems the circumstances so justify.") (citing 7 Moore, Federal Practice, § 62.05, at 62-19 (2d ed. 1972)).

Rule 62(c) applies, by its terms, "[w]hile an appeal is pending."  In this case, the defendants have not yet filed a notice of appeal only because they do not want to hinder the Court's ability to address the defendant's request under Rule 59(e) to clarify or amend the Order.  The defendants do not believe this precludes entry of a stay because the Court inherently has the power to stay or delay the effect of its Order at any point before the filing of a notice of appeal.  *See, e.g.*, *Shinholt v. Angle*, 90 F.2d 297, 298 (5th Cir. 1937) (noting "inherent power" of courts in equity to preserve the status quo pending an appeal from an order disallowing injunctive relief); *Paramount Plastering, Inc. v. Local No. 2 of the Operative Plasterers & Cement Masons Int'l Ass'n*, 195 F. Supp. 287, 298 (C.D. Cal. 1961) (exercising "inherent power" to stay execution and enforcement of judgment until the judgment "shall have become final" in light of the "novelty of the problem" and harm to the defendants).  Rule 62(c)'s grant of power during the pendency of an appeal does not limit the Court's inherent power to suspend, modify, restore or grant an order prior to a party noting an appeal.

Moreover, even if the Court intended only to enter a declaratory judgment in this case, a stay pending appeal is appropriate.  *See Florida v. United States Dep't of Health & Hum. Servs.*, 780 F. Supp. 2d 1307, 1320 (N.D. Fla. 2011) (granting motion to clarify

and stay declaratory judgment that ruled a statute unconstitutional without specifying any injunctive relief).  Although the issuance of a declaratory judgment in the absence of an injunction does not legally compel the State to act in compliance with the judgment while the judgment is being appealed, *see Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963) ("the Government has been free to continue to apply [a] statute" following entry of a declaratory judgment declaring the statute unconstitutional); *accord, e.g.*, *Werner v. Hickey*, 920 F. Supp. 1257, 1259 (M.D. Fla. 1996) ("[A]bsent an injunctive sanction, a district court's declaration that a statute is unconstitutional does not bar the government's application of the statute pending appeal."), the State, as a matter of policy, generally seeks to comply with the terms of a declaratory judgment even while the judgment is being appealed.  As a result, a declaratory judgment that is not stayed pending appeal can have the same practical effect as an injunction, and can be stayed on the same basis.

The specific factors governing a request for a stay pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).  Each of these factors is discussed below.

A.      **The Public Interests in Protecting Public Safety and Preventing Crime Favor Issuance of a Stay.**

As this Court recognized, the public interests in protecting public safety and preventing crime are "substantial, indeed compelling, government interests." (ECF No. 52, at 18.) The Supreme Court has held that "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *United States v. Salerno*, 481 U.S. 739, 748-50 (1987); *see also Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted." (citations and quotation marks omitted)); *Monroe v. City of Charlottesville*, 579 F.3d 380, 390 (4th Cir. 2009).

It was to advance these critical public interests, particularly as they pertain to handgun violence, that the Maryland legislature enacted the Permit Statute. Although this Court has concluded that PS § 5-603(a)(ii) is overly broad in its attempt to protect public safety (ECF No. 52, at 18), it is undisputed that the Maryland General Assembly enacted the Permit Statute to respond to devastating handgun violence that was tearing through Maryland communities. *See* Defendants' Memorandum in Support of Cross-Motion for Summary Judgment (ECF No. 26) ("Defendants' MSJ Memo."), at 13-14. The legislature made sure to include specific legislative findings about the public interest in handgun regulation in the text of the statute itself; one of these findings states: "additional regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of the public." Md. Code Ann., Crim. Law § 4-202(5).

11

Again, although the Court concluded that PS § 5-603(a)(ii) is "insufficiently tailored to the State's interest in public safety and crime prevention" (ECF No. 52, at 23), the Court expressly acknowledged both the compelling nature of that governmental interest, *id.* at 18, as well as the "unquestionable threat to public safety" posed by scenarios the defendants identified as ones § 5-603(a)(ii) serves to mitigate, *id.* at 19.  In this rapidly-evolving area of the law, and especially in light of the acknowledged lack of guidance provided by the Supreme Court in interpreting and applying its recently-announced understanding of the Second Amendment, the Fourth Circuit has strongly cautioned against court action that might adversely affect public safety without first ensuring that the court's interpretation of the scope of the Second Amendment right is not "miscalculated."   *Masciandaro*, 638 F.3d at 475.   This Court's invalidation of § 5-603(a)(ii) clearly falls within the category of laws covered by the Fourth Circuit's cautionary warning.

