IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, et al., | ) | Case No. 1:10-cv-02068-BEL |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN OPPOSITION TO |
| v. | ) | DEFENDANTS' MOTION TO |
| | ) | CLARIFY AND FOR A STAY OF |
| MARCUS BROWN, et al., | ) | JUDGMENT |
| | ) | |
| Defendants. | ) | |

_____

**COME NOW** the Plaintiffs, Raymond Woollard and Second Amendment Foundation, Inc., by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Opposition to Defendants' Motion to Clarify and for a Stay of Judgment.

Dated: March 16, 2012

Respectfully submitted,

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

Cary J. Hansel
Joseph, Greenwald & Laake
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
301.220.2200/Fax 301.220.1214

By: /s/ Alan Gura_____
    Alan Gura

By: /s/ Cary J. Hansel_____
    Cary J. Hansel

Attorneys for Plaintiffs

TABLE OF CONTENTS

Table of Authorities.......................................................... ii

Preliminary Statement......................................................... 1

Statement of Facts............................................................ 2

Argument..................................................................... 5

  I.    PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF
        AS A MATTER OF LAW.................................................. 5

        A.    Plaintiffs Have Established An Irreparable Injury
              Lacking Remedies At Law........................................ 6

        B.    The Balance of Hardships Tilts Decidedly in Plaintiffs' Favor........... 8

        C.    The Public Interest Requires Injunctive Relief...................... 10

  II.   ALTHOUGH THE COURT'S INTENTION MAY BE EASILY DISCERNIBLE,
        THE COURT SHOULD NONETHELESS NARROW THE GROUNDS OF DISPUTE
        BY CLARIFYING ITS ORDER............................................ 10

  III.  DEFENDANTS ARE NOT ENTITLED TO A STAY.............................. 12

        A.    A Stay Is Not Required To Permit Further Legislation or Regulation..... 14

        B.    Defendants Cannot Establish A "Strong Showing" That They Are
              "Likely" To Succeed On the Merits............................... 15

Conclusion.................................................................. 20

TABLE OF AUTHORITIES

Cases

*AFT–W. Va.* v. *Kanawha County Bd. of Educ.*,
  592 F. Supp. 2d 883 (S.D. W. Va. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Andrews* v. *State*,
  50 Tenn. 165 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bliss* v. *Commonwealth*,
  12 Ky. 90 (1822) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cayuga Indian Nation* v. *Vill. of Union Springs*,
  317 F. Supp. 2d 152 (N.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*CIENA Corp.* v. *Jarrard*,
  203 F.3d 312 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*City of Las Vegas* v. *Moberg*,
  82 N.M. 626, 485 P.2d 737 (N.M. Ct. App. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Corpus Christi Peoples' Baptist Church, Inc.* v. *Texas Dep't of Human Resources*,
  481 F. Supp. 1101 (S.D. Tex. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*CPC Int'l, Inc.* v. *Skippy, Inc.*,
  214 F.3d 456 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*District of Columbia* v. *Heller*,
  554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*eBay Inc.* v. *MercExchange, L.L.C.*,
  547 U.S. 388 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Elrod* v. *Burns*,
  427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Ezell* v. *City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Federal Deposit Ins. Corp.* v. *Jones*,
  846 F.2d 221 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Henry* v. *Greenville Airport Com.*,
  284 F.2d 631 (4th Cir. 1960) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Hilton* v. *Braunskill*,
     481 U.S. 770 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*In re Application of McIntyre*,
     552 A.2d 500 (Del. Super. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Brickey*,
     8 Idaho 597, 70 P. 609 (1902). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kellogg* v. *City of Gary*,
     562 N.E.2d 685 (Ind. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Long* v. *Robinson*,
     432 F.2d 977 (4th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*McDonald* v. *City of Chicago*,
     130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

*Minnesota* v. *Carter*,
     525 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Morris* v. *State*,
     342 So. 2d 417 (Ala. Cr. App. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mosby* v. *Devine*,
     851 A.2d 1031 (R.I. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Newsom* v. *Albemarle County Sch. Bd.*,
     354 F.3d 249 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nunn* v. *State*,
     1 Ga. 243 (1846). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Parker* v. *District of Columbia*,
     478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*People* v. *Zerillo*,
     219 Mich. 635, 189 N.W. 927 (1922). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Piszczatoski* v. *Filko*,
     No. 10-CV-06110, 2012 U.S. Dist. LEXIS 4293 (D.N.J. Jan. 12, 2012). . . . . . . . . . . . . 19

*Reich* v. *ABC/York-Estes Corp.*,
     64 F.3d 316 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Ross* v. *Meese*,
    818 F.2d 1132 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Schubert* v. *De Bard*,
    398 N.E.2d 1339 (Ind. App. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*SEC* v. *SBM Inv. Certificates, Inc.*,
    No. DKC-06-0866, 2012 U.S. Dist. LEXIS 28175 (D. Md. March 2, 2012). . . . . . . . . . 11

*Simpson* v. *State*,
    13 Tenn. 356 (1833) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*St. Agnes Hosp., Inc.* v. *Riddick*,
    751 F. Supp. 75 (D. Md. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State ex rel. City of Princeton* v. *Buckner*,
    180 W. Va. 457, 377 S.E.2d 139 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*State* v. *Bailey*,
    209 Conn. 322, 551 A.2d 1206 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State* v. *Blocker*,
    291 Or. 255, 630 P.2d 824 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*State* v. *Chandler*,
    5 La. Ann. 489 (1850). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*State* v. *Hogan*,
    63 Ohio St. 202, 58 N.E. 572 (1900). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State* v. *Huntly*,
    25 N.C. (3 Ired.) 418, 423 (1843). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State* v. *Kessler*,
    289 Or. 359, 614 P.2d 94 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*State* v. *Reid*,
    1 Ala. 612 (1840) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*State* v. *Rosenthal*,
    55 A. 610 (Vt. 1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State* v. *Schoultz*,
    25 Mo. 128 (1857) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thomas* v. *Brock*,
    810 F.2d 448 (4th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Fuller*,
    919 F.2d 139, 1990 U.S. App. LEXIS 20896 (4th Cir. 1990) (unpublished). . . . . . . . . . 11

