# EXHIBIT A:

# Declaration of Marcus Brown

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND WOOLLARD, *et al.*, | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Case No. 1:10-cv-2068-BEL |
| MARCUS BROWN, *et al.*, | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF MARCUS L. BROWN

I, Marcus L. Brown, am competent to state and testify to the following, based on my personal knowledge.

1. I am the Secretary of the Maryland State Police ("MSP"), a position I have held since August 1, 2011.

2. As Secretary, my responsibilities include supervising and directing the affairs and operation of the MSP.

3. I have been informed by counsel that the Court has asked what difficulties would arise if there is no stay of the Court's injunction pending appeal, but the injunction is later overturned by an appellate court. This declaration is submitted in response to that question, and is therefore based on the hypothetical scenario posed by the Court. I refer to the time between when the injunction would go into effect and the date of a ruling by the appellate court overturning the injunction as the "Interim Period."

4.  It is my understanding that if a stay is not granted pending appeal, the injunction entered by the Court would prohibit the MSP from enforcing the requirement that an applicant for a handgun wear and carry permit demonstrate a "good and substantial reason" to wear, carry, and transport a handgun in public in Maryland ("GSR"). In that case, the MSP would not necessarily know whether a recipient of a handgun wear and carry permit during the Interim Period had GSR.

5.  In the event the MSP is precluded during the Interim Period from enforcing the GSR requirement, and the injunction is then overturned on appeal, the MSP would be obligated to revoke any permit issued during the Interim Period where GSR was not considered. Under those circumstances, Maryland law would once again require GSR as a condition for having a lawful handgun wear and carry permit, and the MSP could not, consistent with its obligation to uphold the laws of Maryland, allow permits issued in violation of what would then be a valid law to remain outstanding.

6.  In the absence of a stay during the Interim Period, the MSP would attempt to avoid the need to revoke permits of individuals who have GSR by giving applicants the option of identifying a GSR, and cooperating with MSP's investigation of that GSR, voluntarily. The MSP would not deny permits to individuals who decline to provide any such reason or who fail to demonstrate GSR, but would keep records of individuals who do demonstrate GSR so that if the appellate court vacates the injunction, the MSP would not be required to revoke permits of individuals who had demonstrated GSR during the Interim Period. Nevertheless, in light of the strong feelings surrounding this issue, the

MSP expects that a significant number of applicants who have GSR will decline to provide it during the application process as a matter of principle.

7. Revoking permits would involve sending letters to all recipients of permits during the Interim Period who had not demonstrated GSR, informing each that their permit had been revoked and demanding that they immediately return the permit to MSP. Those individuals would be informed that they could re-apply for a new permit, subject to a determination of GSR.

8. For purposes of discussing the effect of revocation, people who will get permits during the Interim Period would fall into one of three broad categories:

    a. Category 1: Individuals who, in the absence of an injunction, would have received a permit restricted to the activities providing their GSR, such as while working as a security guard, armored car driver, private detective, special police officer, or engaged in a business requiring that person to transport valuable items. During the Interim Period, those individuals would presumably qualify for unrestricted permits.[1]

    b. Category 2: Individuals who, in the absence of an injunction, would have received an unrestricted permit because the nature of their GSR. This category includes individuals who demonstrate a need for personal protection, including those who have been threatened and certain police officers, correctional officers, judges, prosecutors, and public defenders.

---

[1] By "unrestricted" I mean permits that are not limited by the individual's GSR. Permit holders would remain subject to generally-applicable restrictions such as, for example, prohibitions under State law from carrying guns on public school property.

3

During the Interim Period, they would also receive an unrestricted permit; and

    c. Category 3: Individuals who, in the absence of an injunction, would not have received a permit because they lack GSR.

