EXHIBIT F:

License To Carry: Florida's Flawed
Concealed Weapon Law,
SOUTH FLORIDA SUN-SENTINEL,
Jan. 28, 2007

1/28/07 South Florida Sun-Sentinel 1A
2007 WLNR 1704642

South Florida Sun-Sentinel
Copyright 2007 Sun-Sentinel

January 28, 2007

Section: LOCAL

# LICENCE TO CARRY
## FLORIDA'S FLAWED CONCEALED WEAPON LAW

Garth F. Bailey, of Pembroke Pines, pleaded no contest to manslaughter in 1988 for shooting his girlfriend in the head while she cooked breakfast. Eight years later, the state of Florida gave him a **license** to **carry** a gun.

John P. Paxton Jr., then of Deerfield Beach, pleaded guilty to aggravated child abuse in 1993 for grabbing his 4-year-old nephew by the neck, choking and slapping him for flicking the lights on and off. Eight years later, the state gave him a **license** to **carry** a gun.

John M. Corporal, of Lake Worth, pleaded guilty to aggravated assault in 1998 for pulling a chrome revolver from his waistband and placing it against his roommate's head during an argument. In 2002, he pleaded guilty to grand theft. In February 2006, the state gave him a **license** to **carry** a gun.

Florida has given concealed weapon licenses to hundreds of people who wouldn't have a chance of getting them in most other states because of their criminal histories. Courts have found them responsible for assaults, burglaries, sexual battery, drug possession, child molestation -- even homicide.

In an investigation of the state's concealed weapon system, the South Florida Sun-Sentinel found those licensed to carry guns in the first half of 2006 included:

More than 1,400 people who pleaded guilty or no contest to felonies but qualified because of a loophole in the law.

216 people with outstanding warrants, including a Tampa pizza deliveryman wanted since 2002 for fatally shooting a 15-year-old boy over a stolen order of chicken wings.

128 people with active domestic violence injunctions against them, including a Hallandale man who was ordered

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

by a judge to stay away from his former son-in-law after pulling a handgun out of his pocket and telling the man: "I'll blow you away, you son of a b----."

Six registered sex offenders.

"I had no idea," said Baker County Sheriff Joey Dobson, who sits on an advisory panel for the state Division of Licensing, which issues concealed weapon permits. "I think the system, somewhere down the line, is broken. I guarantee you the ordinary person doesn't know [that] ... and I'd venture to guess that 160 legislators in Florida don't know that, either."

The National Rifle Association, the prime mover behind the state's nearly 20-year-old concealed weapon law, says it's the court system that is broken, not the gun-licensing system.

The problem rests with gaps within law enforcement and with "bleeding-heart, criminal-coddling judges and prosecutors," said Marion P. Hammer, Tallahassee lobbyist for the NRA and its affiliate, the Unified Sportsmen of Florida.

"What you need to understand is the NRA and the sportsmen's group are law-abiding people," she said. "We don't want bad guys to have guns."

But the Violence Policy Center, a national nonprofit group dedicated to reducing gun violence, studied Florida's concealed weapon program in 1995 and concluded that it "puts guns into the hands of criminals."

"The people who are intimately familiar with these laws, the people at the NRA, they know exactly what's going on," said Kristen Rand, the center's legislative director. Florida's gun lobby and the program's administrators "know they're permitting some bad people, but they don't want the general public to know that."

Last summer, the Legislature made it even harder for the public to find out. It made the names of licensed gun carriers a secret.

Pistol Packin' Paradise

From the country's founding, the protection of house, home, life, land and liberty has come at the point of a muzzle. Few other constitutional rights are more cherished, or more controversial, than the right to bear arms.

Nationwide, Florida has long been considered a gun enthusiast's paradise -- a place where licensed gun dealers outnumber golf courses; where gun ranges are protected from lawsuits for contaminating groundwater with lead bullets; and where Hammer, the NRA lobbyist, holds so much sway in Tallahassee lawmakers are, in the opinion of one adversary: "scared to hell of her."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:10-cv-02068-BEL   Document 68-6   Filed 04/19/12   Page 4 of 16

"If she says they're anti-gun, their political life is over," said Arthur C. Hayhoe, executive director of the Florida Coalition to Stop Gun Violence.

