*Spring 2009 (Issue 3)*


# Bullet*ins*

An update on firearms research provided by the Harvard Injury Control Research Center

# Comparing the Incidence of Self-Defense Gun Use and Criminal Gun Use

### I. Introduction
It has been claimed that in the United States, "guns are used for defensive purposes about five times as often as they are used for crimes".[1,2] This claim is made even though the criminal chooses both the time and place of the crime, most households don't have guns, and very few of the individuals who own guns are carrying at any time. So what data support the claim?

The common method to determine the number of both self-defense and criminal gun uses has been to survey potential victims of crime. There have been two main approaches taken: Approach 1: ask everyone about gun use; Approach 2: ask only those who first report that someone tried to commit a crime against them--and assume that a negative response to this screener question means that the respondent could not have experienced either a genuine self-defense or criminal gun use. For example, a preemptive strike would not be considered a self-defense gun use. Approach 2, which obtains gun information from only a subset of those asked in Approach 1, yields much lower estimates of both types of gun uses (see McDowall et al. 2000 for the differences with respect to self-defense gun use).[3]

Many other aspects of surveys can affect the estimated number of self-defense and criminal gun uses, such as whether to include military uses or the experiences of police and security guards; whether self-defense against animals is included; if the survey corrects for possible telescoping (the reporting of events that occurred outside the time period in question), and the time period asked about (e.g., past 6 months, past 5 years, ever). However, the differences in results from these aspects are usually dwarfed by the differences from using Approach 1 rather than Approach 2.

### II. Findings from the different approaches
Most private surveys have used Approach 1. After controlling for other aspects of the surveys, these surveys indicate that criminal gun use is far more common that self-defense gun use. For example, in May 2000, a Washington Post national random-digit dial survey asked "Not counting military service, have you ever been threatened with a gun or shot at?" Twenty-three percent (23%) said yes. In that same month (May 2000), a Gallup national random-digit dial survey asked "Not including military combat, have you ever used a gun to defend yourself either by firing it or threatening to fire it?" Seven percent (7%) of respondents said yes.

Some surveys have used Approach 1 to ask the same respondents about both self-defense and criminal gun use. Again, these surveys find that criminal gun use is far more common than self-defense gun use.[4,5,6] For example, data from the 2001 California Health Interview Surveys of 5,800 adolescents found that the typical California teen was 13 times more likely to be the victim of a gun threat than to have used a gun in self defense.[7]

Approach 2 has been used by the large semi-annual National Crime Victimization Surveys (NCVS). The NCVS obtains information from respondents about criminal and self-defense gun use only if they first

report an attempted crime (i.e., assault, sexual assault, robbery, burglary, non-business larceny or motor vehicle theft) against them. Reports of gun use on the NCVS are also lower than on most private surveys because the NCVS effectively eliminates the problem of telescoping. Results from NCVS data find that criminal gun uses are roughly six to twelve times higher than self-defense gun uses.

Table 1 provides crude ballpark estimates for annual criminal and self-defense gun uses from these two types of surveys for the 1990s.

*Table 1: Estimates of Annual Criminal and Self-Defense Gun Use (1990s)*

|  | **Criminal Gun Use** | **Self-defense Gun Use** |
|---|---|---|
| Approach 1: ask everyone directly about gun use | 10 million (Box A) | 2.5 million (Box B) |
| Approach 2: ask only those who report an attempted crime against them (Used by NCVS) | 800,000 (Box C) | 80,000 (Box D) |

For both type of surveys, the number of estimated criminal gun uses are far higher than the number of self-defense gun uses. Indeed, no survey that has used the same methodology for estimating both criminal and self-defense (i.e., comparing Box A with Box B or Box C with Box D) has found anywhere near the number of self-defense gun uses compared to criminal gun uses.

So how can anyone claim that there are more self-defense gun uses than criminal gun uses? They do so by comparing different types of surveys. They compare the results of Box B with Box C! However, it is completely inappropriate to compare estimates which come from two radically different survey methodologies. An appropriate assessment of the data is that *the overwhelming evidence from both types of surveys is that guns in the United States are used far more in crime than in self-defense.*

### III. The difficulty of estimating gun use

There are two key problems which make it difficult to determine with any accuracy the actual number of criminal and self-defense gun uses using survey methodology. First, the estimates rely on self-report with all the known biases of that approach (e.g., self-presentation bias). This is a particular problem with determining gun use, since the information usually concerns a quick, dangerous event that involves ego, emotions, and potentially severe consequences. In addition, the information is provided from only one side of what is a hostile interaction. The other side might tell a very different story. Second, there is no accepted understanding of what constitutes a criminal or a self-defense gun use. For example, criminals often believe that their gun use during a crime was in self-defense. The National Research Council reviewed the scientific literature on self-defense gun use in 2005 and concluded that "self-defense is an ambiguous term" (p.106) and that whether one is a defender or a perpetrator may depend on perspective.[8]

