IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND WOOLLARD, et al.       :

    Plaintiffs

                                                                 :

v.                                                                     Civil Case No. L-10-2068

                                                              :

MARCUS BROWN, et al.

                                                              :

    Defendants                                        :

o0o
**MEMORANDUM**

Presently pending before the Court is the Motion of Defendants for a Stay Pending Appeal. Docket No. 67. The issues have been comprehensively briefed, and the Court finds oral hearing unnecessary. See Local Rule 105.6 (D. Md. 2011). For the reasons set forth herein, the Court will, by separate Order, DENY the Motion.

**I.   PROCEDURAL BACKGROUND**

This case involves a challenge to the constitutionality of the State of Maryland's handgun permitting scheme. In July of 2010, Plaintiff Robert Woollard filed suit contending that § 5-306(a)(5)(ii) of the Public Safety Article of the Maryland Code violates the Second Amendment to the United States Constitution. The provision in question requires that, prior to issuing a permit to wear or carry a handgun in the state of Maryland, the Secretary of the State Police must make a finding that the applicant "has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger."

The Court agreed with Woollard, and entered an Order permanently enjoining Defendants, their officers, agents, and employees, from enforcing § 5-306(a)(5)(ii). See Docket Nos. 52 and 63. The Court further ordered Defendants to promptly process Woollard's 2009 application for a permit renewal, the denial of which gave rise to the instant suit, without consideration of the "good and substantial reason" requirement. Id.

Defendants timely filed an application for stay and a notice of appeal to the Fourth Circuit Court of Appeals. Implementation of the Court's ruling was preliminarily stayed while the parties briefed the issue of whether a more permanent stay should be entered pending the Fourth Circuit's decision. Following expedited initial briefing, the Court convened a teleconference with counsel for all parties and ordered supplemental briefing, which has now been completed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) permits a District Court to stay pending appeal a final judgment that grants, dissolves, or denies an injunction. In determining whether a stay is warranted, the Court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987).

### III. DISCUSSION

In this case, Defendants have failed to meet their burden of establishing that the aforementioned factors weigh in favor of a stay. The Court will briefly address each of these factors.

**a. Likelihood of Success**

Just as every party to appeal a trial court's judgment does so with the expectation (or at least the hope) of vindication, every court that renders a judgment does so in the belief that its judgment is the correct one. Accordingly, the "likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." Goldstein v. Miller, 488 F. Supp. 156, 172 (D. Md. 1980). A party seeking a stay, however, must nevertheless make a "strong showing" that he is likely to succeed. Hilton, 481 U.S. at 776.

Defendants rest their argument largely on the fact that this case involved difficult and novel issues in a largely undeveloped area of law. As this Court has long noted, however, a stay is not required "every time a case presents difficult questions of law." St. Agnes Hosp., Inc. v. Riddick, 751 F. Supp. 75, 76 (D. Md. 1990) (quoting Miller, 488 F. Supp. at 173). While the result in the case at bar was not ineluctably dictated by controlling precedent, it did flow naturally from the Supreme Court's decisions in District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), and, perhaps more importantly, from the Fourth Circuit's decision in United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011). These decisions, as the Court noted, left useful "signposts" and provided "a ready guide." Mem. Op. at 7, 6, Docket No. 52.

While Defendants have cited post-Heller decisions in which courts have upheld similar (though not identical) permitting regulations, they cite none from the Fourth Circuit. By contrast, as Woollard points out, subsequent to this Court's award of summary judgment another district court in the Fourth Circuit has also held, as this Court did, that "[a]lthough considerable uncertainty exists regarding the scope of the Second Amendment right to keep and bear arms, it undoubtedly is not limited to the confines of the home." Bateman v. Perdue, No. 5:10-CV-265-H, 2012 U.S. Dist. LEXIS 47336, at *10–*11 (E.D.N.C. Mar. 29, 2012). In so doing, the United States District Court for the Eastern District of North Carolina, like this Court, placed considerable reliance on Judge Niemeyer's non-controlling opinion in Masciandaro.

Defendants have beyond question shown that considerable difference of opinion exists throughout the country as to the proper scope and application of the Second Amendment following the Supreme Court's watershed decisions in Heller and McDonald. In the case at bar, the Fourth Circuit could certainly find reasonable grounds to reverse this Court's decision. Such an outcome does not appear so probable, however, as to outweigh the remaining considerations discussed below.