In addition to providing the opportunity for the appellate courts to address issues of first impression in this judicial circuit before implementing an order that could adversely affect public safety, a stay pending appeal could also permit the Maryland General Assembly to consider and, should it choose to do so, to enact changes to existing law designed to address public safety concerns in a manner that is consistent with this Court's holding.  For example, the Court expressly declined to address whether a "good and substantial reason" requirement could be applied only to concealed carry of a handgun, *id.* at 20-21; the plaintiffs have expressly conceded that a complete ban on concealed carry of a handgun would be constitutional, *see* Plaintiffs' Memorandum of

Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (ECF No. 34) at 14-15; and the Supreme Court has recognized the permissibility of bans on the concealed carry of handguns, *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897) ("the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed arms"); *see also Heller*, 554 U.S. at 626 (recognizing that courts have historically permitted bans on the concealed carry of handguns).   Entering a stay pending appeal might provide the General Assembly the opportunity to consider enacting a statute addressing this issue without creating a void in the statutory scheme that affects both open and concealed carry of handguns, thus partially alleviating the circumscription of "the scope of popular governance" against which the Fourth Circuit has cautioned.  *Masciandaro*, 638 F.3d at 475; *see also Texaco, Inc. v. Hughes*, 572 F. Supp. 1, 9 (D. Md. 1982) (when ruling on the application of an injunction, finding that the "public interest in enforcing statutes passed by [the state] legislature must be taken into account").

### B.       The State's Likelihood of Success on Appeal Supports a Stay.

The "likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal."  *Miller*, 488 F. Supp. at 172.  Nor does the trial court need to determine "that ultimate success by the movant is a mathematical probability."  *Id.* (quoting *Washington Metropolitan Area Transit Comm'n*, 559 F.2d at 843-45).  Given the stage of litigation, it would be "illogical" to condition availability of

a stay on a court concluding that its original decision was incorrect. *Miller*, 488 F. Supp. at 173 (quoting *Evans v. Buchanan*, 435 F. Supp. 832, 843-44 (D. Del. 1977)). Rather, this Court need only weigh the likelihood of success in a case presenting "an admittedly difficult legal question" against the other factors (the public interest and the balance of equities) and make a holistic determination as to whether a stay is appropriate. *Miller*, 499 F. Supp. at 172-73.

This case undoubtedly involves a difficult legal question, namely the nature and extent of Second Amendment rights outside the home and the interaction of any such rights with governmental interests in public safety. As this Court acknowledged, answering this question involves navigating a relatively "unmapped" area of the law. (ECF No. 52, at 9.) Other courts to have faced the question have remarked that it brings courts into a "new frontier" of Second Amendment jurisprudence, *Piszczatoski*, 2012 U.S. Dist. LEXIS 4293, at *12, one that is fraught with "uncertainty," *id.*, in part because of "a lack of a clear directive from the Supreme Court," *Kachalsky v. Cacace*, 2011 U.S. Dist. LEXIS 99837, No. 10-CV-5413 (CS), at *64 (S.D.N.Y. Sept. 2, 2011).

Against this background, it is significant that every court to have addressed the constitutionality of similar handgun wear and carry permit statutes before this one has upheld the constitutionality of the statutes. That, at a minimum, raises a substantial prospect of success for the defendants on the merits on appeal. In a case addressing a permit statute that is one of the most similar to Maryland's, the United States District Court for the Southern District of New York upheld the constitutionality of New York's requirement that a permit applicant demonstrate that "proper cause exists for the

14

issuance" of the permit. *See Kachalsky*, 2011 U.S. Dist. LEXIS 99837, at *2. After first undertaking a detailed analysis of the Second Amendment right in the wake of *Heller* and *McDonald*, the court found that it was not at all clear that the Second Amendment would even apply to New York's permit statute. *See id.* at *56-*82. The district court went on to hold that, even if the New York statute implicated the Second Amendment, the statute would survive intermediate scrutiny because the statute's restriction—which has been interpreted similarly to Maryland's "good and substantial reason" requirement—was substantially related to New York's compelling interest in protecting public safety. *See id.* at *99 (observing that New York's "proper cause" requirement was not an outright ban, but a requirement that individuals demonstrate an "actual and articulable" need for self-defense).

Similarly, in *Piszczatoski*, the district court rejected a constitutional challenge to a provision of New Jersey law that requires a handgun wear and carry permit applicant to demonstrate a "justifiable need to carry a handgun" to a reviewing police officer and a Superior Court judge. 2012 U.S. Dist. LEXIS 4293, at *2. In rejecting this challenge, the court found that "[t]he Second Amendment does not protect an absolute right to carry a handgun for self-defense outside the home," *id.* at *15, and ruled that the provision at issue is the sort of "longstanding" licensing provision that the Supreme Court found to be presumptively lawful in *Heller*, *id.* at *44. The court further ruled that the "justifiable need" requirement did not unconstitutionally burden a Second Amendment right "because this requirement is sufficiently tailored to address an important state interest." *Id.* at *49.

15

Other courts have recently rejected constitutional challenges to other permit statutes based on similar analyses.  For example, in *Kuck v. Danaher*, 2011 U.S. Dist. LEXIS 111793 (D. Conn. Sept. 29, 2011), the district court upheld a provision of Connecticut law requiring a handgun wear and carry permit applicant to demonstrate to a reviewing authority that he intends to use the handgun for a lawful purpose and that he is a "suitable person" to receive such a permit, without defining the term "suitable."  *Id.* at *7.  The district court declined to recognize a right to bear arms that extends outside the home, *id.* at *23, and found the provision to be constitutional as an exercise of the state's "strong and compelling interest in ensuring that firearm permits are not issued to those lacking the essential character or temperament necessary to be entrusted with a weapon," *id.* at *30 (citation and quotations marks omitted); *see also id.* at *36 ("[T]he Court holds that the statute at issue is substantially related to Connecticut's compelling interest in protecting the public from persons who could potentially pose a dangerous [sic] if entrusted with a firearm.").