*United States* v. *Weaver*,
    No. 2:09-CR-0222, 2012 U.S. Dist. LEXIS 29613 (S.D. W. Va. March 6, 2012). . . . . . 18

*Valley Forge Christian Coll.* v. *Ams. United for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Virginia Petroleum Jobbers Association* v. *FPC*,
    259 F.2d 921 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Washington Metropolitan Area Transit Com.* v. *Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Williford* v. *Armstrong World Industries, Inc.*,
    715 F.2d 124 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Winter* v. *Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Constitutional Provisions

Ala. Const. of 1819, art. I, § 27. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conn. Const. art. I, § 15 (1819). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ky. Const. of 1799, art. XII, cl. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mo. Const. of 1820, art. XIII, § 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

N.C. Declaration of Rights § 17 (1776). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Or. Const. art. I, § 27 (1857). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tenn. Const. of 1796, art. XI, § 26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Vt. Const. c. 1, art. 16 (1777). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Statutes and Rules

11 Del. Code Ann. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 Del. Code Ann. § 1442. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 Pa. Cons. Stat. Ann. § 6109(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21 Okla. Stat. Ann. § 1290.12(A)(12). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25 Me. Rev. Stat. Ann. § 2003(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ala. Code § 13A-11-73. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ala. Code § 13A-11-75. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ark. Code Ann. § 5-73-309. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Colo. Rev. Stat. Ann.  § 18-12-203(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Conn. Gen. Stat. § 29-32b(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. App. Proc. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. Proc. 52. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

Fed. R. Civ. Proc. 56(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. Proc. 58. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. Proc. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. Proc. 62(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Fed. R. Civ. Proc. 65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10-12

Fla. Stat. Ann. § 790.06(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ga. Code Ann. § 16-11-129(d)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Idaho Code Ann. § 18-3302(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ind. Code Ann. § 35-47-2-3(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Iowa Code Ann. § 724.7(1)................................................................. 8

Kan. Stat. Ann. § 75-7c03(a). ............................................................ 8

Ky. Rev. Stat. Ann. § 237.110(4)......................................................... 8

La. Rev. Stat. Ann. § 40:1379.3(A)(1).................................................... 8

Md. Public Safety Code Ann. § 5-307(b).................................................. 14

Md. Public Safety Code § 5-306(a)(5)(ii). ............................................. 3, 4

Mich. Comp. Laws Ann. § 28.422(3)....................................................... 8

Minn. Stat. § 624.714, subdiv. 2(b). .................................................... 8

Miss. Code Ann. § 45-9-101(2). .......................................................... 8

Mo. Ann. Stat. § 571.101(1).............................................................. 8

Mont. Code Ann. § 45-8-321(1)........................................................... 8

N.C. Gen. Stat. § 14-415.11(b)........................................................... 8

N.D. Cent. Code § 62.1-04-03(1).......................................................... 8

N.H. Rev. Stat. Ann. § 159.6(I). ........................................................ 8

N.M. Stat. Ann. § 29-19-4(A)............................................................. 8

Neb. Rev. Stat. § 69-2430(3). ........................................................... 8

Nev. Rev. Stat. Ann. § 202.3657(2)....................................................... 8

Ohio Rev. Code Ann. § 2923.125(D)(1). ................................................... 8

Or. Rev. Stat. Ann. § 166.291............................................................ 8

R.I. Gen. Laws § 11-47-11(a) ............................................................ 8

S.C. Code Ann. § 23-31-215(A)............................................................ 8

S.D. Codified Laws § 23-7-7. ............................................................ 8

Tenn. Code Ann. § 39-17- 1351(b). ....................................................... 8

Tex. Gov't Code § 411.177(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Utah Code Ann. § 53-5-704(1)(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Va. Code Ann. § 18.2-308(D).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

W. Va. Code Ann. § 61-7-4(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wash. Rev. Code Ann. § 9.41.070(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wyo. Stat. Ann. § 6-8-104(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Other Authorities

Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE (2d ed. 1995). . . . . . . . . . . . . . . 7

COLLECTED WORKS OF JAMES WILSON
    (K. Hall & M. Hall eds., 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

http://mlis.state.md.us/ (last visited March 13, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO CLARIFY AND FOR A STAY OF THE JUDGMENT

PRELIMINARY STATEMENT

Defendants' motion for clarification is itself unclear. Plaintiffs sought very specific relief, and the Court granted their motion without any apparent limitation, upon entry of an opinion that lucidly explains why Plaintiffs are entitled to relief.

But the motion to clarify the judgment does, at least, reveal several points. First, the Defendants do not believe themselves to be enjoined, and they are still enforcing the provision held unconstitutional by this Court.

Second, even though the Court has held that the challenged provision violates a fundamental right, and notwithstanding the fact that no factual disputes exist among the parties, Defendants assert that Plaintiffs have not established their entitlement to an injunction. This belief is clearly erroneous. Plaintiffs are entitled to an injunction as a matter of law. Constitutional violations are generally presumed to cause irreparable harm, and enforcing constitutional requirements is invariably in the public interest. Were the Court powerless to enjoin enforcement of an unconstitutional law, constitutional rights, and judicial review, would not amount to much.

In any event, Defendants would argue on appeal that the Court did not meet Rule 65's requirements in issuing injunctive relief, and perhaps, Rule 52's requirement of complete factual and legal findings. Rather than argue with the Defendants about the clarity of the Court's actions, in the context of enforcement proceedings and on appeal, some good could probably come of adding language to the Court's March 2 order [Dkt. 53] granting summary judgment. The Court's order should eliminate an unnecessary set of appellate issues by recounting the elements of injunctive relief, and dispelling any doubts as to the injunction's reach.