9. Individuals falling within Category 1 are individuals who would be eligible for a permit under existing law, but subject to restrictions tailored to their GSR. *See* Md. Code Ann., Pub. Safety § 5-307(b) (permitting authority to "limit the geographic area, circumstances, or times of the day, week, month, or year in which a [handgun wear and carry] permit is effective"). This would include security guards sponsored by their employers, private detectives, armored car drivers, special police officers, and people in business who transport valuable items in the regular course of business. There are currently 5,091 permits issued to security guards, private detectives, armored car drivers, and special police officers, and 896 to people in business who transport valuable items in the regular course of business.

10. If MSP is not permitted to enforce the GSR requirement during the Interim Period, it will not necessarily know who falls into Category 1 and will be obligated to revoke all permits issued during the Interim Period to individuals who had not voluntarily demonstrated GSR. For individuals in Category 1, this could have potentially significant consequences, including the loss of employment if their jobs require the wear and carry of a handgun.

11. Although the MSP would process new applications as promptly as reasonably possible after revoking permits issued during the Interim Period, it is expected

4

that there will be a significant number of applications that need to be processed and limited resources available to process them, including conducting the necessary investigations into GSR. The average processing time for an initial permit application is currently 2-3 months, and the average processing time for a renewal permit application is currently 45 days. It is anticipated that the processing times following the Interim Period would be significantly longer, which will compound the problems associated with revocation for these individuals who, by definition, have GSR.

12. A further complication with respect to individuals in Category 1 who do voluntarily demonstrate GSR during the Interim Period is that the MSP would then be required to impose GSR-related restrictions after the Interim Period, which would require recovering the unrestricted permits and re-issuing new, restricted permits.

13. Individuals in Category 2 are individuals who have GSR that would qualify them for an unrestricted permit under the existing wear-and-carry permit statute. This would include individuals whose GSR is "personal protection," including individuals who have been threatened and those whose professions put them at heightened risk at all times—including certain police officers, correctional officers, judges, prosecutors, and public defenders. If the MSP is prohibited from enforcing GSR during the Interim Period, it would not necessarily know which permit recipients fall into this category, and would therefore have to revoke all permits issued without consideration of GSR.

14. Again, although the MSP would process applications as promptly as reasonably possible after the Interim Period, it is expected that there will be a significant number of applications that need to be processed and limited resources available to

5

process them, including conducting the necessary investigations into GSR. That, in turn, will lead to an increase in processing times that will compound the problems associated with revocation for these individuals who, by definition, have GSR.

15. With respect to individuals falling within Category 3, those without GSR, none of them would qualify for a permit under existing law. MSP expects that many such individuals will comply with the demand to return the permits, but that many others will not. It would be impractical for MSP to track down and recover every permit that would not be returned, so a number of permits would remain on the streets. That would hinder the ability of law enforcement officers to enforce Maryland law regarding the unlawful carrying of handguns in public because a number of facially-valid permits would remain in circulation. A law enforcement officer who encounters someone holding one of these permits will not necessarily have any reasonably practicable way of discerning its invalidity.

16. Enforcing the injunction during the Interim Period would also have significant repercussions for MSP resources. MSP resources available for processing handgun wear and carry permits, including both personnel and equipment, are already strained, and would be more so following an expected increase in the number of permit applications if the injunction is enforced during the Interim Period.

17. As a result of the need to comply with State policies with respect to creating new positions, as well as the need to train and obtain certifications for new employees in this area, it would take a minimum of several months, and possibly much longer, to add a new position to assist with processing applications. Even if new

6

positions are ultimately added, the MSP will likely face significantly increased processing times for applications until that can happen. During the Interim Period, those delays will most impact individuals with GSR, those who, by definition, are most in need of a permit.

18.     Finally, if a stay is not granted during the Interim Period, and an appellate court later vacates the injunction, the need to revoke permits of individuals who have not demonstrated GSR, and to impose GSR-related restrictions on other permits, will likely lead to a significant increase in appeals to the Handgun Permit Review Board. That will further tax the resources of both the MSP and the Handgun Permit Review Board.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April _18_, 2012, Baltimore, Maryland

_____
Marcus L. Brown