In fact, Florida often is referred to as the Gunshine State.

The label dates back to 1987, when the state passed a law to "ensure that no honest, law-abiding person who qualifies" for a **license** to **carry** a gun would be denied the right. The legislation became the model for so-called "shall-issue" concealed weapon laws nationwide.

The licenses enable people to carry handguns -- hidden usually under clothing or in a purse or briefcase -- in most public places.

"We need to send a strong message to criminals in the state of Florida that the next time you rob someone or rape them or try to kill them, that they very well may be armed, and they very well may be able to protect themselves," former state Rep. Ron Johnson, a Panama City Democrat and sponsor of the bill, argued on the House floor nearly 20 years ago.

At the time, counties had differing rules for who could or could not get a **license** to **carry** a gun.

Under the 1987 law, the rules became uniform statewide. People who wanted to carry a gun didn't need a reason other than basic self-protection.

The numbers skyrocketed. Before the law took effect, 25 people in Broward County had concealed weapon licenses. As of Dec. 31, there were 35,884.

"That's an alarming increase," said Coral Springs Police Chief Duncan Foster. "I don't view that as a positive trend. I view that as a negative. The more guns on the street, the more prone people are to violence."

During the same time, in Palm Beach County, the number of licenses went from 1,400 to 28,478; and in Miami-Dade, from 2,200 to 42,521. The numbers grew statewide from fewer than 25,000 to more than 410,000 today.

When the system changed in 1987, authors of the law promised that the state would give gun licenses only to "law-abiding citizens."

It hasn't worked out that way.

The Sun-Sentinel found that people who violate the law do get -- and at times keep -- **licenses** to **carry** guns. It happens because of loopholes in the law, bureaucratic errors, poor communication with cops and courts, and a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

loose suspension process.

As of July 1, the Legislature ended access to records of the licensees without a court order. Lawmakers made the change after an Orlando television station, in 2005, published the identities of Central Florida licensees on the Internet, infuriating some who were named.

The Sun-Sentinel obtained the state's database of licensees twice, once in March and again in late June, in 2006, before the new privacy law took effect.

The records provide a last public look at who is sanctioned to carry a gun in Florida.

And they are not all the "law-abiding" citizens the state promised.

One man, 22 arrests

Robert E. Rodriguez, a 71-year-old retired Tampa bar owner, was arrested 22 times between 1960 and 1998, according to the Florida Department of Law Enforcement.

In four cases, he pleaded guilty or no contest and received probation or fines but judges "withheld" formal convictions: in 1982 for trafficking 10,000 pounds of marijuana; in 1983 for aggravated assault, and in 2000 for aggravated assault and for firing a weapon into an unoccupied building.

As of late June, he had a valid **license** to **carry** a gun.

Numerous other states, including South Dakota, Texas and Maryland, likely would not permit Rodriguez to carry a gun given his rap sheet.

Rodriguez acknowledged that he has a long arrest record but told the Sun-Sentinel: "I've never been convicted of anything."

Convicted felons cannot get gun licenses under state and federal law.

But a loophole in Florida law allows people charged with felonies to obtain **licenses** to **carry** guns three years after they complete their sentences so long as a judge "withholds adjudication."

In a sort of legal no man's land, the defendants plead guilty or no contest. They serve probation, complete community service, obtain counseling, pay fines or fulfill other requirements. When they successfully complete the terms, they have no criminal record.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

The break often is given to first- or second-time offenders in instances in which the state's case is weak, and a plea deal appears to be the best option for defendants without the money to mount a strong defense, legal experts said. But it also has aided people accused of violent felonies, sometimes repeatedly.

The Sun-Sentinel found more than 1,400 people, such as Rodriguez, with gun licenses who had felony convictions "withheld" from their records.