For simplicity, let us require that socially undesirable gun use be classified as criminal gun uses, and socially desirable gun use be classified as self-defense gun use. Surveys that ask open-ended questions about gun use (allowing the respondent to describe the event in their own words) (e.g., Hemenway & Azrael 2000; Hemenway, Miller & Azrael 2000) provide evidence about the proper categorization of responses using this classification. From such surveys, it appears that <u>all</u> of the criminal gun uses

reported using Approach 1 are probably socially undesirable, and many might inappropriately be missed by Approach 2 (e.g., many gun intimidations may not be reported as crimes).

By contrast it appears that the large majority of the self-defense gun uses reported using Approach 1 are socially undesirable; they are largely escalating arguments, or preemptive gun use out of fear rather than a response to an attempted crime.  Most would appropriately be missed by Approach 2, and should not be considered genuine self-defense gun uses.[5] They are actually reports of inappropriate or criminal gun use.

Researchers analyzing one Approach 1 survey concluded: "Most commentators have assumed that the [defensive gun uses] reported by survey respondents are actions that would be endorsed by an impartial observer who knew all the facts. Yet the sketchy and unverified accounts available from surveys leave considerable uncertainty about what actually happened, whether the respondent was the victim or the perpetrator, and whether the respondent's actions were otherwise legal, reasonable, and in the public interest".[9] An analysis of another Approach 1 survey concluded that many of the incidents "relied heavily on respondent judgments about the motives of possible offenders, and motives may be murky if the respondents acted quickly...the gun use may follow mistaken perceptions of innocuous actions by the supposed criminal. These cases of armed resistance would then legally amount to aggravated assaults".[3]

**IV. Conclusion**
The opportunity for a law-abiding gun owner to use a gun in a socially desirable manner--against a criminal during the commission of a crime--will occur, for the average gun owner, perhaps once or never in a lifetime. It is a rare event. Other than self-defense, the use of a gun against another human is socially undesirable. Regular citizens with guns, who are sometimes tired, angry, drunk, or afraid, and who are not trained in dispute resolution, have lots of opportunities for inappropriate gun uses. People engage in innumerable annoying and somewhat hostile interactions with each other in the course of a lifetime. It should not be surprising that inappropriate, socially undesirable "self-defense" gun uses by people who believe they are law-abiding citizens outnumber the appropriate and socially beneficial use of guns.[6]

Although most of the reported self-defense gun uses from Approach 1 surveys seem more like criminal uses, even if one believed they were all genuine socially beneficial uses, the number of criminal gun uses would still vastly exceeds the number of self-defense gun uses in the United States.  No survey using similar methodology to determine both criminal and self-defense use has ever found otherwise.

**Contributors**: David Hemenway, PhD; Mary Vriniotis, MS

Funding for Bullet*ins* is provided by the Joyce Foundation.

## References

[1] Lott J.  Gun Show. National Review 51(10) 32, May 31, 1999.

[2] Kleck G. The frequency of defensive gun use.  In: Gary Kleck and Don B. Kates. Armed: New Perspectives on Gun Control, Amherst NY: Prometheus Books, 2001. p. 267

[3] McDowall D, Loftin C, Presser S.  Measuring civilian defensive firearm use: a methodological experiment. Journal of Quantitative Criminology. 2000; 16:1-19.

[4] Azrael DR, Hemenway D.  In the safety of your own home: results from a national survey on gun use at home.  Social Science and Medicine.  2000; 50:285-91.

[5] Hemenway D, Azrael DR.  The relative frequency of offensive and defensive gun use: Results from a national survey. Violence and Victims.  2000; 15:257-72.

[6] Hemenway D, Miller M, Azrael DR.  Gun use in the United States: Results from two national surveys.  Injury Prevention. 2000; 6:263-67.

[7] Hemenway D, Miller M.  Gun threats against and self-defense gun use by California adolescents.  Archives of Pediatrics & Adolescent Medicine. 2004; 158:395-400.

[8] National Research Council. Firearms and Violence: A Critical Review. Washington D.C.: National Academies Press, 2005.

[9] Cook PJ, Ludwig J.  Guns in America: Results of a Comprehensive National Survey on Firearms Ownership and Use. National Criminal Justice Reference Service NCJ 165448: Police Foundation. 1996. pp. 58.