**b. Irreparable Injury**

Defendants point to little in the way of truly irreparable injury that is likely to result should their request for a stay be denied. First, Defendants urge that "their ability to protect public safety will be curtailed" because of their "inability to enforce an important component of the handgun permit regulations . . . ." Defs.' Mot for Stay 17, Docket No. 54. The problem with this line of argument is that it begs a question that has already been answered. To accept Defendants' contention would be to ignore the Court's determination that the "good and substantial reason" requirement is insufficiently tailored to serving the State's admittedly

legitimate interest in public safety. This and other such arguments that seek to relitigate the merits of the case must fail.

Next, Defendants advert to what they characterize as "significant, immediate administrative burdens" that would be involved in implementing the Court's Order. Id. at 20. While the Court is not unsympathetic to the very real and often costly considerations involved in revamping a regulatory scheme, administrative hardship does not rise to the level of irreparable harm. As to the more concrete costs of compliance, "[m]ere economic injury is rarely, if ever, sufficient to warrant entry of a stay of judgment to protect a party against it . . . ." Miller, 488 F. Supp. at 175.

Nor does it seem likely that the attendant burdens would be as onerous as Defendants would have the Court believe. The Court's main concern involved the difficulty Defendants might have in revoking permits that will have already been issued should they succeed on appeal. On this point, the parties appear to agree that the Court's decision does not stop Defendants from tracking whether applicants have a "good and substantial reason," only from denying permits on this basis. While Defendants concede this point, they contend that "in light of the strong feelings surrounding this issue, [the Maryland State Police ('MSP')] nonetheless expects that a significant number of applicants who have good and substantial reason may decline to provide it during the Interim Period as a matter of principle." Defs.' Supp. Brief 4, Docket No. 68. Notably, however, Defendants offer no factual support for such an expectation. Moreover, applicants with good and substantial reason who decline to provide it would do so with the understanding that, as a consequence, they might have their permits revoked and be forced to repeat the application process.

5

As to those new applicants without good and substantial reason, Defendants admit that "MSP expects that many such individuals would comply with its directions and return their permits." Id. While they assert that it would be "impractical" to track down and recover the remainder, id., MSP is doubtless called upon to recover revoked permits from time to time. Furthermore, any permit holder who refused to voluntarily return a permit would be in knowing violation of MD Code, Public Safety, § 5-310, which requires the holder to "return the permit to the Secretary [of State Police] within 10 days after receipt of written notice of the revocation." Defendants have given the Court no basis from which to infer that a significant number of those applicants who have waited patiently for the outcome of this litigation and complied with the permit application process in full would, upon revocation, suddenly decline to adhere to the law.

   c. **Interest of Other Parties and the Public**

Against costs to Defendants of complying immediately with the Court's ruling, the Court must balance the harm to Woollard and those like him. If a stay is granted, a sizeable number of people will be precluded from exercising, while the case is argued on appeal, what this Court has recognized as a valid aspect of their Second Amendment right. In the First Amendment context, the Supreme Court has stated that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). As the Court discussed in its summary judgment opinion, there are substantial similarities between the First and Second Amendments, and the analogy is appropriate here as well.

The question of public interest is somewhat more involved. It is self-evident, as the Fourth Circuit has noted, that "[s]urely, upholding constitutional rights serves the public interest." Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 261 (4th Cir. 2003). At the same

time, however, the Court would not forget another admonition from the Fourth Circuit: that "[t]his is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." Masciandaro, 638 F.3d at 475.

For this reason, the Court directed the parties to file supplemental briefs addressing how Maryland's permitting scheme, without the "good and substantial reason" requirement, compares to the systems in force in other states and how Maryland's rate of handgun violence compares to that of other states with more liberal regulations. The Second Amendment does not "require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise." McDonald, 130 S. Ct. at 3050. Nevertheless, persuasive evidence that states with more permissive regulatory schemes suffer from more handgun crime, or that states experience an increase in handgun violence when moving from a "may issue" to a "shall issue" framework, would certainly militate in favor of a stay.

The parties have conducted commendably thorough research on the subject, and each has dedicated considerable time and energy to debating the relative merits of the studies and statistics offered by the other. The inescapable conclusion, however, is that the evidence does not point strongly in any one direction. As Defendants aptly state, "Identifying causal trends in crime data is notoriously difficult in any circumstance because of the multiplicity of variables that impact crime and the different effects of those variables in different places and on different people." Defs.' Supp. Brief 5, Docket No. 68. On this dimension, then, the Court cannot say that a stay would demonstrably serve or disserve the State's goal of preventing a potential increase in

handgun violence pending appeal. Defendants have not established that the public interest weighs in favor of a stay.

### IV. CONCLUSION

Having given due weight to the four Hilton factors, the Court determines that a stay pending appeal is not warranted. The Court will, by separate Order, lift the temporary stay now in effect.

Dated this 23rd day of July, 2012

/s/
_____
Benson Everett Legg
United States District Judge