Similarly, in *Hightower v. City of Boston*, the district court rejected a constitutional challenge to a provision of Massachusetts law that requires a firearm wear and carry permit applicant to demonstrate to a licensing authority that he is "a suitable person to be issued such license."  2011 U.S. Dist. LEXIS 111327, No. 08-cv-11955 (DJC), at *7 (D. Mass. Sept. 29, 2011).   In addition to finding the challenge not to be ripe, *id.* at *43, the court also declined to recognize a right to bear arms that extends beyond the home, *id.* at *62, and ruled that the City of Boston "has a legitimate interest in protecting public safety, especially in light of the prevalence of gun violence in

16

Massachusetts and especially in Boston," which is furthered by a regulation that "require[es] local licensing authorities . . . to determine whether an individual applicant appears unsuitable based on the content of her application materials, subject to judicial review." *Id.* at *68.

In contrast to this uniform line of decisions from sister jurisdictions, no court before this one has held a similar permit regime to be unconstitutional. As a result, these decisions, in addition to those discussed in the defendants' summary judgment briefs (ECF No. 26, at 22-42), satisfy the standard for demonstrating a "strong likelihood of success on the merits" in the context of a petition for a stay pending appeal. *See Miller*, 488 F. Supp. 172-73; *cf. United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 273 (E.D. Va. 1995) ("[T]he court must determine whether there is a strong likelihood that the issues presented on appeal could be rationally resolved in favor of the party seeking the stay.").

### C. The Factors of Irreparable Harm to the Defendants and the Balance of Equities Favor Issuance of a Stay Pending Appeal.

Absent a stay, the defendants will be irreparably injured in multiple ways. First and foremost, as described above, their ability to protect public safety will be curtailed. This is not merely a formalistic injury; the State believes that the inability to enforce an important component of the handgun permit regulations will expose citizens to an increased risk of handgun violence, a risk that can be addressed in the near term only by a stay.

Second, the absence of a stay will produce both significant, immediate administrative burdens and the possibility of widespread confusion depending on the ultimate resolution in the Fourth Circuit. The current process for reviewing applications for handgun wear and carry permit applications has been developed over the 40 years that the "good and substantial reason" requirement has been part of Maryland law. Even more significant than the administrative burden of revising the process and re-training staff is the significant confusion that would likely accompany the need to rescind permits granted during the pendency of the appeal to the Fourth Circuit if PS § 5-603(a)(ii) is ultimately upheld.

In contrast to the potential implications for public safety and the other harms to the defendants, the plaintiffs would continue during the pendency of the appeal to enjoy the core Second Amendment rights that this Court correctly noted are not implicated by PS § 5-603(a)(ii). (ECF No. 52, at 22.) Moreover, although this Court has now, for the first time, identified a non-core Second Amendment right extending beyond the home,[3] its decision on that point is contrary to the conclusions of the majority of courts to have addressed the issue even since the Supreme Court's decision in *Heller.  See, e.g.*, Defendants' MSJ Memo. (ECF No. 26), at 24-27. It would, therefore, be prudent, and would impose only a relatively slight burden on the plaintiffs in contrast with the greater

---

[3] Importantly, under Maryland law, no permit is required to wear and carry a handgun in numerous locations outside of one's home, including on any real estate owned by that person, on the premises of their business, on the premises of a business in which they are a supervisory employee, in a repair shop, on the site of an organized military activity, at the location of a target shoot or target practice, at a sport shooting event, hunt, or trap, or at a gun collector's exhibition; and an unloaded handgun can legally be transported between any of these locations. *See* Md. Code Ann., Crim. Law § 4-203(b).

burden on the defendants, to preserve the status quo while awaiting the views of the Fourth Circuit.

## CONCLUSION

The defendants request that the Court enter an order clarifying or amending its March 5, 2012 order with respect to the plaintiffs' request for injunctive relief, and enter a separate order staying the effect of the Court's March 2, 2012 Order, along with any amendment, pending appeal to the United States Court of Appeals for the Fourth Circuit.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

DAN FRIEDMAN (Fed. Bar # 24535)
Assistant Attorney General
Office of the Attorney General
Legislative Services Building
90 State Circle, Room 104
Annapolis, Maryland 21401
Tel. 410-946-5600
dfriedman@oag.state.md.us


              /s/
MATTHEW J. FADER (Fed. Bar # 29294)
STEPHEN M. RUCKMAN (Fed. Bar # 28981)
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Tel. 410-576-7906
Fax. 410-576-6955
mfader@oag.state.md.us
sruckman@oag.state.md.us

March 7, 2012                    Attorneys for Defendants