1

While the motion to clarify the injunction might yield some benefit, Defendants' request for a stay lacks merit. None of the requisite elements for a stay can be established.

First, merely to recount why Plaintiffs are entitled to injunctive relief—they are suffering irreparable harm owing to the violation of a fundamental constitutional right—suffices to eliminate most grounds for a stay. Nor are Defendants harmed by the injunction in any way, much less in a manner requiring a stay. The Court's decision leaves Maryland with a legal regime concerning the carrying of handguns that is more or less on par with that which prevails in *forty-three* other states, including every state in this circuit and each of Maryland's neighboring states. That is hardly a radical threat to public safety. And contrary to the Defendants' assertions, nothing in the Court's opinion, or in the terms of the injunction, prevents Maryland from continuing to regulate the carrying of handguns. If the state is contemplating additional or different regulations, it does not suddenly require this Court's permission to enact these in the first instance. The Plaintiffs never asked, and the Court never ordered, that the state be generally prevented from legislating on the subject of firearms. There is nothing to stay in this regard.

Finally, the decision is unlikely to be overturned. The Court merely interpreted the relevant constitutional text in the same way that it has already been defined by the Supreme Court, and in a manner consistent with the overwhelming weight of the right's historical understanding. If the Second Amendment secures a right to carry a gun outside the home, the decision to strike down a requirement that individuals prove their entitlement to this right flows inexorably.

STATEMENT OF FACTS

On February 23, 2011, Defendants filed a consent motion to schedule resolution of this case on cross-motions for summary judgment. Dkt. 23. Responding to Plaintiffs' motion for summary judgment, the Defendants failed to seek discovery under Rule 56(f). Defendants also offered no

2

evidence challenging any of Plaintiffs' established facts regarding Woollard's permit history, or the

Second Amendment Foundation. Plaintiffs' summary judgment facts were thus uncontested. As the

Court found, "[t]he facts of the case are undisputed." Memorandum Op., Dkt. 52, at 1. Among the

uncontroverted, established facts, Woollard proved that his permit was denied *only* because he failed

to offer a "good and substantial reason" for its renewal. *See*, Pl. Exh. A, C, D.

The First Amended Complaint contained the following prayer for relief:

1.  An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Maryland Public Safety Code § 5-306(a)(5)(ii);

2.  An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from denying a permit to carry firearms on grounds that the applicant does not face a level of danger higher than that which an average person would reasonably expect to encounter.

3.  An order commanding Defendants to renew Plaintiff Woollard's permit to carry a handgun;

4.  Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

5.  Declaratory relief consistent with the injunction; and

6.  Any other further relief as the Court deems just and appropriate.

Dkt. 19.

In moving for summary judgment, Plaintiffs argued that Defendants "must be enjoined"

from enforcing the "good and substantial reason" prerequisite for a handgun carry license. Pl. Br.,

2/18/11, at 2, 21; Pl. Reply Br., 4/25/11, at 33. Plaintiffs proposed a summary judgment order, Dkt.

21-1, which offered, in pertinent part:

As there is no genuine, material dispute of fact, and as Plaintiffs are entitled to judgment as a matter of law, the motion is GRANTED.

Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, are permanently enjoined from enforcing Maryland Public Safety Code § 5-306(a)(5)(ii);

Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, are permanently enjoined from denying permits to carry firearms on grounds that an applicant does not face a level of danger higher than that which an average person would reasonably expect to encounter; and

Defendants are directed to forthwith renew Plaintiff Raymond Woollard's permit to carry a handgun.

Dkt. 21-1.

Although Plaintiffs unambiguously sought a permanent injunction, Defendants never contested that Plaintiffs would be entitled to injunctive relief were the "good and substantial reason" requirement held unconstitutional. Defendants never explained how they could rebut Plaintiffs' presumptive entitlement to an injunction against a constitutional violation, nor addressed any argument to the elements of injunctive relief. Defendants never addressed the legal presumptions that constitutional violations cause irreparable harm, and that requiring government officials to obey the Constitution is in the public interest per se.

Defendants now represent that

the State, as a matter of policy, generally seeks to comply with the terms of a declaratory judgment even while the judgment is being appealed. As a result, a declaratory judgment that is not stayed pending appeal can have the same practical effect as an injunction, and can be stayed on the same basis.

Def. Br., 3/7/12, at 10. But regardless of what the State "generally" does, or whether a declaratory judgment "*can* have the same practical effect as an injunction" (emphasis added), at least for now, it is apparent that Defendants are still enforcing the "good and substantial reason" requirement pending the outcome of their motion for a stay. Woollard has still not received his renewal handgun carry permit. And on information and belief, based upon numerous reports from individuals who

4

have applied for handgun carry licenses in the wake of the Court's decision, lack of a "good and

substantial reason" is holding up the process. But Plaintiffs are legally entitled to injunctive relief.

Argument

I.   Plaintiffs Are Entitled to Permanent Injunctive Relief As A Matter of Law.

Requisite elements for injunctive relief are sometimes presumed at law. *See, e.g. Elrod* v.

*Burns*, 427 U.S. 347, 373 (1976) (irreparable harm presumed when First Amendment violated).

Accordingly, when a party facing an unambiguous request for injunctive relief believes that its

opponent has failed to establish some necessary element of the claim, it should ordinarily be

expected to make that argument *before* the judgment is rendered. Defendants vigorously contested

the merits of Plaintiffs' claims, but never questioned Plaintiffs' entitlement to injunctive

relief—because there was never any doubt that Plaintiffs would be entitled to an injunction as a

matter of law if the challenged provision were held unconstitutional.

Defendants' equitable arguments would have failed even were they timely raised.

Defendants correctly point out that in some cases, injunctions "do[] not follow from success

on the merits as a matter of course." Def. Br., 3/7/12, at 6 (quoting *Winter* v. *Natural Resources*

*Defense Council, Inc.*, 555 U.S. 7, 32 (2008)).[1] But that argument is often unavailable where

defendants have violated constitutional rights.