"That's incredible," said state Sen. Gwen Margolis, D-Aventura. "I just can't believe it. It's outrageous."

"We should not have loopholes for these things," said state Sen. Nan Rich, D-Weston. "It's too dangerous. I think the Legislature should look at that."

"If we need to plug up those holes, let's have that debate and let's plug up those holes," said state Rep. Ellyn Bogdanoff, R-Fort Lauderdale.

But Hammer, the NRA lobbyist, says the courts, not the gun law, should change.

"What you're talking about is taking away the rights of people who have not been convicted and punished for crimes because the court decided to give them a pass," she said. "How can a state agency take rights away from people when a court refuses to?"

Broward Chief Judge Dale Ross said the NRA's stance is inconsistent.

"The NRA is mad at judges because more people are able to own guns?" he said. "I thought they were advocates of gun usage. They want less people to have guns?"

The judge said he was unaware that Florida's gun law permitted people who have had formal convictions withheld to later obtain **licenses** to **carry** guns.

The Sun-Sentinel found six registered sex offenders with valid concealed weapon licenses at the time of its review. Five of the six had convictions "withheld" by the courts, making them qualified for gun licenses.

State Rules Questioned

Overall, the rules governing who gets a **license** to **carry** a gun in Florida are a mishmash of contradictions and provisos.

Convicted of a misdemeanor crime of violence, such as stalking, assault or battery, against a member of your

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

family? License denied.

Convicted of a misdemeanor crime of violence against someone outside your family? License approved (so long as three years have passed since the completion of the sentence).

Convicted of driving under the influence? License approved.

Convicted of driving under the influence twice within the past three years? License denied.

Subjected to a current domestic violence restraining order? License denied.

Subjected to a prior domestic violence restraining order? License approved.

Have a long rap sheet but no convictions? License approved.

The state's licensing methods bother some in law enforcement.

"I believed, and still believe, the system in place now is not strong enough to discern the credibility of the person applying for it," said Broward Sheriff Ken Jenne, who voted against the 1987 law when he was in the state Senate. Broward County, he said, would be far stricter in issuing the licenses than the state is.

"Some of these people make your head spin," said Lt. Tundra King, spokeswoman for the Lauderhill Police Department. "You know what you've arrested them for, yet they still produce a legal concealed weapon permit. ... It's kind of scary. ... I don't know if I even understand all of the loopholes."

Finding Loopholes

The loopholes enabled John Corporal to obtain a **license** to **carry** a gun.

The Lake Worth man pleaded guilty and received 18 months probation in 1998 for pulling a gun on his roommate and threatening to kill him, according to court records. The judge withheld a formal conviction.

In 2002, he pleaded guilty to grand theft. He was accused of stealing $96,058 from a medical imaging company he worked for, according to a police report. Again, a judge withheld a formal conviction.

He was sentenced to 10 years probation, which ended early in March 2005.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:10-cv-02068-BEL Document 68-6 Filed 04/19/12 Page 8 of 16

The state gave him a **license** to **carry** a gun in 2006.

On June 6, two weeks after the Sun-Sentinel asked the state for information about Corporal, the Florida Division of Licensing moved to revoke the license because three years had not passed from the completion of his sentence, as required by law.

The loopholes also helped John Paxton, 36, the Deerfield Beach man who pleaded guilty to aggravated child abuse. He had his conviction withheld by the courts.

A judge sentenced him to one year of community control, two years probation and 120 days in the Broward County Stockade Facility, with work-release privileges. The court also ordered Paxton to complete a family violence prevention program.

Paxton, now living in Lake Placid, Highlands County, told the Sun-Sentinel that he took a parenting class as part of his court sentence but disagreed with much of the teachings.

"If you're punishing a child and you send a child to cut his own switch ... that's not allowed," he said. "That's mental cruelty. ... If he cusses, you can't wash his mouth out with soap. You can't use Tabasco sauce when they talk back to you."