> According to well-established principles of equity, a plaintiff seeking a permanent injunction
> must satisfy a four-factor test before a court may grant such relief. A plaintiff must
> demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law,
> such as monetary damages, are inadequate to compensate for that injury; (3) that,

---

[1]*Winter* may not provide the best example of this principle. In *Winter*, the Supreme Court
reversed an injunction against the Navy's anti-submarine sonar training, issued for fear of
theoretically harming marine mammals. "Given that the ultimate legal claim is that the Navy must
prepare an EIS, not that it must cease sonar training, there is no basis for enjoining such training in a
manner credibly alleged to pose a serious threat to national security." *Winter*, 555 U.S. at 32-33.

considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

These factors are not always examined in constitutional cases where, as a matter of law, they are often presumed proven. *See*, *e.g. Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom District of Columbia* v. *Heller*, 554 U.S. 570 (2008).[2] This Court correctly did not perceive these factors to be in serious independent dispute. Memorandum Op., Dkt. 52, at 6 (setting out the questions before the Court).

Having prevailed on the merits of their claim, Plaintiffs have nothing left to prove with respect to their entitlement to injunctive relief.

A.      Plaintiffs Have Established An Irreparable Injury Lacking Remedies At Law.

"[T]he denial of a constitutional right, if denial is established, constitutes irreparable harm for purposes of equitable jurisdiction." *Ross* v. *Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) (citation omitted); *cf. Henry* v. *Greenville Airport Com.*, 284 F.2d 631, 633 (4th Cir. 1960) (per curiam) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right"); *see also Elrod*, supra (First Amendment violations constitute irreparable harm); *AFT–W. Va.* v. *Kanawha County Bd. of Educ.*, 592 F. Supp. 2d 883, 892 (S.D. W. Va. 2009) (same: Fourth Amendment).

---

[2]In *Heller*, neither the D.C. Circuit nor the Supreme Court seriously questioned whether the prevailing plaintiff was entitled to injunctive relief, which was specifically requested by Heller in moving for summary judgment. *See* Pl. Summary Judgment Br., U.S. Dist. Ct. D.C. No. 03-213, Dkt. 4-1, pp. 2, 41; Proposed Order, *id.* Dkt. 4-2. The *Heller* defendants never questioned that injunctive relief would follow if they lost the case on the merits.

No constitutional right is so directly linked to one's immediate physical well-being as is the right to keep and bear arms. The interest in self-defense is the "*central component* of the [Second Amendment] right itself," *Heller*, 554 U.S. at 599 (emphasis original). Plainly, the inability to access constitutionally-protected arms impacts one's sense of security—to say nothing of the irreparable harm resulting from a successful criminal attack that might have been averted wit hacces to defensive arms.

Defendants do not merely view the Second Amendment as net socially harmful. Their motion completely fails to acknowledge *any* positive individual value secured by the Amendment. The law is otherwise. "[F]or some kinds of constitutional violations, irreparable harm is presumed. *See* 11A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995) ('When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.')." *Ezell* v. *City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011).  As the Seventh Circuit explained,

> The loss of a First Amendment right is frequently presumed to cause irreparable harm based on "the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." The Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. Infringements of this right cannot be compensated by damages.

*Id.* (citations and footnote omitted).

Considering precedents such as *Ross* and *Henry*, the Fourth Circuit is unlikely to break with *Ezell* on these points. The loss of Second Amendment rights is not a "slight burden." Def. Br., 3/7/12, p. 18. The violation of Second Amendment rights causes individuals severe and irreparable harm that is not compensable with money damages. There is simply no way to quantify or remedy the profound loss of security, and its possible consequences, when individuals are denied adequate

means of self-defense. Plaintiffs agree that miscalculating as to Second Amendment rights can lead to tragedy. Avoiding situations where law-abiding individuals are left defenseless against violent crime is a core policy of the right to bear arms codified by the Second Amendment.

B.     The Balance of Hardships Tilts Decidedly in Plaintiffs' Favor.

In contrast to the obvious hardship inherent in the loss of a fundamental right necessary for self-defense, Defendants will suffer no discernible harm in conforming their conduct to constitutional standards. Defendants suggest that this Court's decision would leave them with a dangerously inadequate handgun carry permitting scheme, a circumstance so dire and unusual that it warrants, essentially, the suspension of a fundamental constitutional right. Not so. The Court's decision places Maryland firmly in the national mainstream with respect to the right to carry handguns, and still leaves the state with the Fourth Circuit's most restrictive regulatory landscape on the topic.

Apart from Maryland, the laws of forty-three states recognize that private citizens are generally entitled to carry handguns for self-defense. Of these: Thirty-seven states require officials to issue gun carry licenses to applicants meeting objective standards, barring proof of some positive disability.[3] In some of these states, a license is required only if a gun is carried concealed. Four

---

[3] Ark. Code Ann. § 5-73-309; Colo. Rev. Stat. Ann. § 18-12-203(1); Conn. Gen. Stat. § 29-32b(b); Fla. Stat. Ann. § 790.06(2); Ga. Code Ann. § 16-11-129(d)(4); Idaho Code Ann. § 18-3302(1); Ind. Code Ann. § 35-47-2-3(e); Iowa Code Ann. § 724.7(1); Kan. Stat. Ann. § 75-7c03(a); Ky. Rev. Stat. Ann. § 237.110(4); La. Rev. Stat. Ann. § 40:1379.3(A)(1); 25 Me. Rev. Stat. Ann. § 2003(1); Mich. Comp. Laws Ann. § 28.422(3); Minn. Stat. § 624.714, subdiv. 2(b); Miss. Code Ann. § 45-9-101(2); Mo. Ann. Stat. § 571.101(1); Mont. Code Ann. § 45-8-321(1); Neb. Rev. Stat. § 69-2430(3); Nev. Rev. Stat. Ann. § 202.3657(2); N.H. Rev. Stat. Ann. § 159.6(I); N.M. Stat. Ann. § 29-19-4(A); N.C. Gen. Stat. § 14-415.11(b); N.D. Cent. Code § 62.1-04-03(1); Ohio Rev. Code Ann. § 2923.125(D)(1); 21 Okla. Stat. Ann. § 1290.12(A)(12); Or. Rev. Stat. Ann. § 166.291(1); 18 Pa. Cons. Stat. Ann. § 6109(e); R.I. Gen. Laws § 11-47-11(a); S.C. Code Ann. § 23-31-215(A); S.D. Codified Laws § 23-7-7; Tenn. Code Ann. § 39-17-1351(b); Tex. Gov't Code § 411.177(a); Utah Code Ann. § 53-5-704(1)(a); Va. Code Ann. § 18.2-308(D); Wash. Rev. Code Ann. § 9.41.070(1); W. Va. Code Ann. § 61-7-4(f); Wis. Stat. § 175.60(2)(a).