The state gave Paxton a **license** to **carry** a gun in 2001.

The loopholes also benefited Garth Bailey, the Pembroke Pines man who killed his 20-year-old girlfriend in 1985 as she cooked breakfast.

"It was an accident, it was an accident," Bailey insisted, telling police he was showing the 9 mm Smith & Wesson to Marie A. Lue Young when it fired. There were no witnesses.

A search turned up 10 pounds of marijuana in the trunk of a car, court records state.

Prosecutors charged Bailey, now 40, with drug possession and manslaughter, arguing that he showed a "reckless disregard for human life."

He pleaded no contest to the drug charge in 1986 and got 18 months probation.

In 1988, he pleaded no contest to manslaughter in Young's death and was sentenced to four years probation. The court withheld a formal conviction on each charge.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Four years after the shooting, in October 1989, Bailey got into trouble with the law again.

Miramar police stopped him for speeding and charged him with carrying a concealed weapon without a license. Police found a samurai knife under a paper on the passenger's seat and two firearms in the glove box.

Bailey pleaded no contest. The court withheld a formal conviction again.

He applied for and received a **license** to **carry** a gun in 1996.

As of late June, it was listed in state records as valid until June 2009.

Tomorrow: Fugitives, mistakes and an inmate.

**Megan O'Matz** can be reached at momatz@sun-sentinel.com or 954-356-4518.

John Maines can be reached at jmaines@sun-sentinel.com or 954-356-4737.

ABOUT THIS SERIES

The South Florida Sun-Sentinel begins a four-part investigation into Florida's gun laws and who's licensed to carry concealed weapons.

Today: Hundreds of Floridians carry guns despite criminal histories.

Monday: Bureaucratic errors and narrow laws let people keep **licenses** to **carry** guns.

Tuesday: Licenses reinstated, time and again.

Wednesday: Who's packing heat is now a state secret.

HOW WE DID IT

The South Florida Sun-Sentinel examined the state's concealed weapons program, comparing the identities of 443,425 license holders with databases of felony convictions, domestic violence injunctions, arrests, warrants, clemency proceedings, jail bookings and sex offender registries. Reporters also analyzed 21,180 disciplinary actions the Florida Division of Licensing has taken against permit holders. The findings represent only a sampling.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

The newspaper did not have access to the records of more than 760,000 people licensed to carry guns since 1987 because the state destroys the records of expired or revoked licenses after two years.

Also, the Florida Department of Law Enforcement would not make its statewide database of misdemeanor arrests and convictions available for the newspaper's review without an estimated $23 million fee for one year's worth of records.

WANT A GUN? FLORIDA MAKES IT EASY

GENERAL FLORIDA GUN RULES

No license or permit is needed to purchase a handgun, rifle or shotgun.

Must be 18 to purchase a rifle or shotgun, and 21 to purchase a handgun from a licensed dealer. To buy a handgun from a private person, you can be 18.

Must pass a criminal background check to purchase from a licensed firearms dealer.

Must wait three days between buying a handgun from a licensed dealer and taking it home.

Multiple firearms can be purchased at one time.

Firearms do not need to be registered with police and can be kept in the home without a permit or a concealed weapon license.

A firearm can be transported in a vehicle without a permit or concealed weapon license as long as it is "securely encased," such as in a glove compartment, or "not immediately accessible." It cannot be carried on a person in a vehicle without a concealed weapon license.

CONCEALED WEAPON LICENSES IN FLORIDA

Licenses are required to carry a concealed weapon in public places.

Concealed weapons are defined as: handguns, knives, electronic weapons or devices, billy clubs, tear gas guns.

Licenses are issued by the Florida Division of Licensing, in the Department of Agriculture and Consumer Services. (Go to http://licgweb.doacs.state.fl.us/ weapons/index.html)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Applicants must submit: notarized application, photo, fingerprints, a fee of $117 and verification of firearm training. The state recommends that applicants also include certified copies of court documents to expedite the processing.