states—Alaska, Arizona, Vermont and Wyoming—do not require permits to carry visible *or* concealed handguns, of at least some people (Wyoming requires permits of visitors), although Arizona, Alaska and Wyoming issue permits for reciprocity purposes.[4] Two states—Alabama and Delaware—have discretionary statutes for licensing the carry of concealed handguns, but do not, without more, ban private citizens from openly carrying handguns.[5]

Among Maryland's neighbors, only the District of Columbia bars the carrying of handguns for self-defense.[6] Pennsylvania, Virginia, West Virginia, and Delaware all generally allow the unlicensed open carrying of handguns, and of these, all but Delaware issue concealed carry licenses on a shall-issue basis. Within this circuit, Maryland now joins South Carolina as the only states that uniformly require a license to carry handguns, but issue licenses on a shall-issue basis.[7] The other Fourth Circuit states allow unlicensed open carry in most places and have shall-issue regimes for licensed concealed carry.

In short, Marylanders now enjoy a handgun carry licensing scheme that is, in its core structure, profoundly ordinary. It was the unconstitutional statute struck down by the Court, not the Court's decision, that effected a dangerous and unusual legal regime out of step with prevailing American practice. This is hardly the stuff of emergency stays or uncharted threats to public safety.

---

[4]Alaska Stat. § 18.65.700(a); Ariz. Rev. Stat. § 13-3112(A); Wyo. Stat. Ann. § 6-8-104(b).

[5]Ala. Code §§ 13A-11-73, 75; *Morris* v. *State*, 342 So. 2d 417, 418 (Ala. Cr. App. 1977); 11 Del. Code Ann. §§ 1441-42; *In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del. Super. 1988).

[6]The District's unconstitutional handgun carry policies are being challenged. *Palmer* v. *District of Columbia*, U.S. Dist. Ct., D.C. No. 09-CV-1482-FJS.

[7]South Carolina forbids the open carrying of handguns.

C.      The Public Interest Requires Injunctive Relief.

"Surely, upholding constitutional rights serves the public interest." *Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) (citation omitted).

\* \* \*

Plaintiffs are entitled to the injunctive relief they sought.

II.     ALTHOUGH THE COURT'S INTENTION MAY BE EASILY DISCERNABLE, THE COURT SHOULD NONETHELESS NARROW THE GROUNDS OF DISPUTE BY CLARIFYING ITS ORDER.

Rule 52 requires that the Court make findings of law and fact to support its judgment. Although an injunction order may recite factual and legal findings, the rule does not require that those findings of fact or conclusions of law be set forth in the injunction order itself. *CIENA Corp.* v. *Jarrard*, 203 F.3d 312, 321 (4th Cir. 2000).

The Court's Memorandum Opinion satisfies the requirements of Rule 52, except to the extent Defendants might claim that the Court made no specific findings regarding the requisite elements for injunctive relief discussed *supra*. Although, as Plaintiffs argued, there is frequently no need to recite the existence of these elements, and the opinion is not deficient for not doing so, Defendants have signaled this as a potential ground for appeal—which could be eliminated were the Court to briefly spell out its findings with respect to irreparable harm, lack of remedies at law, the balance of hardships, and the public interest.

Injunction orders must be set forth in a separate judgment. Fed. R. Civ. Proc. 58. *See, e.g. Reich* v. *ABC/York-Estes Corp.*, 64 F.3d 316, 319 (7th Cir. 1995) (no injunction where separate order not issued). This, the Court has done with Docket Entry 53. The Fourth Circuit would likely not "elevate flawless draftsmanship of court orders over the substantive concerns underlying Rule 65(d). Such perfection is not required . . . when the twin dangers of uncertainty and uninformed

10

review are absent." *United States* v. *Fuller*, 919 F.2d 139, 1990 U.S. App. LEXIS 20896 at *10

(4th Cir. 1990) (unpublished); *SEC* v. *SBM Inv. Certificates, Inc*., No. DKC-06-0866, 2012 U.S.

Dist. LEXIS 28175 (D. Md. March 2, 2012). All the same, Defendants signal that they perceive

appealable deficiencies in the form of that judgment. Again, whatever the merits of this claim, no

harm can come of definitively neutralizing this as an issue for appeal.

Fed. R. Civ. Proc. 65(d) (1) provides that "[e]very order granting an injunction . . . must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail--and not by referring to the complaint or other
document--the act or acts restrained or required."

"The terms of Rule 65(d) 'are mandatory and must be observed in every instance.'" *CPC*

*Int'l, Inc.* v. *Skippy, Inc*., 214 F.3d 456, 459 (4th Cir. 2000) (quoting *Thomas* v. *Brock*, 810 F.2d

448, 450 (4th Cir. 1987)). "Rule 65(d) . . . serves the twin purposes of providing fair notice of what

an injunction requires and of facilitating appellate review." *CPC*, 214 F.3d at 459 (citation omitted).