Must be at least 21, a U.S. citizen or lawful permanent resident alien, and must pass a criminal background check.

No justification for a license is required; "self-defense" is sufficient.

Licenses are valid for five years.

License holders don't have to wait three days between buying and taking home a handgun.

License is valid in 30 other states.

Concealed weapons generally are prohibited in police stations, jails, courtrooms, polling places, government meeting rooms, schools, bars and airline passenger terminals.

Due to a recent change in law, licensees can now carry concealed weapons in Florida's state parks, including beaches, as well as in Florida's national forests outside of hunting season.

Sources: Florida Division of Licensing, Florida Department of Law Enforcement, The National Rifle Association, The Brady Campaign Against Gun Violence.

BEFORE AND AFTER

Number of concealed weapon licenses, before and after the current law took effect in 1987.

| County | 1987 | 2006 |
| --- | --- | --- |
| Broward | 25 | 35,884 |
| Palm Beach | 1,400 | 28,478 |
| Miami-Dade | 2,200 | 42,521 |

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Florida   under 25,000   410,392*

* 85 percent of current licensees are men. Their average age is 53 and 88 percent are white.

Sources: Florida Division of Licensing; Archives, South Florida Sun-Sentinel

BEARING ARMS

Here are some people qualified to carry guns in Florida who would not be eligible to obtain concealed weapon licenses in many other states.

Edward L. Caldwell, 33, Bradenton

Obtained a **license** to **carry** a gun in September 2004. He has been a registered sex offender since 1997 after being sentenced to seven months in jail and five years probation for sexual battery on a woman who gave him a ride home from a Bradenton bar. "He threatened to shoot her if she didn't comply," a police report states. A judge withheld a formal conviction, making Caldwell eligible for the gun license. His legal history included a 2001 acquittal for lewd and lascivious acts on a child under 16; three domestic violence injunctions between 1998 and 2001, all dismissed; and a domestic violence restraining order in place from January 2002 to August 2003. A warrant issued for him in January 2006 for failing to update his address as a sex offender states: "There is information in the file he has firearms [note: his tag number] and has also been known to make comments reference "suicide by cop" ... USE CAUTION." Caldwell's license tag: Glock40. Authorities arrested him on the warrant on Feb. 13, 2006. On May 4, the state moved to suspend his gun license.

Roderick "Shorty" Barber, 33, Lauderhill

Arrested in 1993 for possessing crack cocaine, referred to Drug Court for treatment. Skipped a court date and a warrant was issued. Charged in 1996 with attempted robbery after a fender-bender. According to the police report, Barber demanded the victim pay him $30 for the damage, grabbed his throat and slammed him into a metal box, requiring stitches to the man's head. Barber pleaded no contest to the attempted robbery and the 1993 drug charge. A judge withheld a formal conviction, sentencing him to 30 months probation. He obtained a **license** to **carry** a gun in 2002. In an interview, Barber told the Sun-Sentinel: "Occasionally, I go to the gun range. I figure if I've got a gun in the car, and I got a permit, I don't have to bother with the police harassing me." He said the drug charges stemmed from him "being in the wrong place at the wrong time."

Robert E. Rodriguez, 71, Tampa

A bar owner, he was arrested 22 times between 1960 and 1998, according to the Florida Department of Law Enforcement. Nearly half of the arrests were for carrying concealed weapons without a license and various liquor violations, including allowing nude dancing, according to FDLE. The other half were for graver crimes, includ-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ing homicide, arson and aggravated battery -- all dismissed, the records state. He also was acquitted of assault and battery.

Four arrests resulted in court sentences.

In January 1982, he pleaded no contest to trafficking 10,000 pounds of marijuana. A judge withheld a formal conviction and sentenced him to 12 years probation. In March 1983, St. Petersburg police arrested him for aggravated assault for threatening a man in a bar with a broken cue stick, sticking a gun in his side and escorting him out in a conflict over a toppled motorcycle. He pleaded no contest and a judge withheld a formal conviction, sentencing him to five years probation, according to FDLE and the Pinellas circuit court clerk.