"[W]hile an injunction regarding the Act need not be laboriously detailed, it must say

something about the conduct enjoined." *Reich*, 64 F.3d at 320 (citations omitted). "Since one of the

purposes of these requirements is to aid the appellate court on review, it cannot be waived by the

parties unless the grounds for the court's rulings are clear from the record." *Federal Deposit Ins.*

*Corp.* v. *Jones*, 846 F.2d 221, 240 (4th Cir. 1988).

Again, the Court granted Plaintiffs' summary judgment motion without any apparent

limitation. And the relief Plaintiffs requested is fully supported by the record and relevant legal

presumptions. The Court's judgment, Dkt. 53, should thus be modified to specifically recount the

reasons for granting Plaintiffs injunctive relief, and spell out the terms of the injunction as offered by

Plaintiffs. The Fourth Circuit provided an example specifically upheld against a Rule 65(d) challenge in *CIENA*, 203 F.3d at 322.

The terms offered by Plaintiffs are fairly straightforward. First, the Defendants shall refrain from enforcing the unconstitutional law at issue in this case. Second, the Defendants shall not resurrect the forbidden practice encompassed in that law, under the guise of some other authority. And finally, Woollard should have his permit renewed, because it was only rejected for an unconstitutional reason, and Defendants never offered any other reason for denying the permit renewal. It is far too late in the day for Defendants to suggest that Woollard could be disqualified for some other reason independent of the issue in the litigation. Def. Br., 3/7/12, p. 6.  Presumably, were Woollard disqualified on other grounds, Defendants would have raised that defense earlier. Of course, Defendants do not articulate exactly *how* Woollard might no longer be eligible for the permit they had already once renewed.[8]

III.   DEFENDANTS ARE NOT ENTITLED TO A STAY.

Consideration of a motion for stay under Fed. R. Civ. Proc. 62(c) requires the Court to balance "(1) whether the stay applicant has made a *strong showing* that he is *likely* to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton* v. *Braunskill*, 481 U.S. 770, 776 (1987) (emphasis added); *Long* v.

---

[8]Defendants' citation to *Heller*, to the effect that Woollard would need to re-apply to establish the factual predicate for demanding restoration of his permit, is inapposite. Heller only re-applied for his handgun registration permit because the District of Columbia had revamped its registration process and requirements. And Heller never applied for a permit to carry his handgun inside his home. His claim in this regard was that such permits, although contemplated by the D.C. Code, had never even been made available. In the wake of the Supreme Court's decision, the District of Columbia quickly repealed the criminal penalty for carrying handguns inside one's home without a permit, and repealed legislative authority for the issuance of handgun carry permits.

*Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). "Defendants, as movants, have the heavy burden of establishing that the aforementioned factors weigh in favor of a stay." *Cayuga Indian Nation* v. *Vill. of Union Springs*, 317 F. Supp. 2d 152, 155 (N.D.N.Y. 2004).

As Defendants correctly note, they are currently ineligible for a stay of the Court's judgment under Rule 62(c), which requires an actual notice of appeal, not merely a "possible appeal." *Corpus Christi Peoples' Baptist Church, Inc.* v. *Texas Dep't of Human Resources*, 481 F. Supp. 1101, 1111-12 (S.D. Tex. 1979). As Defendants also correctly note, this Court nonetheless possesses an inherent supervisory power to stay its judgment. That authority

> is not, however, without limitation. . . . proper use of this authority "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative. "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."

*Williford* v. *Armstrong World Industries, Inc*., 715 F.2d 124, 127 (4th Cir. 1983) (citations omitted).

As the Rule 62(c) standards are identical to those the Fourth Circuit would consider under Fed. R. App. Proc. 8(a), and considering that Defendants could merely re-file their stay motion once they have obtained a ruling on their Rule 59 motion, it may be most efficient to consider the motion pursuant to the more detailed Rule 62(c) standards set forth in *Hilton* and *Long*.

Defendants cannot satisfy any of the four prerequisites of a stay, let alone a compelling combination of these factors.

There is no need to revisit the questions of "whether issuance of the stay will substantially injure the other parties interested in the proceeding; and . . . where the public interest lies." *Hilton*, 481 U.S. at 776. The Court found that Plaintiffs' fundamental Second Amendment rights are being

13

violated, a substantial harm which the public has a strong interest in seeing alleviated. The other two factors merit some additional discussion.

A.      A Stay Is Not Required To Permit Further Legislation or Regulation.

As detailed *supra*, Defendants are not especially harmed by being required to license the carrying of handguns on the same terms already prevailing throughout the circuit and the Nation. Yet in seeking a stay, Defendants allege an additional harm they claim would be alleviated by a stay. "[A] stay pending appeal could . . . permit the Maryland General Assembly to consider and, should it choose to do so, to enact changes to existing law designed to address public safety concerns in a manner that is consistent with this Court's holding." Def. Br., 3/7/12, p. 12.

But no stay is required for the General Assembly to consider new legislation. The Court has not enjoined the General Assembly. Nothing in the Court's decision impedes Maryland's ability to enact further, different restrictions on the right to carry a gun, the constitutionality of which could only be evaluated if and when such  restrictions are actually enacted. The Court's decision relates only as to whether individuals must prove their entitlement, generally, to carry a gun; it holds nothing with respect to how Maryland would otherwise regulate the exercise of this right.

Maryland has long opted to license the carrying of handguns, openly or concealed. If Maryland authorities truly wish to require all handgun carry permit holders to carry their handguns openly, Def. Br., 3/7/12, pp. 12-13, that option is not foreclosed by the Court's opinion, and no stay need be obtained to effectuate that policy choice. Maryland's legislature remains open for business, and indeed, is in session as of this writing through April 9, 2012. *See* http://mlis.state.md.us/ (last visited March 13, 2012). Moreover, Maryland law already allows Defendant Brown to limit the scope of permits to open or concealed carry. Md. Public Safety Code Ann. § 5-307(b). This provision  enables Brown to adopt additional restrictions, which may or may not be constitutional

14

depending on their terms. In any event, no stay is required to enable Defendant Brown to conjure handgun permit restrictions.