He obtained a concealed weapon license in September 1989.

In January 2000, Rodriguez pleaded no contest to shooting a gun into an unoccupied cafe. A formal conviction was withheld and he was fined $1,250, Hillsborough County court records show.

In November 2000, Rodriguez pleaded guilty to aggravated assault for firing a gun when a man turned into his driveway, police said. The court withheld a formal conviction, and he received two years probation. In 2002, the state revoked his gun license.

He reapplied in 2004 and was denied. He won an appeal and the state issued a new license in February 2005. It is valid until 2010.

Rodriguez referred questions to his daughter, Amy Pickford, who told the Sun-Sentinel that "the bar business is a very rough business" and that at times he had to defend himself against "bikers and gangs."

"It's not like he was a hit man for the Mafia," she said.

Manuel de Jesus Castro, 45, Miami Beach

Obtained a **license** to **carry** a gun in 2000, despite police and court records warning of possible family violence. Twice in 1994 his wife, Belinda Boquin, tried to get a domestic violence restraining order from a Miami judge. The court denied the petitions. Months later, her brother succeeded in obtaining a restraining order against Castro. The injunction expired in 1995.

In 1997, Miami-Dade police responded to Castro's home after Boquin said he hit her in the face and chest, "grabbed a machete" and threatened to kill her and their two children, a police report states. Prosecutors did not file charges.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

The couple divorced. In May 2002, Castro was arrested for shooting Boquin's new husband and her 17-year-old son to death. "He got into an argument with my husband," she said. "He started shooting."

Authorities told Boquin her son died from ricocheting bullets. He was about to graduate from high school.

In October 2003, a judge sentenced Castro to 30 years in prison. Five months later, the state revoked his **license** to **carry** a gun.

MOST STATES DRAW TOUGHER LINES ON GUNS

Most states are stricter than Florida in determining who can have a **license** to **carry** a gun.

The Sun-Sentinel, in a survey of 50 states and the District of Columbia found one -- Mississippi -- with a law comparable to Florida's, and two with looser restrictions: Alaska and Vermont.

Arizona denies concealed weapon permits to anyone who had a felony conviction "set aside or vacated."

Texas disqualifies anyone who had an adjudication withheld on a felony. "It's a no go," said Tela Mange, spokeswoman for the Texas Department of Public Safety.

South Dakota denies a gun license to anyone who has pleaded guilty or no contest to a felony.

South Carolina denies applicants with six or more traffic violations in five years. "It shows a person's character, you know," said South Carolina Law Enforcement Division Capt. Clifton Weir, who administers the concealed weapon permit program.

Oklahoma excludes people for "significant character defects." "This is somebody who is not a big-time person, but time after time they get in trouble on misdemeanors," said Trent Baggett, associate executive coordinator of the Oklahoma District Attorneys Council.

Wisconsin prohibits people from carrying concealed weapons altogether. The state's governor, Jim Doyle, twice vetoed bills to legalize the practice.

Marion P. Hammer, National Rifle Association lobbyist in Tallahassee, is comfortable with Florida's law.

"I don't care what other states have. I live in Florida," she said. "I'm raising my family in Florida. Our laws in Florida, that the NRA has had anything to do with, are pretty good laws."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

She rejects arguments that other states gauge an applicant's temperament and judgment on more than formal convictions. Maine, for example, excludes people who have shown "reckless or negligent conduct." Maryland denies people who exhibit a "propensity for violence."

The Florida Division of Licensing, Hammer said, cannot be burdened with that level of scrutiny.

"What are you going to do, psychoanalyze everybody to be sure they'll be safe when they buy a set of kitchen knives?" she said. "That they're not going to play coroner and do autopsies on people with kitchen knives? Come on!"