Notably, the Seventh Circuit rejected a similar claim that individuals should tolerate a Second Amendment violation because the government would be inconvenienced in pursuing its option to re-regulate. Faced with the prospect of losing its total ban on gun ranges, Chicago warned of a "regulatory vacuum" that would be left between an injunction and subsequent regulatory efforts. The court dismissed the concerns. "[W]e note that [Chicago] faced a similar dilemma after the Supreme Court decided *McDonald*. The sky did not fall. The City Council moved with dispatch and enacted the Ordinance just four days later." *Ezell*, 651 F.3d at 711. Chicago enacted its post-*Ezell* gun range regulations upon issuance of that opinion, the same day, and those regulations took effect before the District Court had an opportunity to enjoin the old prohibition on remand.

**B.** **Defendants Cannot Establish A "Strong Showing" That They Are "Likely" To Succeed On the Merits.**

Courts have rejected the notion "that every time a case presents difficult questions of law a stay should be entered." *St. Agnes Hosp., Inc.* v. *Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990) (citations omitted). It bears repeating that with respect to the first factor, a stay applicant must make "a *strong showing* that he is *likely* to succeed on the merits." *Hilton*, 481 U.S. at 776; *Long*, 432 F.2d at 979 ("likely prevail"). "Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Washington Metropolitan Area Transit Com*. v. *Holiday Tours, Inc*., 559 F.2d 841, 843 (D.C. Cir. 1977) (quoting *Virginia Petroleum Jobbers Association* v. *FPC*, 259 F.2d 921, 925 (1958)).

Defendants' arguments on the merits appear to be: (1) allowing the carrying of guns is dangerous, and (2) the courts should seek to avoid answering the Second Amendment question at the core of this case. Defendants advance no argument based on the text, history, or traditional application of the right to bear arms.

Defendants' statements that "every court to have addressed the constitutionality of similar handgun wear and carry permit statutes before this one has upheld the constitutionality of the statutes," Def. Br., 3/7/12, p. 14, and that "no court before this one has held a similar permit regime to be unconstitutional," *id.* at 17, are simply incorrect. At least four courts have held that officials cannot arbitrarily deny handgun carry licenses. "The exercise of a right guaranteed by the Constitution cannot be made subject to the will of the sheriff." *People* v. *Zerillo*, 219 Mich. 635, 639, 189 N.W. 927, 928 (1922). "The [provision] making it a crime for an unnaturalized, foreign-born resident to possess a revolver, unless so permitted by the sheriff, contravenes the guaranty of such right in the Constitution of the State and is void." *Id.* at 642, 929 (gun in car); *Kellogg* v. *City of Gary*, 562 N.E.2d 685, 694 (Ind. 1990); *State ex rel. City of Princeton* v. *Buckner*, 180 W. Va. 457, 462, 377 S.E.2d 139, 144 (1988); *Schubert* v. *De Bard*, 398 N.E.2d 1339, 1341 (Ind. App. 1980); *see also Mosby* v. *Devine*, 851 A.2d 1031, 1050 (R.I. 2004):

> [T]his Court will not countenance any system of permitting under the Firearms Act that would be committed to the unfettered discretion of an executive agency. . . One does not need to be an expert in American history to understand the fault inherent in a gun-permitting system that would allow a licensing body carte blanche authority to decide who is worthy of carrying a concealed weapon. The constitutional right to bear arms would be illusory, of course, if it could be abrogated entirely on the basis of an unreviewable unrestricted licensing scheme.

Moreover, in *Heller*, the Supreme Court discussed no fewer than four high court precedents that upheld a right to carry arms in public for self-defense: *State* v. *Reid*, 1 Ala. 612 (1840); *Nunn* v. *State*, 1 Ga. 243, 251 (1846); *Andrews* v. *State*, 50 Tenn. 165, 187-88 (1871); *State* v.

16

*Chandler*, 5 La. Ann. 489, 490 (1850). There are others. *See, e.g. City of Las Vegas* v. *Moberg*, 82 N.M. 626, 627-28, 485 P.2d 737, 738-39 (N.M. Ct. App. 1971); *In re Brickey*, 8 Idaho 597, 599, 70 P. 609 (1902); *State* v. *Hogan*, 63 Ohio St. 202, 219, 58 N.E. 572, 575 (1900).

*Heller* did not merely define "bear arms" to mean "carry." *Heller* offered that "state constitutional provisions written in the 18th century or the first two decades of the 19th" were the examples "most prominent [and] most relevant to the Second Amendment" in defining the meaning of "bear arms." *Heller*, 554 U.S. at 584. None of these state constitutional provisions have been interpreted as relating solely to the home, but most were held to secure the public carrying of arms in at least some manner. "Justice James Wilson interpreted the Pennsylvania Constitution's arms-bearing right . . . as a recognition of the natural right of defense 'of one's person *or* house' — what he called the law of 'self preservation.'" *Heller*, 554 U.S. at 585 (emphasis added) (citing 2 COLLECTED WORKS OF JAMES WILSON 1142, and n.x (K. Hall & M. Hall eds., 2007)) (other citations omitted); *see also Reid*, supra, 1 Ala. 612 (interpreting Ala. Const. of 1819, art. I, § 27); *State* v. *Bailey*, 209 Conn. 322, 346, 551 A.2d 1206, 1218 (1988) (Conn. Const. art. I, § 15 (1819); *Bliss* v. *Commonwealth*, 12 Ky. 90 (1822) (Ky. Const. of 1799, art. XII, cl. 23); *State* v. *Schoultz*, 25 Mo. 128, 155 (1857) (Mo. Const. of 1820, art. XIII, § 3); *State* v. *Huntly*, 25 N.C. (3 Ired.) 418, 423 (1843) (N.C. Declaration of Rights § 17 (1776)); *Simpson* v. *State*, 13 Tenn. 356 (1833) (Tenn. Const. of 1796, art. XI, § 26); *State* v. *Rosenthal*, 55 A. 610 (Vt. 1903) (Vt. Const. c. 1, art. 16 (1777)).