PHOTO: LETTER OF THE LAW: Albert Johnson sorts license requests at the state Division of Licensing in Tallahassee. More than 410,000 Floridians have a permit to carry a concealed weapon. Staff photo/Jim Rassol
Garth F. Bailey. Pleaded no contest to manslaughter in 1988 for shooting his girlfriend in the head. He received a concealed weapon permit eight years later.
John M. Corporal. Pleaded guilty to aggravated assault in 1998. In 2002, he pleaded guilty to grand theft. In February 2006, the state gave him a **license** to **carry** a gun.
John P. Paxton, Jr. Pleaded guilty to aggravated child abuse in 1993 for grabbing, choking and slapping his 4-year-old nephew. In 2001, Florida gave him a concealed weapon permit.
Caldwell
Barber
Rodriguez
Castro CHART: License ratios by county. Source: Florida division of Licensing. Staff graphic
CHART: New Licenses roar. Source: Florida Department of Agriculture and Consumer Services, Division of Licensing. Staff graphic

---- INDEX REFERENCES ---

COMPANY: NATIONWIDE MUTUAL INSURANCE CO

NEWS SUBJECT: (Violent Crime (1VI27); Legal (1LE33); Social Issues (1SO05); Legislation (1LE97); Government (1GO80); Police (1PO98); Crime (1CR87); Non-Profit Organizations (1NO22); Property Crime (1PR85); Judicial (1JU36); Criminal Law (1CR79); Sex Crimes (1SE01); Economics & Trade (1EC26))

INDUSTRY: (Smuggling & Illegal Trade (1SM35))

REGION: (South Dakota (1SO07); South Carolina (1SO63); Maryland (1MA47); Americas (1AM92); Oklahoma (1OK58); North America (1NO39); Texas (1TE14); USA (1US73); Florida (1FL79))

Language: EN

OTHER INDEXING: (AGRICULTURE; ARMS; BRADY CAMPAIGN AGAINST GUN VIOLENCE; CONSUMER SERVICES; CORAL SPRINGS POLICE CHIEF; DEPARTMENT OF AGRICULTURE; DRUG COURT; FDLE; FLORIDA; FLORIDA DEPARTMENT; GENERAL FLORIDA GUN; GUN; GUNSHINE STATE; HALLANDALE; LAUDERHILL; LAUDERHILL POLICE DEPARTMENT; LEGISLATURE; LICENCE; NATIONAL RIFLE ASSOCIATION; NATIONWIDE; NRA; OKLAHOMA DISTRICT ATTOR-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

NEYS COUNCIL; PINELLAS; STATE RULES; STOP GUN VIOLENCE; SUN SENTINEL; TEXAS DEPARTMENT OF PUBLIC; UNIFIED SPORTSMEN; VIOLENCE POLICY CENTER) (Amy Pickford; Arizona; Arthur C. Hayhoe; Bailey; Barber; Belinda Boquin; Boquin; Caldwell; Castro; Clifton Weir; CONCEALED WEAPON LICENSES; Corporal; Dale Ross; Due; Edward L. Caldwell; Ellyn Bogdanoff; Garth Bailey; Garth F. Bailey; Gwen Margolis; Hammer; Jesus Castro; Jim; Jim Doyle; Joey Dobson; John; John Corporal; John M. Corporal; John P. Paxton; John P. Paxton Jr.; John Paxton; Johnson; Ken Jenne; Kristen Rand; Lue Young; Manuel; Marie A.; Marion P. Hammer; Maryland; Megan O'Matz; Miramar; Multiple; Nan Rich; Numerous; Oklahoma; Paxton; Pistol Packin; RassolGarth F. Bailey; Robert E. Rodriguez; Roderick "Shorty" Barber; Rodriguez; Ron Johnson; Skipped; Smith Wesson; Staff; STATES DRAW TOUGHER LINES; Tela Mange; Tomorrow: Fugitives; Trent Baggett; Wisconsin; Young)

KEYWORDS: FLORIDA WEAPON LICENSE SS SERIES INVESTIGATION

EDITION: Broward Metro

Word Count: 5373
1/28/07 SFLSUN-SENT 1A
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.