Defendants note that some courts have recently taken a different view. But

[t]he fact that courts may be reluctant to recognize the protection of the Second Amendment outside the home says more about the courts than the Second Amendment. Limiting this fundamental right to the home would be akin to limiting the protection of First Amendment freedom of speech to political speech or college campuses.

17

*United States* v. *Weaver*, No. 2:09-CR-0222, 2012 U.S. Dist. LEXIS 29613 at *13-*14 n.7 (S.D.

W. Va. March 6, 2012). The *Weaver* court, writing simultaneously, reached the same conclusion

regarding the Second Amendment's scope as did this Court.

   One state high court has already faced a claim similar to that asserted by Defendants, to the

effect that a constitutional right to arms provision must be limited to the home. In *State* v. *Kessler*,

289 Or. 359, 614 P.2d 94 (1980), Oregon's Supreme Court held that possession of a billy club was

secured by the constitutional guarantee that "[t]he people shall have the right to bear arms for the

defence of themselves . . ." Or. Const. art. I, § 27 (1857). The following year, prosecutors argued

that the right should be confined to *Kessler*'s facts, relating to home possession of a billy club, and

not to the public carrying of the same arm. The court disagreed:

> The text of the constitution is not so limited; the language is not qualified as to place except
> in the sense that it can have no effect beyond the geographical borders of this state . . . In
> *Kessler* we started from the premise that under § 27 a person has a right to bear arms for
> defense of self . . . We then moved from that general proposition to the more particular one
> that a person had the constitutional right to have a billy in his home for defense.

*State* v. *Blocker*, 291 Or. 255, 259, 630 P.2d 824, 825-26 (1981) (citation and footnote omitted).

   Likewise, *Heller* announced a general proposition respecting constitutional protection for the

possession of handguns, and applied it to the home-bound facts of the case. *McDonald*'s description

of *Heller* neatly parallels *Blocker*'s description of *Kessler*:

> [I]n [*Heller*], we held that the Second Amendment protects the right to keep and bear arms
> for the purpose of self-defense, and we struck down a District of Columbia law that banned
> the possession of handguns in the home.

*McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3026 (2010).

   There is no reason to suppose that the Supreme Court would suddenly limit *Heller* to its

facts—and every reason to suppose that it would decide future Second Amendment cases from the

baseline proposition that the Amendment secures, generally, the right to keep and carry arms for self-defense. "[T]he need for defense of self, family, and property is *most acute*" in the home, *Heller*, 554 U.S. at 628 (emphasis added), and the Second Amendment right is secured "*most notably* for self-defense within the home," *McDonald*, 130 S. Ct. at 3044 (emphasis added)—and in this respect, the right to arms is no different than other rights. "[I]t is beyond dispute that the home is entitled to special protection as the center of the private lives of our people." *Minnesota* v. *Carter*, 525 U.S. 83, 99 (1998) (Kennedy, J., concurring). Yet constitutional rights are not generally limited to the home. The self-defense interest at the Second Amendment's core has never been so limited.

The overwhelming weight of historical sources, including treatises, precedent, and early state constitutions—many invoked by the Supreme Court in *Heller*—confirm the traditional application of the Second Amendment outside the home. Against these, Defendants can offer only the same post-*Heller* cases that have already proven unpersuasive. Plaintiffs have previously addressed these cases at length in supplemental filings, and there is no need to repeat all that has been written regarding these cases' lack of merit. The gist of these cases, that the Second Amendment right is "unlike any other constitutional right," Def. Br., 3/7/12, p. 8 (citing *Piszczatoski* v. *Filko*, No. 10-CV-06110, 2012 U.S. Dist. LEXIS 4293 (D.N.J. Jan. 12, 2012)), has already been rejected by the Supreme Court. *See McDonald*, 130 S. Ct. at 3045 (rejecting argument that "Second Amendment differs from all of the other provisions of the Bill of Rights because it concerns the right to possess a deadly implement and thus has implications for public safety."); *see also Valley Forge Christian Coll.* v. *Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 484 (1982) ("[W]e know of no principled basis on which to create a hierarchy of constitutional values."). The Fourth Circuit will follow *McDonald*.

And yet Plaintiffs do not rest their argument, as do Defendants, on an asserted numerical balance of authorities. The issue is not merely that Plaintiffs can cite to "x" number of sources confirming the right to bear arms exists outside the home, as against "y" contrary holdings invoked by Defendants. Rather, the issue is qualitative. The authorities relied upon to illustrate the right's public application reflect its historical understanding and logical application. The contrary cases are reactions to *Heller* and *McDonald* that misuse interest-balancing to substitute new policy preferences for those contained in the constitutional text. It is exceedingly unlikely that the Fourth Circuit will overrule this Court by offering that the right to bear arms is too dangerous to allow. Yet that appears to be Defendants' only argument on the merits.

The Court was not merely correct in securing the right to bear arms. The Court acted pursuant to, and consistent with, centuries of legal tradition.

CONCLUSION

If only to dispense with needless appellate issues, the Court should clarify its order to specify the terms of the injunction, and the fact that Plaintiffs have established the equitable predicates for obtaining that injunction. But the motion for a stay must be denied, as Defendants have failed to establish any of the factors justifying such an extraordinary request.

Dated: March 16, 2012          Respectfully submitted,

Alan Gura                        Cary J. Hansel
Gura & Possessky, PLLC           Joseph, Greenwald & Laake
101 N. Columbus Street, Suite 405   6404 Ivy Lane, Suite 400
Alexandria, VA 22314             Greenbelt, MD 20770
703.835.9085/Fax 703.997.7665    301.220.2200/Fax 301.220.1214

By: /s/ Alan Gura _____   By: /s/ Cary J. Hansel _____
    Alan Gura                          Cary J. Hansel

                                 Attorneys for Plaintiffs

20